1  EDMUND G. BROWN JR.
   Attorney General of the State of California
2  PAUL T. HAMMERNESS
   Supervising Deputy Attorney General
3  JENNIFER C. ADDAMS, State Bar No. 209355
   Deputy Attorney General
4    455 Golden Gate Avenue, Suite 11000
     San Francisco, CA  94102-7004
5    Telephone:    (415) 703-5382
     Facsimile:    (415) 703-5480
6    Email:  Jennifer.Addams@doj.ca.gov

7  Attorneys for Defendants J. Chudy, M.D.;
   D. Pompan, M.D.; and I. Grewal, M.D.

8

9              IN THE UNITED STATES DISTRICT COURT

10          FOR THE NORTHERN DISTRICT OF CALIFORNIA

11

| | |
|---|---|
| 12  **RAYNARD B. HILL, JR.,** | C 07-3165-CRB (PR) |
| 13                              Plaintiff, | **DECLARATION OF JOSEPH CHUDY, M.D., IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT OR, IN THE ALTERNATIVE, SUMMARY ADJUDICATION** |
| 14              v. | |
| 15  **JOSEPH CHUDY, et al.,** | |
| 16                              Defendants. | |
| 17 | The Honorable Charles R. Breyer |

18    **COMES NOW** Joseph Chudy, M.D., and declares:

19    1.    I am employed by the State of California, Department of Corrections and

20  Rehabilitation, as the Chief Medical Officer of Correctional Training Facility ("CTF"), Soledad,

21  California.  I graduated from University of California Irvine, College of Medicine in 1981.  As

22  the Chief Medical Officer in a state prison, I oversee the provision of healthcare at CTF.

23    2.    I have been employed by the Department of Corrections and Rehabilitation since 2001

24  and in my current capacity as Chief Medical Officer since 2006.

25    3.    I am and have been licensed to practice medicine in the State of California since 1984.

26  My specialty is Family Practice.  I am board certified in Family Practice.

27    4.    All statements made herein are based upon my personal knowledge, upon review of the

28  custodial and medical files of inmate Raynard Byron Hill, No. H43428, which are maintained by

Declaration of J. Chudy, M.D., in Support of Motion for Summary Judgment    *HILL,  Raynard B. v. Joseph Chudy, et al.*
C 07-3165-CRB (PR)

1

1  the records custodians at CTF, and other information provided to me by the custodians of

2  records here at CTF. If called upon to do so, I could and I would testify competently to the

3  contents of this declaration. A true, correct, and complete copy of the medical chart notes upon

4  which I make this declaration is attached hereto as Exhibit A (documents Bates stamped 1-322).

5  A true and correct copy of the custodial records upon which I make this declaration is attached

6  hereto as Exhibit B (documents Bates stamped 323-1165).

7      5.    Plaintiff Raynard Hill is now housed at the California Substance Abuse Treatment

8  Facility ("CSA"). Plaintiff alleges that he was denied proper medical care while incarcerated at

9  CTF. Plaintiff underwent rotator cuff surgery on his right shoulder in September 2000. (Medical

10  Records, pp. 308-322.) He alleges that he re-injured his right shoulder in November 2001.

11  (Medical Records, pp. 248.)

12      6.    Once the surgery for a rotator cuff injury is undergone and is successful, the patient is

13  considered stable unless he has complaints of pain or infection. As soon as plaintiff complained

14  of pain in his finger and shoulder from an altercation, he was seen by a doctor and x-rays were

15  ordered. He saw a doctor on February 14, 2002; February 19, 2002; February 26, 2002; and

16  March 26, 2002. (Medical Records, pp. 181-183.)

17      7.    On April 30, 2002, plaintiff was seen in the orthopedic clinic. He told the doctor that

18  his right shoulder was "much better." (Medical Records, p. 180.)

19      8.    On June 10, 2002, he saw a doctor and had "no limitations of motion." (Medical

20  Records, p. 179.) X-rays were ordered. On June 17, 2002, x-rays were taken of plaintiff's right

21  shoulder. These x-rays showed no abnormalities. (Medical Records, p. 233.)

22      9.    Although plaintiff was seen by physicians many times in the interim, he did not

23  complain that his medications were not working until November 13, 2005. (Medical Records,

24  p. 159.) In fact, on August 11, 2005, plaintiff requested ibuprofen for his shoulder pain.

25  (Medical Records, p. 160.)

26      10.   Although plaintiff was seen many times in the interim, he did not complain about

27  shoulder pain until February 22, 2005. (Medical Records, p. 165.) He was seen many times for

28  painful feet and legs and a painful left wrist, but he did not complain about problems with his

Declaration of J. Chudy, M.D., in Support of Motion for Summary Judgment    *HILL, Raynard B. v. Joseph Chudy, et al.*
C 07-3165-CRB (PR)

1 | right shoulder. (Medical Records, pp. 166-177.) Shortly after plaintiff requested attention, he

2 | was seen by Drs. Sinnaco, Grewal, and subsequently by Dr. Pompan, Orthopedic Surgeon.

3 |   11. On March 7, 2005, plaintiff was examined by C. Sinnaco, M.D. for his shoulder pain.

4 | (Medical Records, p. 163.)

5 |   12. X-rays were taken on March 10, 2005. There were no abnormalities seen. (Medical

6 | Records, p. 231.)

7 |   13. On April 4, 2005, and April 17, 2005, plaintiff was examined by Dr. Sinnaco and was

8 | referred to Orthopedist D. Pompan, M.D. (Medical Records, pp. 163, 258.)

9 |   14. On June 21, 2005, plaintiff was examined by Orthopedist Dr. Pompan. Dr. Pompan

10 | ordered an MRI and, because there was such a backlog for MRIs, CTF arranged, on July 21,

11 | 2005, for a mobile unit. (Medical Records, p. 38; First Amended Complaint, Exhibit 3, p. 8.)

12 |   15. On August 29, 2005, plaintiff was examined again by Orthopedist Dr. Pompan.

13 | (Medical Records, p. 161.)

14 |   16. On November 21, 2005, an MRI was taken of plaintiff's right shoulder. As read by

15 | Arthur M. Nathanson, M.D., the MRI did not show whether the rotator cuff was re-torn.

16 | Dr. Nathanson stated, "It is really not possible to discern the presence of recurrent tear or other

17 | specific pathology in these areas." For these reasons, additional surgery was not immediately

18 | considered. (Medical Records, pp. 229, 244.)

19 |   17. On January 9, 2006, plaintiff was examined again by Dr. Sinnaco and was again

20 | referred to Dr. Pompan. Dr. Pompan examined plaintiff on March 7, 2006. (Medical Records,

21 | pp. 150, 151, 256.)

22 |   18. On March 7, 2006, Dr. Pompan examined plaintiff and noted that his shoulder was not

23 | responding to exercises. It was unclear from all x-rays and the MRI if plaintiff's rotator cuff had

24 | re-torn. (Medical Records, pp. 146, 149.)

25 |   19. On March 9, 2006, plaintiff was approved for a consultation with an outside

26 | orthopedist. (Medical Records, p. 148.)

27 |   20. On May 3, 2006, plaintiff was seen by Grewal, M.D., and his medications were

28 | renewed. (Medical Records, pp. 30, 146.)

Declaration of J. Chudy, M.D., in Support of Motion for Summary Judgment *HILL, Raynard B. v. Joseph Chudy, et al.*
C 07-3165-CRB (PR)

3

1    21.   On April 6, 2006, plaintiff requested ibuprofen. (Medical Records p. 145.)

2    22.   On July 13, 2006, plaintiff was approved for further surgical rotator cuff repair.

3    (Medical Records, p. 146.)

4    23.   On August 18, 2006, plaintiff requested surgery and was seen by medical personnel.

5    He was referred for arthroscopy and possible repair of the rotator cuff. (Medical Records,

6    p. 144.)

7    24.   On August 28, 2006, plaintiff saw Dr. Pompan. Dr. Pompan noted that plaintiff had

8    already been scheduled for surgery which was canceled due to Plaintiff not showing for his pre-

9    op appointment. Dr. Pompan stated he would need to coordinate a surgical team and rescheduled

10   him for surgery. There was no evidence of a new tear on the November 21, 2005 MRI. Dr.

11   Pompan saw evidence of tendinitis. (Medical Records, p. 143.)

12   25.   Plaintiff was transferred to California Correctional Institution (CCI) on September 8,

13   2006.

14   26.   A review of plaintiff's MRI results shows that despite an artifact signal from the metal

15   pieces in his shoulder from his original repair, his tendon otherwise appeared intact on November

16   21, 2005. Radiologist Dr. Nathanson stated, "I cannot define the cuff anatomy except for the

17   infraspinatus tendon which shows increased signal consistent with tendinitis... It is really not

18   possible to discern the presence of a recurrent tear or other specific pathology in these areas."

19   (Medical Records, p. 229.) On September 12, 2007, another MRI was taken. This MRI showed

20   plaintiff's supraspinatus and infraspinatus tendons were torn and retracted. (Medical Records, p.

21   229.) Thus, plaintiff likely re-tore his tendons at some point after November 21, 2005 and before

22   September 12, 2007. Despite the fact that Dr. Pompan did not see tendon tears, he continued to

23   care for plaintiff's shoulder and attempt to schedule him for surgery. In addition, plaintiff was

24   seen regularly by his primary care doctor to assure that his shoulder remained stable while

25   surgery was being scheduled. (Medical Records, p. 255.)

26   27.   The plaintiff's shoulder condition was not at any time an emergency, and it did not

27   require immediate surgery or other treatment.

28

Declaration of J. Chudy, M.D., in Support of Motion for Summary Judgment    *HILL, Raynard B. v. Joseph Chudy, et al.*
C 07-3165-CRB (PR)

1    28.  Plaintiff was given appropriate medications for pain.  He was given Tylenol with

2 codeine and ibuprofen.  Codeine is a strong, opiate pain medication and appropriate in a case

3 such as plaintiff's.  (Medical Records, pp. 25-69; First Amended Complaint, Exhibit 4.)

4    29.  This same course of treatment has continued since plaintiff was transferred to CCI.

5 (Medical Records pp. 92-142; C-File Records, pp. 642-647.)  Plaintiff's appeal was denied

6 June 12, 2007, in a Director's Level Appeal Decision regarding his complaints of poor care for

7 his shoulder.  (C-File Records pp. 679-680.)

8    30.  I am familiar with the community standard of care for the treatment of rotator cuff

9 injuries.  Although I personally had no direct contact with Mr. Hill, his medical condition was

10 treated with an appropriate amount of treatment and care, and in a manner that was reasonable,

11 timely, and consistent with the knowledge and skill ordinarily possessed by members of my

12 profession under similar circumstances.

13    31.  Given this patient's medical condition and the other care provided for him, the timing

14 of an elective rotator cuff surgery was not a significant departure from the standard of care in this

15 community.

16    32.  Similarly, given this patient's medical condition, the timing and scheduling of his

17 medical examinations, x-rays and MRI's, and prescriptions for medications was within the

18 standard of care in this community.

19 ///
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

33.   In my opinion, the care provided to inmate Hill for his condition meets the standard of care in this community, and there was no deliberate indifference by any personnel at CTF.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct, except as to those matters stated on information and belief, which matters I believe to be true and correct.

Executed this 7th day of July, 2008, at Soledad, California.

Joseph Chudy, M.D.
Declarant

40266627.wpd
SF2008401759

Declaration of J. Chudy, M.D., in Support of Motion for Summary Judgment   *HILL, Raynard B. v. Joseph Chudy, et al.*
C 07-3165-CRB (PR)

6