First Level   ☒ Granted   ☐ P. Granted   ☐ Denied   ☐ Other _____

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: __10/28/97__   Due Date: __12/12/97__

Interviewed by: __Correctional Lieutenant W. E. Shipton on 11/04/97.__

    **refer to attached memorandum for First Level Appeal Response**

_____

_____

_____

_____

Staff Signature: _(C. W.) Shipton_   Title: __Fac. "C" Capt.__   Date Completed: __11/04/97__

Division Head Approved:

Signature: __A. TUTT, Complex II__   Title: __Associate Warden__   Returned Date to Inmate: __11/11/97__

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

_WOULD LIKE FOR D2 TO C/O TO THE SECOND-LEVEL TO BE RESPONDED_

Signature: _Raymond B. Hill 1/43428_   Date Submitted: _11-12-97_

Second Level   ☒ Granted   ☐ P. Granted   ☐ Denied   ☐ Other _____

G. REVIEWER'S ACTION (Complete within 10 working days); Date assigned: _____   Due Date: _____

☐ See Attached Letter

Signature: _V. Ortega CCII_   Date Completed: _11-14-97_

Warden/Superintendent Signature: _C. A. Chapan CDW (A)_   Date Returned to Inmate: _11-14-97_

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

_____

_____

_____

_____

Signature: _____   Date Submitted: _____

For the Director's Review, submit all documents to: Director of Corrections
    P.O. Box 942883
    Sacramento, CA 94283-0001
    Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION:   ☐ Granted   ☐ P. Granted   ☐ Denied   ☐ Other _____
☐ See Attached Letter

CDC 602 (12/87)   Date: _____

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS
CDC 128-A (8/87)

NAME and NUMBER    HILL, H-43428, C3F4-137U, ISP-III, FACILITY "C"

On Wednesday, 10/15/97, it is approximately 0839 hours, while performing my duties as C-4 Floor Officer #1, I conducted a random cell search of cell 137. During the search I confiscated: one (1) square plastic bowl with lid, one (1) plastic tumbler with lid and one (1) "Hard Time" coffee mug with lid belonging to inmate HILL, C3CF H-43428, C3F4-137U. All three items were altered with writing/etchings not permitted to inmate HILL's name or CDC number. The items were not listed on inmate HILL's property card CDC-106 in R&R. Inmate HILL was counseled and is aware of his choices of disposal of the items confiscated. Inmate HILL has not made a choice of disposal method. All of the above items were disposed of per Institutional Policy and Procedure. Inmate HILL is aware of this report.

ORIG: C-FILE
CC: CCI
    WRITER
    INMATE

T.M. FOSTER, CORRECTIONAL OFFICER
C-4 FLOOR OFFICER #1, 2ND/W
ISP-III    CUSTODIAL COUNSELING

DATE: 10/18/97    CCR 3191(b)   ALTERED PERSONAL PROPERTY

PERSONAL PROPERTY

SEC. 3190 (a) GENERAL POLICY.

    INSTITUTIONS SHALL PERMIT INMATES TO POSSESS IN THEIR LIVING QUARTERS, PER-SONAL PROPERTY ITEMS THAT PRESENT NO THREAT TO INSTITUTION SECURITY OR THE SAFETY OF PERSONS.

SEC. 3191 (a) NONEXPENDABLE PROPERTY.

    THESE ITEMS CONFISCATED ARE INCLUDED ON AN INSTITUTIONAL APPROVED LISTING OF INMATES PERSONAL PROPERTY AND REGISTERED IN MY NAME & NUMBER IN PROPERTY RECORDS. C&C 1083

    (c) I SHALL BE PERMITTED TO SELECT DISPOSING OF ITEMS IF NEED BE, EITHER BY SENDING THEM HOME OR DONATE, WHICH I WAS NOT GIVEN A CHOICE.

SEC. 3193 (b) LIABILITY.

    IF PERSONAL PROPERTY IS LOST OR DESTROYED DUE TO EMPLOYEE'S NEGLIGENCE, THE DEPARTMENT EXCEPT LIABILITY WHICH CONSIST OF (1) HARD TIMES MUG $1.85 (2) TUMBLERS W/LIDS AT $2.05 EA., (1) CLEAR BOWL AT $2.65, AT A TOTAL OF $8.60

SEC. 3287 (a)(2) CELL, PROPERTY & BODY INSPECTION

    SUCH INSPECTIONS WILL NOT BE USED AS A PUNITIVE MEASURE NOR TO HARASS AN INMATE. AT APPROX 8:00 AM, I WAS CALLED TO WORK EXCHANGE TO TALK TO C/O GARCIA, THE SGT & LT SHIPTON REGARDING WHY I'M NOT WORKING OUTSIDE CREW. AFTER EXPLAINING THAT SINCE 9-3-97 IN UNIT CLASSIFICATION W/ CPT HARBETT, LT GALINDO WHO TOLD ME TO CONTACT CCI ALVARADO, C/O CIARRUSSO PRIOR BOSS, C/O GARCIA PRESENT FOR WORK CHANGE SLIP WHICH WAS SIGNED BY ALL THREE AND SENT TO ASSIGNMENTS. DUE TO HEALTH REASONS OF EXPOSURE TO EXTREME HEAT, C/O FRAME 3RD WATCH CAN VERIFY I STAY IN CELL WHEN HOT. THE SGT DIDN'T CARE, HE SAID I WILL RECIEVE 115, C-STATUS, D-YARD, LOSS OF PRIVILEGES. THEN CAME OVER TO C-4 AND HAD C/O FOSTER INSPECT CELL. AND SINCE ALL APPLIANCE: WHERE LABELED AND IN ORDER. EVERY THING ELSE, TAKING STATE SOAP & MATERIALS WASN'T ENOUGH, SO HE TOOK (4) PERSONAL PROPERTY ITEMS

                                     OPEN→

(4) Inmate will be given a written notice of any items of personal property removed. When I recieved the cell search receipt. I noticed that my personal property taken was listed or checked as empty containers. I called C/o Foster to the cell and asked him to list the items & identify them as personal property. So C/o Foster drew an arrow from empty containers to altered personal property but failed to I.D. the items. When asked C/o Foster again to identify my property he said " I'm not going to identify nothing, put it in your 602 " and have no idea of my property whereabout.

Sec. 3006 Contraband)

Inmates may possess only the personal property, materials, supplies, items, commodities & substances, to maximum quantity recieved or obtained from authorized sources, which I purchased all of the items in questioned from the canteen which the majority of the inmate here in this institution. And due to the one of a kind items sold to inmate here, all or most have distinguishing marks or scratching to identify one property

(d) Property which is not contraband; but if kept in inmate possession can present a serious threat to facility security or safty of inmate or staff, shall be controled by staff to eliminate threat

✳ These items which is considered as altered has not changes in their dimensions, physical characteristics or style. These marks scratchings or lettering can be removed if need be, but was only used as identification purposes since there would be no way to I.D. your item from anyone else on the yard This conduct by C/o Foster, Sgt, & Lt Shipton (Connally) shows discrimination towards me is unprofessional when they are not willing to enforce these actions on the rest of the inmate population

Raymond Hill
H03428
10-16-97

OF CALIFORNIA

DEPARTMENT OF CORRECTIONS

# INMATE PROPERTY INVENTORY
CDC 1083 (7/87)

| INMATE'S NAME: | CDC NUMBER: | INSTITUTION: | QUAD: | ROOM NUMBER: | DATE: |
|---|---|---|---|---|---|
| Hill | H43426 | WSP-RC | FB35 | 114 | 1/29/97 |

| PROPERTY INVENTORIED BY: | TITLE: | REASON FOR INVENTORY: |
|---|---|---|
| | S/O | ISP III |

## CANTEEN ITEMS

- ☑ DEODERANT
- HAIR: ☑ GREASE ☐ NET
- ☑ SHAMPOO ☐ SPRAY
- ☐ PERM KIT ☐ CONDITIONER
- LOTION: ☐ TANNING ☐ BABY OIL
- ☐ HAND ☐ NOXEMA
- POWDER: ☐ TALC ☐ FOOT
- RAZOR: ☐ BLADES ☐ DISPOSABLE
- ☐ SHAVING CREAM
- ☐ AFTER SHAVE
- ☐ SHOE POLISH
- SOAP: ☑ BARS ☐ LIQUID
- ☐ SOAP DISH ☐ MOUTHWASH
- TEETH: ☑ PASTE ☐ BRUSH
- ☐ HOLDER ☐ D-CLEAN

### FOOD ITEMS

- CANDIES: ☐ BAGS ☐ BARS
- ☐ CANNED MEATS
- CHEESE: ☐ SPREAD ☐ VELVEETA
- ☐ CHIPS ☐ CRACKERS
- ☐ COFFEE ☐ COCOA
- ☐ COOKIES ☐ PASTRIES
- ☐ HOTSAUCE ☐ PEPPERS
- ☐ INSTANT DRINKS ☑ SOUPS
- ☐ JAM/JELLY ☐ HONEY
- ☐ PEANUT BUTTER ☐ NUTS
- ☐ POPCORN ☐ PORK RINDS
- ☐ SUGAR CUBES
- TEA: ☐ BAGS ☐ INSTANT
- ☐ VITAMINS ☐ PROTEIN

### PERSONAL PROPERTY

- ☐ ADDRESS BOOK
- ☐ BATTERIES: SIZE:
- ☐ BINDERS
- BOOKS: (see below)
- ☐ SOFTBACKS ☐ MAGAZINES
- ☐ HARDBACKS
- BRUSH: ☐ HAIR ☐ SHOE
- CLIPPERS: ☐ NAIL ☐ TOE
- COMBS: ☑ AFRO ☐ REGULAR
- GLASSES: ☐ SUN ☐ RX
- ☑ LEGAL MATERIALS *plus c*
- ☑ PERSONAL PAPERS ☑ LETTERS
- ☐ MIRROR: CONDITION
- ☐ PENS ☐ PENCILS
- PHOTOS: ☐ ALBUM ☑ LOOSE
- ☑ ENVELOPES ☑ STAMPS
- ☐ SEWING KIT
- ☐ STATIONERY ☐ TABLETS
- ☐ TUMBLER ☐ CUP
- ☐ BOWL ☐ TUB
- ☐ WALLET
- TAPES/RECORDS - Total of 12 or less
- ☐ CASSETTE TAPES
- ☐ EIGHT TRACK TAPES
- ☐ RECORDS - 45's
- ☐ RECORDS - LP's

## CLOTHING

- ☐ BANDANAS ☐ HEADBANDS
- ☐ BELT ☐ BUCKLE
- CAPS: ☑ B/BALL ☐ W/CAP ☐ VIS
- ☐ JACKETS
- ☑ PANTS
- ☑ PAJAMAS ☐ ROBE
- ☑ RUG
- SHIRTS: ☐ TANK TOP ☐ DRESS SHIRT
- T-SHIRTS: ☐ WHITE ☐ COLORED
- SHOES: ☐ DRESS SHOES ☐ SANDLES
- ☐ BOOTS ☑ TENNIS *white*
- ☑ THONGS
- SHORTS: ☐ UNDER ☐ ATHLETIC *Nikes*
- ☐ SWEATER
- ☐ SWEATPANTS
- ☐ SWEATSHIRT
- ☐ THERMO TOP ☐ THERMO PANTS

### GAMES

- ☐ CHESS ☐ PINOCHLE CARDS
- ☐ CHECKERS ☐ OTHER
- ☐ DOMINOES

### TOBACCO ITEMS

- CIGARETTES: ☐ CARTONS ☐ PACKS
- ☐ CIGARETTE CASE ☑ LIGHTER
- CIGARS: ☐ BOX ☐ PACK ☐ EACH
- ☐ PIPES ☐ ROLLER
- SNUFF: ☐ POUCH ☐ TINS
- TOBACCO: ☐ POUCH ☑ CAN

### OTHER ITEMS:
*Maalox* *Writing paper*
*Dental Floss*

### MAIL OUTS:

### CONFISCATED ITEMS:

## NON-EXPEND ITEMS

- ☐ A/C ADAPTER
  - Make:
  - SR/N:
- ☐ CALCULATOR
  - Make:
  - SR/N:
- ☐ CASSETTE/8-TRACK
  - Make:
  - SR/N:
- ☐ CLOCK
- ☐ ELECTRIC RAZOR
  - Make:
- ☐ HEADPHONES
  - Make:
  - SR/N:
- ☐ LAMP
  - Make:
  - SR/N:
- ☐ MUSICAL INSTRUMENT
  - Type: ___ Model:

### RELIGIOUS MEDAL
- Medal: ☐ GOLD COLOR
- ☐ SILVER COLOR
- CHAIN: ☐ GOLD COLOR
- ☐ SILVER COLOR
- ☐ RECORD PLAYER
  - Make:
  - SR/N:

### RADIO
- ☐ AM/FM ☐ CLOCK
- ☐ CASSETTE ☐ 8-TRACK
  - Make:
  - SR/N:

### TELEVISION
- ☐ BLACK & WHITE ☐ COLOR
- ☐ TV & RADIO COMBINATION
  - Make:
  - SR/N:
- ☐ TELEVISION TESTED
- ☐ TV WORKS ☐ NOT WORKING
- ☐ TYPEWRITER
  - Make:
  - SR/N:
- ☐ RING ☐ GOLD ☐ SILVER
- ☐ WATCH ☐ WRIST ☐ POCKET
  - Make:
  - Color: ☐ GOLD ☐ SILVER

NUMBER OF BOXES
_2_ NUMBER OF BAGS

FOOTLOCKER: ☐ YES ☐ NO

DITTY BAG ☐ YES ☐ NO

---

BELOW TO BE SIGNED UPON RETURN OF PROPERTY TO INMATE:

The above listed items constitute all my personal property.
INMATE'S SIGNATURE: *Maynard Hill*   DATE: 1-29-97

I have received all the above listed personal property or have noted any discrepancies below:
INMATE'S SIGNATURE: ___ DATE: ___

| RECEIVED IN R&R BY: | INST: | DATE: | INSTITUTION | QUAD | ROOM NUMBER |
|---|---|---|---|---|---|
| | | | | | |

DIST: Original to R&R
Copy to Inventory Officer
Copy to Inmate

00544

State of California

Department of Corrections
Ironwood State Prison

# Memorandum

Date    :    **November 5, 1997**

To    :    **INMATE R. HILL**
**CDC #H-43426**
**HOUSING UNIT CFB4-137U**

Subject:    **FIRST LEVEL APPEAL LOG #ISP-C-97-00790**

**APPEAL DECISION:    GRANTED**

**SUMMARY OF APPEAL:**

On Tuesday, November 4, 1997, you were interviewed by Correctional Lieutenant W. E. Shipton concerning your Inmate Appeal Form, Log #ISP-C-97-00790, in which you had submitted regarding a property related concern.

During the interview, wherein Correctional Officer T. Foster was present, you stated your concerns regarding the confiscated property. [ (1) plastic tumbler with lid, (1) square plastic bowl with lid, and (1) hardtime coffee mug with lid ]. As a result, all efforts were made to locate your property. In conclusion, the property was unable to be located due to being misplaced by staff. Per CCR #3193 (b) which states in part the Department does accept liability for the loss or destruction of inmate personal property, when it's established that such loss or destruction results from employee negligence.

**APPEAL RESPONSE:**

Therefore, based on the above, your appeal is being **GRANTED** at the First Level of Review and you are entitled to the $8.60 reimbursement.


_W. Shipton Lt_

**W.E. SHIPTON**
**Correctional Lieutenant**
**Facility "C"**


**First Level Reviewer**

HILL.DOC
CDC 1617 [3/89]



10-19-97

Coordinator:

Could you please log this 602, and due to the conflict of interest that SGT Connelly & LT Shipton has on this 602, that it be forwarded to the first level to other parties then those mentioned above.

Thank
Raymard B Hill
H43428

STATE OF CALIFORNIA
CDC 813 (2/86)

DEPARTMENT OF CORRECTIONS

INMATE/PAROLEE
BOARD OF CONTROL CLAIM RELEASE FORM
INSTITUTION/REGION LOG NO. ISP-C-97-00790
CDC LOG NO.

Upon receipt of payment of _____ eight dollars sixty cents _____ dollars ($ 8.60 ),
_____ INMATE R. HILL _____, CDC #H-43428 , hereby, agrees to release and discharge the
State of California, its officers, agents and employees from any and all liability arising from and under the matters
recited in Claim No. ISP-C-97-00790 _____ approved by the State Board of Control, Warden, or Chief
Deputy Warden (payment to be made by the Department of Corrections in accordance with Government Code
section 965) and from any and all claims and demands which he/she now has or may hereafter have against the
State of California or any officer, agent, or employee thereof, for damage of any nature arising out of the matters
alleged in his/her claim.

This release is freely and voluntarily entered into by the undersigned.

| | | |
|---|---|---|
| INMATE R. HILL | #H-43428 | 11-19-97 |
| INMATE/PAROLEE | CDC NUMBER | DATE |
| STAFF WITNESS SIGNATURE | CC II | 11-19-97 |
| | TITLE | DATE |
| STAFF WITNESS SIGNATURE | TITLE | DATE |

State of California

Department of Corrections
Ironwood State Prison

# Memorandum

Date : **November 13, 1997**

To : **INMATE HILL R. #H-43420**
**HOUSING UNIT B4-137L**

Subject: **SECOND LEVEL RESPONSE APPEAL LOG# ISP-C-97-00790**

## SUMMARY OF APPEAL

You are appealing the issue of confiscated property. You claim your property was taken from your cell and misplaced.

You are requesting that your property be returned or that you be reimbursed the value of the property, which was eight dollars sixty cents ($8.60).

## SUMMARY OF INQUIRY

After reviewing all documentation attached, I find there is sufficient information to substantiate your allegation. Based on this fact, your appeal is **GRANTED** at the second level of review.

## APPEAL RESPONSE

For the reason(s) cited above your appeal is **GRANTED** at the Second Level.

**V. ORTEGA**
**Inmate Appeals Coordinator**

**D. BUTLER**
**Chief Deputy Warden**

Document4
CDC 1617 (3/89)

00548

PRASAD D. MUMMANENI, M.D., INC.
CARDIOLOGY & INTERNAL MEDICINE

1700 NORTH ROSE AVENUE, SUITE 310
OXNARD, CALIFORNIA 93030
TELEPHONE (805) 983-0208

November 24, 1997

ATTENTION: WARDEN BERT RICE
Ironwood State Prison
19005 Wiley's Well Road
Blythe, Ca 92225

Re: INMATE RAYNARD B. HILL
ID: H43428

Dear Sir:

I am writing in regards to my patient, Mrs. Ernestine Hill, whose son, Raynard Hill, is an inmate at your facility.

Mrs. Hill suffers from Ischemic Heart Disease, Hypertension and Diabetes Mellitus and is not physically capable of doing a lot of long distance driving.

It is my recommendation that Mr. Hill be transferred to a facility closer to the Ventura County area if at all possible.  I am thanking you in advance for this consideration.

Sincerely,

Prasad Mummaneni, M.D.

00549

## IRONWOOD STATE PRISON
## INMATE APPEALS OFFICE

## APPEALS MODIFICATION ORDER

TO:  A/W BUSINESS SERVICES
INMATE:   R. HILL
APPEAL LOG:   ISP-C-97-00790
LOGGED IN:   11/19/97

DATE:   11/19/97
NUMBER:   #H-43428
OTHER:   _____
DUE DATE:   12/19/97

The inmate appeal listed above has been **Granted**.  Please review the attached appeal response and take the necessary action to comply by the due date shown above.

## SPECIFIC ACTION REQUIRED:

The above named inmate is to be reimbursed in the amount of eight dollars sixty cents ($8.60) for confiscated property that was misplaced and not found.  Property included one (1) plastic tumbler lid, one (1) square plastic bowl with lid, and one (1) hardtime coffee mug with lid.

Upon completion, please make the appropriate notation at the bottom of this form and return it to the Inmate Appeals Office so it may be recorded and the file closed on this appeal.

*V. Ortega CCII*
APPEALS COORDINATOR
INMATE APPEALS OFFICE

C-FILE

DATE OF ACTION: _____

ACTION TAKEN: Packet sent to RAO in El Centro Ca for review and processing. 12-5-97 Graul FUNDS IN THE AMOUNT OF $8.60 per claim schedule 7210594 WERE REQUESTED FROM THE STATE CONTROLLER'S OFFICE FOR THE REIMBURSEMENT OF LOST PERSONAL PROPERTY OF I/M R. HILL, H-43428 PER APPEAL NO. ISP-C-97-00790.

PERSON TAKING THE ACTION: _____

SIGNATURE: _____  TITLE _____

APPEALS OFFICE PROCESSING
cc:   c-file
      Chief, Inmate Appeals Branch (3rd Level Orders)



00551

STATE OF CALIFORNIA

**INMATE/PAROLEE APPEAL FORM**

CDC 602 (12/87)

DEPARTMENT OF CORRECTIONS

Location: Institution/Parole Region    Log No.    Category
1. ASP    1. 95-01818    #3
2.    2.

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME HILL, RAYNARD | NUMBER H43428 | ASSIGNMENT PRE-RELEASE | UNIT/ROOM NUMBER 450-1-77up |

**A. Describe Problem:** I HAVE A SUBSCRIPTION TO VENTURA CO. STAR NEWSPAPER. ON NUMEROUS OCCASIONS MY PAPER WASN'T DELIEVERED TO ME. I'VE NOTIFIED THE PAPER CO. & THE POSTAL INSPECTOR AND WAS INFORMED THAT THE PAPERS ARE BEING DE-LIEVERED TO THE INSTITUTION, BUT I EITHER DON'T RECIEVE THEM OR THEY COME OUT OF SEQUENCE 3 TO 5 DAYS LATER. THE MAIL ROOM SGT/SUBORDINATES ARE IN VIOLATION OF ARTICLE 4 SECTION 3130, 3138(a) & (b), SUBCHAPTER 1 ARTICLE 2 SECTION 3391 & 3413 OF THE CDC TITLE 15.

If you need more space, attach one additional sheet.            ✱ SEE ATTACHED PAGE #1

**B. Action Requested:** AN INVESTIGATION OF TAMPERING OF FEDERAL MAIL, REIMBERSE-MENT FOR THE RECENT NEWSPAPERS NOT RECIEVED, AND CORRECT THE PROBLEM SO I MAY RECIEVE MY MAIL PROPERLY WITHIN THE INSTITUTIONS POLICIES.

Inmate/Parolee Signature: *Raynard B. Hill H43428*    Date Submitted: AUG 28, 1995

**C. INFORMAL LEVEL** (Date Received: AUG 29 1995)

Staff Response: Denied. It is the policy here at Avenal State Prison to process all newspapers & subscriptions immediately upon arrival

Staff Signature: *E. Campos*    Date Returned to Inmate: AUG 30 1995

**D. FORMAL LEVEL**
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

BEING THAT MY NEWSPAPER IS A DAILY SUBSCRIPTION AND SENT OUT DAILY, DURING THE WEEK I'M NOT GETTING MY PAPER. SINCE THE 29TH OF AUG GETTING MY PAPER MADE A TURN FOR THE WORSE, WHICH I FEEL IS A VIOLATION OF THE TITLE 15 ARTICLE 8 SEC 3084.1(d) "REPRISAL"    SEE ATTACHED PG II

Signature: *Raynard B. Hill H43428*    Date Submitted: SEPT 1, 1995

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

CDC Appeal Number:

SEP 06 REC'D

First Level     ☐ Granted     ☒ P. Granted     ☐ Denied     ☐ Other _____

E.  REVIEWER'S ACTION (Complete within 15 working days): Date assigned: __SEP 06 REC'D__     Due Date: __SEP 2 7 1995__

Interviewed by: _____

_____ *See attached* _____

_____ *copy* _____

_____

_____

_____

Staff Signature: _____     Title: _____     Date Completed: __9-8-95__

Division Head Approved:                                           Returned
Signature: __I.J. Randall__     Title: __Asn__     Date to Inmate: _____

F.  If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to institution or Parole Region Appeals Coordinator within 15 days of
    receipt of response.

_____

_____

_____

_____

Signature: _____     Date Submitted: _____

Second Level     ☐ Granted     ☐ P. Granted     ☐ Denied     ☐ Other _____

G.  REVIEWER'S ACTION (Complete within 10 working days): Date assigned: _____     Due Date: _____
☐ See Attached Letter

Signature: _____     Date Completed: _____

Warden/Superintendent Signature: _____     Date Returned to Inmate: _____

H.  If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of
    response.

_____

_____

_____

_____

Signature: _____     Date Submitted: _____

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION:   ☐ Granted     ☐ P. Granted     ☐ Denied     ☐ Other _____
☐ See Attached Letter
                                                                Date: _____
CDC 602 (12/87)

State of California                                                    SEP 11 1995

# Memorandum

Date : September 8, 1995

To : Inmate Hill,          H-43428          450-1-77U

From : **Department of Corrections—Avenal State Prison**

Subject: Formal level response to inmate appeal log #95-01818

On September 8, 1995 I conducted an interview with you in regards
to your inmate appeal log #95-01818. You claim that you have
not been receiving all of your newspaper subscriptions. You
are requesting that the mailroom forward all your papers in a
timely manner.

Upon completion of my interview with you I advised you that as
newspapers and magazines are received here at the prison they
are forwarded to you. You indicated you have been receiving
your newspapers out of date sequence. This is an indication
that the newspapers are being forwarded to you.

Based on the foregoing your inmate appeal is being PARTIALLY
GRANTED at this level in that your newspapers are forwarded
as they arrive. The whereabouts of your said lost newspapers
is unknown. You will not receive any reimbursement due to the
lack of evidence supporting your allegations of staff misconduct.


J. Draper
Mailroom Sergeant
Avenal State Prison

00554

STATE OF CALIFORNIA

**Treat as Original**

DEPARTMENT OF CORRECTIONS

**INMATE/PAROLEE APPEAL FORM**
CSC 602 (12/87)

MAY 1 1996

ORIGINAL FILE

Location: Institution/Parole Region  QUSP    Log No. 96-0338    Category 19

REG II    96-00320    11

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken or using the appeals procedure responsibly.

NAME HILL, RAYNARD B.    NUMBER H43428    ASSIGNMENT UNASSIGNED    UNIT/ROOM NUMBER FD2B-140 LOW

A. Describe Problem: I FEEL PAROLE OFFICER KAREN ERWIN IS IN VIOLATION OF THE FOLLOW-ING CODES LISTED IN THE TITLE 15 OF THE DEPARTMENT OF CORRECTIONS. ARTICLE 2. 3391. CONDUCT, ARTICLE 2. 3400 FAMILIARITY; ARTICLE 10. 3901.19.5 SUPPLEMENTAL PAROLE VIOLATION REPORT DUE TO HER UNPROFESSIONALISM THERE'S SIGNS OF BREWING ANIMOSITY, WHICH CAUSING CONFLICT BETWEEN P.O. ERWIN AND I, MY JOB AT POOL CALIFORNIA, AND MY FAMILY MEMBERS.

If you need more space, attach one additional sheet. *ADDITIONAL PAGE ADD*

B. Action Requested: I'M REQUESTING REMOVAL OF KAREN ERWIN CASELOAD AND NOTIFICATION OF SELF PAROLE. DUE TO STRESS ON FAMILY AND MOTHER'S HEART CONDITION

Inmate/Parolee Signature: Raynard B Hill H43428    Date Submitted: 2-29-96

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

BYPASS

Staff Signature: _____    Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

No Response from Informal Level, Requesting Cmo# AND Returned to Inmate

Signature: Raynard B Hill    Date Submitted: 4-17-96

Note: Property/funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim    CDC Appeal Number: _____

First Level ☒ Granted ☐ P. Granted ☐ Denied ☐ Other

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: ______ Due Date: ______

**Interviewed by:** Your appeal is granted not because the allegations you made are true but becaus I wanted to remove the slightest possibility of the likelihood of there being any over-familiarity. I interviewed Agent Erwin who assured me that her conduct with you and your family has always been professional with her interaction limited to what was needed to perform her duties. She reported her contact with your mother has always been work-related as a parole agent and while employed by the Youth Authority. Agent Erwin stated she never told you to falsify an employment application and never attempted to contact you at your (Continued)

Staff Signature: Devon Johnson Title: District Administrator Date Completed: 5-23-96

Division Head Approved: Returned

Signature: ______ Title: ______ Date to Inmate: 5-31-96

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

Signature: ______ Date Submitted: ______

Second Level ☐ Granted ☐ P. Granted ☐ Denied ☐ Other

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: ______ Due Date: ______

☐ See Attached Letter

Signature: ______ Date Completed: ______

Warden/Superintendent Signature: ______ Date Returned to Inmate: ______

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

Signature: ______ Date Submitted: ______

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION: ☐ Granted ☐ P. Granted ☐ Denied ☐ Other

☐ See Attached Letter

Date: ______

CDC 602 (12/87)

H43428 HILL, Raynard
Appeal #REGII-X-96-00320                                    5-23-96

First Level, continued

job. She believes you lost your job due to your behavior and not because anything she did.

Agent Erwin stands by her opinion that you are in your current predicament due to your drug use. This is her opinion which has been formed by your previous behavior (eight prior positive drug tests for cocaine while on parole). I think her opinion is an accurate assessment of what is causing your criminality.

You will be assigned another agent in the near future. If you are not notified who is your new agent prior to your relese, report to the Unit Supervisor within 24 hours of your release.

Devon Johnson
District Administrator

00557

3901.19 5

By failing to give a complete report. By not gathering the information from sister who lives at the same resident as parolee charged with 851 CVC DM which was rejected by courts, instead went by fabricated police report. By not listing or informing Board of any positive aspects of my parole such as: steady job, no police contact since last paroled, and never failed to report before. I'm no danger to society, but P.O. Erwin insist on saying everything negatively about me. "Failure to report due to drug use" & "Beginning criminal activity" which are both false statements for one thing I tested in Oxnard police dept upon arrest and P.O. Erwin has nothing to support that was using drugs. I do feel if P.O. Erwin would've called my mother or sister which she never had a problem with, and got the information available instead of threw it upon herself to send me back to prison, I believe we could've reached a different conclusion.

DEPARTMENT OF CORRECTIONS
TITLE 15
RULE AND REGULATIONS

Article 2. Sec. 3391. Conduct.

Employees shall be professional in their dealing with parolees, irresponsible or unethical conduct or conduct reflecting discredit on themselves or the Department on or off duty shall be avoided.

Due to P.O. Erwin incouragement to perjury myself on a Employment application, I have lost my job not because of being incharserated but for falsifying an application. She felt it would help get me the job by not saying any parole.

Article 2. Sec. 3400. Familiarity.

Employee must not engage in unsue familiarity with parolees or the family of the parolee. Whenever employee have personal contact with parolee & family of parolee, employee must maintain a helpful but professional attitude. Demeanor. Employee must not discuss their personal affairs with parolee.

When P.O. Erwin evaluates/counsels me she refers to her and her family's relationship with her brother and his drug problem, and she knows about this and that cause of the experiences. When evaluating me, her brother is not relevent, we now up in different worlds, I really don't care, and none of my business. Also Erwin's 10th yrs. relationship working together with my mother at California with Authority "Ventura School" give P.O. Erwin the feeling my mother should in the middle of her actions against me by calling her, supeona her to my and hearring 2-20-96 when she had no input on the states behalf. This latunship. has caused P.O. Erwin to talk & treat me aggressively on a personal evel which to me is causing a conflict.

Article 10. Sec. 3901.19.5. Supplemental Parole Violation Report.

May be submitted to report new information or evidence which tends prove or disprove violations previously charged; expand, clarify or correct information in earlier report; add or amend charges before hearring is scheduled; information related to violation which may effect parole hearring division decision regarding appropriate disposition.

00559

```
                    IWTIP TIME COLLECTION SYSTEM    V2.0   06/22/95 10:01:19.3
                         TIMECARD CHANGE PROCESS
************************************************************************
CDC NO===> H43428                      APPLIED CREDITS===)              0
NAME=====> HILL,RAYNARD,BYRON          WCR ADJ===========)            0.0
W/P GRP==> A2                          UNAPPLIED CREDITS=)             76.0
EFF-DATE=) 05-01-1995    WVR-DATE=) 01-21-1995   ETO CREDITS========)   0
************************************************************************
        TRNS  W-P                              DAYS DAYS   ETO  ETO   TIME
SEQ # TYPE   GRP   DATE FROM      DATE THRU     WRKD  CR  USED EARND  GAP
```

| SEQ # | TRNS TYPE | W-P GRP | DATE FROM | DATE THRU | DAYS WRKD | DAYS CR | ETO USED | ETO EARND | TIME GAP |
|---|---|---|---|---|---|---|---|---|---|
| 1 | A | U | 01-21-1995 | 01-31-1995 | 11 | 5.5 | 0 | 0 | |
| 4 | A | U | 02-01-1995 | 02-28-1995 | 28 | 14.0 | 0 | 0 | |
| 7 | A | U | 03-01-1995 | 03-31-1995 | 31 | 15.5 | 0 | 0 | |
| 10 | A | U | 04-01-1995 | 04-30-1995 | 30 | 15.0 | 0 | 0 | |
| 16 | A | A2 | 05-01-1995 | 05-31-1995 | 31 | 15.5 | 0 | 0 | |
| 19 | A | A2 | 06-01-1995 | 06-21-1995 | 21 | 10.5 | 0 | 0 | |

```
FUNCTION: _
SEQ#: ____  __  __ / __ / ____   __ / __ /
```

6/22/95 wo'd parole audit RRD

```
     PAGE BACK==) PF1     SELECT===) PF10    MENU==) PF11    END SESSION==) PF12
```

00560

```
                 INMTP TIME COLLECTION SISTEM     V1.0  03-23-93 08:10:45.0
                 TIMECARD CHANGE PROCESS
*************************************************************************
CDC NO===) H43428                        APPLIED CREDITS===)          0
NAME*====) HILL,RAYMARD,BYRON            WCR ADJ===========)        0.0
W/P GRP==) 0                             UNAPPLIED CREDITS=)        0.0
EFF-DATE=)    -  -      WVR-DATE=) 01-21-1995   ETO CREDITS=======)   0
*************************************************************************
        TRNS   W-P                           DAYS DAYS   ETO  ETO   TIME
SEQ # TYPE    GRP   DATE FROM     DATE THRU   WRKD  CR  USED EARND  GAP
----- ----    ---   ----------    ----------  ---- ---- ----- ----- ----

               ------------- NO RECORDS----------------



FUNCTION: _
SEQ#: ____  __  __ / __ / ____  __ / __ / ____    ___        ___ ___

     PAGE BACK==) PF1    SELECT==) PF10   MENU==) PF11   END SESSION==) PF12
```

*Sene RTC    1-21-95*

CDC NUMBER          ARRIVAL DATE

INMATE NAME

IWTIP
RECORDS

PLEASE RETAIN IN C-FILE

```
              IWTIP TIME COLLECTION SYSTEM      V2.0  03/04/96 15:58:06.4
                    TIMECARD CHANGE PROCESS
***************************************************************************
CDC NO===> H43428                          APPLIED CREDITS===>          0
NAME=====> HILL,RAYNARD,BYRON               WCR ADJ============>        0.0
W/P GRP==> A1                               UNAPPLIED CREDITS=>        125.0
EFF-DATE=> 08-05-1995    WVR-DATE=> 01-21-1995   ETO CREDITS======>     16
***************************************************************************
          TRNS  W-P                        DAYS DAYS   ETO  ETO   TIME
                                                                  GAP
SEQ #  TYPE   GRP   DATE FROM     DATE THRU     WRKD  CR   USED EARND
-----  ----   ---   ----------    ----------    ----  ----  ----  -----  ----

     1   A    U     01-21-1995    01-31-1995      11   5.5    0     0
     4   A    U     02-01-1995    02-28-1995      28  14.0    0     0
     7   A    U     03-01-1995    03-31-1995      31  15.5    0     0
    10   A    U     04-01-1995    04-30-1995      30  15.0    0     0
    16   A    AZ    05-01-1995    05-31-1995      31  15.5    0     0
    19   A    AZ    06-01-1995    06-21-1995      21  10.5    0     0

FUNCTION: _
SEQ#: ____  __  __ / __ / ____   __ / __ / ____   ___         ___  ___

   PAGE BACK==> PF1    SELECT==> PF10    MENU==> PF11    END SESSION==> PF12
```

00563

```
              IWTIP TIME COLLECTION SYSTEM     V2.0   03/04/96 15:58:12.0
                  TIMECARD CHANGE PROCESS
*****************************************************************************
CDC NO===> H43428·                          APPLIED CREDITS===>        0
NAME=====> HILL,RAYNARD,BYRON               WCR ADJ===========>        0.0
W/P GRP==> A1                               UNAPPLIED CREDITS=>      125.0
EFF-DATE=> 08-05-1995   WVR-DATE=> 01-21-1995  ETO CREDITS=======>     16
*****************************************************************************
         TRNS  W-P                         DAYS DAYS  ETO  ETO   TIME
SEQ #  TYPE  GRP   DATE FROM    DATE THRU   WRKD  CR  USED EARND  GAP
-----  ----  ---   ----------   ----------  ---- ----- ---- ----- ----

  22   A     A2    06-22-1995   06-30-1995    9   4.5   0    0
  25   A     A2    07-01-1995   07-31-1995   31  15.5   0    0
  28   A     A2    08-01-1995   08-04-1995    4   2.0   0    0
  31   A     A1    08-05-1995   08-05-1995    1   1.0   0    0
  34   A     A1    08-06-1995   08-31-1995   26  26.0   0   16


FUNCTION: _
SEQ#: ____  __  __ / __ / ____  __ / __ / ____   ___        ___  ___

   PAGE BACK==> PF1    SELECT==> PF10   MENU==> PF11   END SESSION==> PF12
```

00564

```
          IWTIP TIME COLLECTION SYSTEM     V2.0  03/04/96 15:58:16.6
                 TIMECARD CHANGE PROCESS
*****************************************************************************
CDC NO===> H43428                    APPLIED CREDITS===>            0
NAME=====> HILL,RAYNARD,BYRON         WCR ADJ===========>          0.0
W/P GRP==> A1                         UNAPPLIED CREDITS=>        125.0
EFF-DATE=> 08-05-1995    WVR-DATE=> 01-21-1995   ETO CREDITS======>    16
*****************************************************************************
        TRNS  W-P                        DAYS DAYS   ETO  ETO   TIME
SEQ #   TYPE  GRP  DATE FROM     DATE THRU    WRKD  CR  USED EARND  GAP
-----   ----  ---  ----------    ----------   ---- ----- ---- ----- ----

             ------ NO MORE RECORDS (PAGE BACK) -----




FUNCTION: _
SEQ#: ____  __  __ / __ / ____  __ / __ / ____   ___        ___ ___

   PAGE BACK==> PF1    SELECT==> PF10   MENU==> PF11   END SESSION==> PF12
```

CDC # _____*H 43428*_____     ARRIVAL DATE _*4-18-84*_

INMATE NAME _*Hill, Raymond Lynn*_     ALPHA ID _____

ACA _____

# I W T I P

INMATE WORK TIME INCENTIVE PROGRAM

INMATE WORK RECORDS FROM PREVIOUS TERM

PLEASE RETAIN IN CENTRAL FILE

# S A V E

00566

```
              IWTIF /INE COLLECTION SYSTEM    V3.0  04/03/94 07:02:11 7
                       TIMECARD CHANGE PROCESS
**********************************************************************
CDC NO===> H43428                             APPLIED CREDITS===>        435
NAME=====> HILL,RAYNARD,EYRON                 WCR ADJ===========>        0.
W/P GRP===> A1                                UNAPPLIED CREDITS==>        0.
EFF-DATE==> 10-14-1992    WVR-DATE==> 07-29-1992   ETO CREDITS=======>   192
**********************************************************************
         TRNS   W-P                          DAYS DAYS   ETO  ETO   TIME
SEQ #    TYPE   GRP   DATE FROM      DATE THRU WRKD  CR  USED EARND  GAP
-----    ----   ---   ---------     ---------  ----  --  ---- -----  ---

    4     A      U    07-29-1992    07-31-1992    3  1.5    0    0
    7     A      U    08-01-1992    08-31-1992   31 15.5    0    0
   10     A      U    09-01-1992    09-15-1992   15  7.5    0    0
   13     A      A2   09-16-1992    09-20-1992    5  2.5    0    0
   16     A      A2   09-21-1992    09-30-1992   10  5.0    0    0
   19     A      A2   10-01-1992    10-13-1992   13  6.5    0    0

FUNCTION: __
SEQ#: _____   ___   ___ / ___ / _____   ___ / ___ / _____   _____         _____

   PAGE BACK==> PF1    SELECT==> PF10   MENU==> PF11   END SESSION==> PF12
```

00567

```
              IWTIP TIME COLLECTION SYSTEM    V1.0  04/25/94 07:02:20.1
                     TIMECARD CHANGE PROCESS
****************************************************************************
CDC NO====> H43428                          APPLIED CREDITS===>          465
NAME=====> HILL,MAYNARD,BYRON               WCR ADJ===========>           0.
W/P GRP===> A1                              UNAPPLIED CREDITS=>           0.
EFF-DATE==> 10-14-1992   WVR-DATE==> 07-29-1992  ETO CREDITS========>    192
****************************************************************************
        TRNS  W-P                          DAYS DAYS   ETO  ETO    TIME
 SEQ # TYPE  GRP  DATE FROM      DATE THRU  WRKD  CR  USED EARND   GAP
 -----  ----  ---  ---------      ---------  ----  ----  ----  -----   ----

    25   A    A1  10-14-1992     10-31-1992   18  18.0    0    0
    28   A    A1  11-01-1992     11-30-1992   29  29.0    0   24
    31   A    A1  12-01-1992     12-31-1992   31  31.0    0   24
    34   A    A1  01-01-1993     01-25-1993   25  25.0    0   16
    37   A    A1  01-26-1993     01-31-1993    6   6.0    0    0
    40   A    A1  02-01-1993     02-28-1993   28  28.0    0   16


FUNCTION: _
SEQ#: _____  ____  ___ / ___ / _____  ___ / ___ / _____  _____  _____

    PAGE BACK==> PF1    SELECT==> PF10   MENU==> PF11   END SESSION==> PF12
```

00568

```
                    INFIR TIME COLLECTION SYSTEM      V2.0  04/25/94 07:00:26.5
                      TIMECARD CHANGE PROCESS
*****************************************************************************
CDC NO===> N43426                          APPLIED CREDITS===>         465
NAME======> HILL,RAYNARD,BYRON             WCR ADJ============>          0.
W/P GRP==> A1                              UNAPPLIED CREDITS==>          0.
EFF-DATE==> 10-14-1992   WVC-DATE==> 07-29-1992   ETO CREDITS=========>   192
*****************************************************************************
         TRNS  W-P                                 DAYS DAYS   ETO   ETO   TIME
SEQ #  TYPE   GRP    DATE FROM         DATE THRU    WRKD  CR  USED EARNG  OAP
-----  ----  ----  ----------       ----------     ----  ---  ---- -----  ---

   43    A     A1   03-01-1993       03-31-1993       31  31.0    0    16
   46    A     A1   04-01-1993       04-30-1993       30  30.0    0    16
   52    C     A1   05-01-1993       05-31-1993       31  31.0    8    16
   55    A     A1   06-01-1993       06-30-1993       30  30.0    0    16
   58    A     A1   07-01-1993       07-31-1993       31  31.0    0    16
   61    A     A1   08-01-1993       08-31-1993       31  31.0    0    16

FUNCTION: __
SEQ#: _____  _____  _____ / ____ / _____  ____ / ____ / _____  _____   _____ _____

   PAGE BACK==> PF1    SELECT==> PF10   MENU==> PF11   END SESSION==> PF12
```

00569

```
                    IWTIP TIME COLLECTION SYSTEM    V2.0  04/25/94 07:02:34.0
                         TIMECARD CHANGE PROCESS
***********************************************************************
CBC NO===> H43428                          APPLIED CREDITS===>       465
NAME=====> HILL,RAYNARD,BYRON              WCR ADJ===========>        0.
W/P GRP==> A1                              UNAPPLIED CREDITS==>        0.
EFF-DATE=> 10-14-1992   WVR-DATE=> 07-29-1992   ETO CREDITS=======>  192
***********************************************************************
        TRNS  W-P                          DAYS DAYS  ETO  ETO   TIME
SEQ # TYPE  GRP  DATE FROM     DATE THRU    WRKD  CR  USED EARND  GAP
----- ----  ---  ---------     ---------    ---- ---- ---- ----- -----

   64  A    A1   09-01-1993    09-27-1993    27  27.0   0    8
   67  A    A1   09-28-1993    09-30-1993     3   3.0   0    0
   70  A    A1   10-01-1993    10-25-1993    25  25.0   0    0
   73  A    A1   10-26-1993    10-31-1993     6   6.0   0    0
   76  A    A1   11-01-1993    11-04-1993     4   4.0   0    0
   79  A    A1   11-05-1993    11-30-1993    26  26.0   0    0

FUNCTION: _
SEQ#: _____    ____    ___ / ___ /  ____    ___ / ___ /  ____    ____    _____    _____

    PAGE BACK==> PF1    SELECT==> PF10    MENU===> PF11    END SESSION==> PF12
```

00570

```
              BWTIP TIME COLLECTION SYSTEM     V2.5  01/08/94 07.00.41.4
                      TIMECARD CHANGE PROCESS
*************************************************************************
CCC NO===> H43423                          APPLIED CREDITS===>       443
NAME======> HILL,RAYNARD,BYRON             WCF ADJ===========>         0.
W/P GRP==> A1                              UNAPPLIED CREDITS=>         0.
EFF-DATE==> 10-14-1992   WUR-DATE=> 07-29-1992   ETO CREDITS========>     192.
*************************************************************************
         TRNS  W-P                        DAYS DAYS   ETO   ETO   TIME
SEQ #  TYPE  GRP  DATE FROM      DATE THRU  WRKD  CR   USED EARND  GAP


  82    A    A1   12-01-1993     12-15-1993   15  15.0    0     0



FUNCTION: _
SEQ#: _____  ____  ___ / ___ / _____  ___ / ___ / _____    _____    _____   _____

   PAGE BACK==> PF1    SELECT==> PF10   MENU==> PF11   END SESSION==> PF12
```

00571

```
                IWTIP TIME COLLECTION SYSTEM    V2.0  04/25/94 07:02:47.9
                TIMECARD CHANGE PROCESS
****************************************************************************
CDC NO===> H43428                          APPLIED CREDITS===>      465
NAME====> HILL,RAYNARD,BYRON                WCR ADJ============>      0.
W/P GRP==> A1                              UNAPPLIED CREDITS==>      0.
EFF-DATE=> 10-14-1992   WVR-DATE=> 07-29-1992   ETO CREDITS========>    192
****************************************************************************
        TRNS  W-P                          DAYS DAYS   ETO  ETO    TIME
SEQ # TYPE  GRP  DATE FROM      DATE THRU   WRKD  CR'  USED EARND   CAP
----- -----  ----  -----------      -----------   ----- -----  ----- -----   ----
```

```
          ------ NO MORE RECORDS (PAGE BACK) ------
```

```
FUNCTION: __
SEQ#: _____  ____  ___ / ___ / _____  ___ / ___ / _____   _____    _____

   PAGE BACK==> PF1    SELECT==> PF10   MENU==> PF11   END SESSION==> PF12
```

00572

```
          IWTIP TIME COLLECTION SYSTEM    V2.0   09/27/93 08:04:45.9
                TIMECARD CHANGE PROCESS
**************************************************************************
CDC NO===> H43428                          APPLIED CREDITS===>       267
NAME=====> HILL,RAYNARD,BYRON              WCR ADJ============>       0.0
W/P GRP==> A1                              UNAPPLIED CREDITS=>      119.5
EFF-DATE==> 10-14-1992   WVR-DATE=> 07-29-1992   ETO CREDITS=======>  192
**************************************************************************
        TRNS  W-P                         DAYS DAYS   ETO   ETO   TIME
SEQ #  TYPE  GRP   DATE FROM      DATE THRU   WRKD  CR   USED  EARND  GAP
------ ----- ----- -------------  ----------- ----  ---- ----- ----- -----

  64   A    A1   09-01-1993     09-27-1993    27  27.0     0     8
```

386.8

```
FUNCTION: _
SEQ#: _____  ____  ____ / ___ / _____  ___ / ___ / _____   _____       _____  _____

   PAGE BACK==> PF1    SELECT==> PF10   MENU==> PF11   END SESSION==> PF12
```

```
          IWTIP TIME COLLECTION SYSTEM     V2.0  09/27/93 08:04:40.6
                  TIMECARD CHANGE PROCESS
*******************************************************************************
CDC NO===> N43428                        APPLIED CREDITS===>           267
NAME=====> HILL,RAYNARD,BYRON            WCR ADJ===========>           0.0
W/P GRP==> A1                            UNAPPLIED CREDITS=>          119.5
EFF-DATE=> 10-14-1992  WVR-DATE=> 07-29-1992  ETO CREDITS=======>     192
*******************************************************************************
         TRNS  W-P                         DAYS DAYS   ETO  ETO   TIME
SEQ #    TYPE  GRP   DATE FROM    DATE THRU  WRKD  CR  USED EARND  GAP
-------  ----  ---   ---------    ---------  ----  --  ---- -----  ----

   43     A    A1    03-01-1993   03-31-1993   31  31.0     0     16
   46     A    A1    04-01-1993   04-30-1993   30  30.0     0     16
   52     C    A1    05-01-1993   05-31-1993   31  31.0     8     16
   55     A    A1    06-01-1993   06-30-1993   30  30.0     0     16
   58     A    A1    07-01-1993   07-31-1993   31  31.0     0     16
   61     A    A1    08-01-1993   08-31-1993   31  31.0     0     16

FUNCTION: _
SEQ#: _____  ____  ____ / ___ / _____  ___ / ___ / _____  _____  _____

   PAGE BACK==> PF1    SELECT==> PF10    MENU==> PF11    END SESSION==> PF12
```

00574

```
            IWTIP TIME COLLECTION SYSTEM    V2.0  06/15/93 09:55:38.2
                   TIMECARD CHANGE PROCESS
****************************************************************************
CDC NO===> H43428                          APPLIED CREDITS===>        236
NAME=====> HILL,RAYNARD,BYRON               WCR ADJ============>       0.0
W/P GRP==> A1                              UNAPPLIED CREDITS==>       30.5
EFF-DATE=> 10-14-1992   WVR-DATE=> 07-29-1992   ETO CREDITS=======>   136
****************************************************************************
       TRNS  W-P                          DAYS DAYS   ETO  ETO   TIME
SEQ #  TYPE  GRP  DATE FROM      DATE THRU  WRKD  CR  USED EARND  GAP
-----  ----  ---  ---------     ---------  ----  ----  ----  -----  ----

  25    A    A1   10-14-1992   10-31-1992   18   18.0 ✓  0    0 —
  28    A    A1   11-01-1992   11-30-1992   29   29.0 ✓  0   24 ← APPLIED 11/30
  31    A    A1   12-01-1992   12-31-1992   31   31.0 ✓  0   24
  34    A    A1   01-01-1993   01-25-1993   25   25.0 ✓  0   16
  37    A    A1   01-26-1993   01-31-1993    6    6.0 ✓  0    0
  40    A    A1   02-01-1993   02-28-1993   28   28.0 ✓  0   16

FUNCTION: __
SEQ#: _____  ___  ___ / ___ / _____  ___ / ___ / _____  _____  _____

   PAGE BACK==> PF1   SELECT==> PF10   MENU==> PF11   END SESSION==> PF12
```

00575

```
        IWTIP TIME COLLECTION SYSTEM    V2.0  06/15/93 09:55:00.2
                 TIMECARD CHANGE PROCESS
****************************************************************
COC NO===> H43428                        APPLIED CREDITS===>      236
NAME=====> HILL,RAYNARD,BYRON            WCR ADJ===========>      0.0
W/P GRP==> A1                            UNAPPLIED CREDITS=>      30.5
EFF-DATE=> 10-14-1992   WVR-DATE=> 07-29-1992   ETO CREDITS=======>  136
****************************************************************
        TRNS  W-P                        DAYS DAYS  ETO  ETO   TIME
SEQ #   TYPE  GRP   DATE FROM      DATE THRU      WRKD  CR  USED EARND  GAP
------  ----  ---   ---------      ---------      ----  ---  ---- -----  ----

     4   A    U     07-29-1992     07-31-1992      3    1.5       0     0
     7   A    U     08-01-1992     08-31-1992     31   15.5       0     0
    10   A    U     09-01-1992     09-15-1992     15    7.5       0     0
    13   A    A2    09-16-1992     09-20-1992      5    2.5       0     0
    16   A    A2    09-21-1992     09-30-1992     10    5.0       0     0
    19   A    A2    10-01-1992     10-13-1992     13    6.5       0     0

FUNCTION: _
SEQ#: _____   ____   ____ / ____ / _____   ____ / ____ / _____   _____   _____   _____

    PAGE BACK==> PF1    SELECT==> PF10    MENU==> PF11   END SESSION==> PF12
```

00576

Case 3:07-cv-03165-CRB   Document 40-13   Filed 03/07/2009   Page 38 of 110

# TRANSCRIPT OF STUDENT RECORD

**DISTRICT**

| STUDENT NAME | PARENT NAME | BIRTHDATE | | | | |
|---|---|---|---|---|---|---|
| STUDENT NAME | PARENT NAME | BIRTHDATE | 9TH ATTENDED 165 DAYS | ABSENT 0 DAYS | 10TH ATTENDED 163 DAYS | ABSENT 2 DAYS |
| HILL RAYNARD | ROY HILL | 3/10/60 | 11TH ATTENDED 160 DAYS | ABSENT 15 DAYS | 12TH ATTENDED 7 DAYS | ABSENT 17 DAYS |
| STUDENT NO. | MAILING ADDRESS | SEX SCH | DRIVER EDUCATION COMPLETE YES 6-75 | | DRIVER TRAINING COMPLETE 6-76 | |
| 406115 | 3660 KEEL | 1    1 | FIRST AID TRAINING COMPLETE YES | | M.G.M. ACV1601 | |
| DATE ENTERED | CITY    STATE | PHONE | COMP. GRAD. REQ. | | RDG. MATH | |
| 9/02/74 | OXNARD    CA | 486-0652 | GRADUATION DATE JAN 30 1978 | | | |

| 406115 HILL RAYNARD 09 | | | | |
|---|---|---|---|---|
| 406115 DATE 1/30/75 W/G | GRADE | CIT | CREDIT | |
| BOYS PE 9 | A | 2 | 5 | |
| ENGLISH 9 | D | 2 | 5 | |
| GEOGRAPHY NT | C | 2 | 5 | |
| MATH 9 | B | 2 | 5 | |
| VARSITY BAND | B | 2 | 5 | |
| WOOD 1 | C | 2 | 5 | |

| TUA | TUC | TGP | GPA | CLASS SIZE | RANK |
|---|---|---|---|---|---|
| 25.0 | 30.0 | 055 | 2.20 | 627 | |

| 406115 HILL RAYNARD 09 | | | | |
|---|---|---|---|---|
| 406115 DATE 6/13/75 W/G | GRADE | CIT | CREDI | |
| BOYS PE 9 | A | 2 | 5 | |
| ENGLISH 9 | A | 2 | 5 | |
| DE/S REQ 1 | C | 2 | 5 | |
| MATH 9 | A | 2 | 5 | |
| CONCERT BA | A | 1 | 5 | |
| WOOD 1 | A | 2 | 5 | |

MATH AC V 1601 (C) (2)   COMP. GRAD. REQ

| 406115 HILL RAYNARD 10 | | | | |
|---|---|---|---|---|
| 406115 DATE 1/29/76 W/G | GRADE | CIT | CREDIT | |
| BOYS PE 10 | A | 2 | 5 | |
| ENGLISH 10 | B | 2 | 5 | |
| MINORITY ST | C | 2 | 5 | |
| ALGEBRA | D | 2 | 5 | |
| EVD SCIENCE | D | 2 | 5 | |
| CONCERT BAND | A | 2 | 5 | |

COMP. GRAD. REQ. AC V 1601 (C) (2)

| TUA | TUC | TGP | GPA | CLASS SIZE | RANK |
|---|---|---|---|---|---|
| 80.0 | 95.0 | 200 | 2.50 | 585 | |

| 406115 HILL RAYNARD 10 | | | | |
|---|---|---|---|---|
| 406115 DATE 6/10/76 W/G | GRADE | CIT | CRED | |
| BOYS PE 10 | A | 2 | 5 | |
| ENGLISH 10 | F | 2 | | |
| CALIFORNIA | F | 2 | | |
| PSYCHOLOGY C | C | 1 | 5 | |
| ALGEBRA | D | 2 | 5 | |
| EVD SCIENCE | B | 2 | 5 | |

| TUA | TUC | TGP | GPA | CLASS SIZE | RANK |
|---|---|---|---|---|---|
| 105.0 | 115.0 | 230 | 2.19 | 554 | |

| 406115 DATE 1/27/77 W/G | GRADE | CIT | CREDIT | |
|---|---|---|---|---|
| PE | A | 2 | 5 | |
| ENGLISH 3 | D | 3 | 5 | |
| US HIST 11 | C | 2 | 5 | |
| SPANISH 1 | D | 2 | 5 | |
| OFFICE PRAC | B | 2 | 5 | |
| DISMISSAL 1 | N | 2 | | |

| TUA | TUC | TGP | GPA | CLASS SIZE | RANK |
|---|---|---|---|---|---|
| 130.0 | 150.0 | 275 | 2.11 | 504 | 268 |

| 406115 HILL RAYNARD | | | | |
|---|---|---|---|---|
| 406115 DATE 6/09/77 W/G | GRADE | CIT | CREDIT | |
| PE | A | 2 | 5 | |
| ENGLISH 11 | D | 2 | 5 | |
| US HIST 11 | D | 3 | 5 | |
| STUDENT GOVT | C | 3 | 5 | |
| OFFICE PRAC | B | 2 | 5 | |

| TUA | TUC | TGP | GPA | CLASS SIZE | RANK |
|---|---|---|---|---|---|
| 150.0 | 175.0 | 310 | 2.06 | | 272 |

| 406115 DATE 1/27/78 W/G | GRADE | CIT | CREDIT | |
|---|---|---|---|---|
| STUDENT GOVT | C | 2 | 5 | |
| SR HOME ECON | C | 2 | 5 | |
| OFFICE PRAC | D | 2 | 5 | |
| LIBRARY PRAC | A | 2 | 5 | |
| DISMISSAL 6 | N | 2 | | |

12    2nd SEMESTER

| TUA | TUC | TGP | GPA | CLASS SIZE | RANK |
|---|---|---|---|---|---|
| 170.0 | 205.0 | 355 | 2.08 | 454 | 269 |

| 406115 HILL RAYNARD | | | | |
|---|---|---|---|---|
| 406115 DATE 9/01/75 W/G | GRADE | CIT | CREDIT | |
| SUMMER OF 1975 | | | | |
| READING TECH | B | 2 | 5.0 | |
| CAREER GUIDAN | N | 2 | | |

| 406115 HILL RAYNARD | | | | |
|---|---|---|---|---|
| 406115 DATE 7/30/76 W/G | GRADE | CIT | CREDIT | |
| SUMMER OF 1976 | | | | |
| AMPOL SYSTEMS | C | 2 | 5.0 | |
| ADV P E | B | 2 | 5.0 | |

| TUA | TUC | TGP | GPA | CLASS SIZE | RANK |
|---|---|---|---|---|---|
| 110.0 | 125.0 | 240 | 2.18 | | |

| 406115 HILL RAYNARD | | | | |
|---|---|---|---|---|
| 406115 DATE 7/29/77 W/G | GRADE | CIT | CREDIT | |
| SUMMER OF 1977 | | | | |
| FOOTBALL | B | 2 | 5.0 | |
| FOOTBALL | B | 2 | 5.0 | |

| TUA | TUC | TGP | GPA | CLASS SIZE | RANK |
|---|---|---|---|---|---|
| 150.0 | 185.0 | 310 | 2.06 | | |

5 PERIODS A WEEK
50 MINUTE LENGTH OF PERIOD
36 WEEKS IN SCHOOL YEAR
CREDITS INCLUDING P E
REQUIRED TO GRADUATE.

1 - ADOLPHO CAMARILLO HIGH SCHOOL
2 - HUENEME HIGH SCHOOL
3 - OXNARD HIGH SCHOOL
4 - THOUSAND OAKS HIGH SCHOOL
5 - RIO MESA HIGH SCHOOL
6 - CHANNEL ISLANDS HIGH SCHOOL
7 - NEWBURY PARK HIGH SCHOOL

OXNARD HIGH SCHOOL
Oxnard Union High School District
Official Transcript

Date 6/9/95

Records Clerk

00577

# TEST DATA

| S/77 | | C T B S | GR 11 |
|------|--|---------|-------|

| | VOC | COMP | TOTAL |
|----|-----|------|-------|
| GP | 8.4 | 9.0 | 8.7 |
| PC | 17 | 23 | 19 |

| DATE | AGE | GR | RAW | 000 L-JUMP | 00 SIT-UP | 00 PSH-UP | 00 S-STP | 00 PUL-UP | 00 JOG-WLK |
|------|-----|----|-----|-----|-----|-----|-----|-----|-----|
| 05-76 | 16 | 10 | % | 5 | 5 | 5 | 5 | 5 | 5 |

| TRANSCRIPTS SENT TO | DATE | COMMENTS & PHYSICAL FITNESS TEST S |
|---------------------|------|-------------------------------------|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

00578

```
IV85QQTS.02              CALIFORNIA DEPARTMENT OF CORRECTIONS            PAGE   1
                          CALIFORNIA MENS COLONY - WEST                 08/03/94
                              INMATE CDC 120 CARD


  H43428    HILL, RAYNARD B
  CUSTODY: MEDB   BED: WFU4260000000003U WK GRP: A2   CONTACT VISITS: Y

  >GRISSOM, JAMES                          N7833659              DOB: 09/21/36
                              RELATION: FRIEND
     2641 HOPKINS ST.             DL:                      ST:
     SAN DIEGO, CA 92139-                         CI/I:
     FBI:              VISITING PRIVILEGES SUSPENDED ON:          APPROVED

     VISIT HISTORIES:


  >GRISSON, GWENDOLYN                      A0965456              DOB: 05/03/50
                              RELATION: COUSIN
     2641 HOPKINS ST.             DL:                      ST:
     SAN DIEGO, CA 92139-                         CI/I:
     FBI:              VISITING PRIVILEGES SUSPENDED ON:          APPROVED

     VISIT HISTORIES:


                        *** End of Report ***
```

00579

*I* *INMATE* *TRUST* *OFFICE*

**STATE OF CALIFORNIA**

**INMATE/PAROLEE APPEAL FORM**
CDC 602 (12/87)

**DEPARTMENT OF CORRECTIONS**

Location: Institution/Parole Region
1. *IUSP*
2.

Log No.
1. *94-1136*
2.

Category
*14*

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

*C 2 2132*

NAME *HILL, RAYNARD B.*  NUMBER *H43428*  ASSIGNMENT *R/C*  UNIT/ROOM NUMBER *FCD-2A-205L*

A. Describe Problem: *ON MAY 4TH I WAS SENT A MONEY ORDER THRU FEDERAL EXPRESS (ONE DAY DELIVERY) FROM ROBERTA FIELDS SO I WOULD BE ABLE TO GO TO CANTEEN ON THE 12TH WHICH WAS FIRST DRAW. ALL DURING THE WEEK AFTER THE 4TH OF MAY I DIDNT RECIEVE NOTHING TO VERIFY THAT THE MONEY HAS ARRIVED. SO WHEN I WENT TO THE STORE ON THE 12TH OF MAY, I WAS DENIED AND TOLD I HAD NO MONEY.*

If you need more space, attach one additional sheet. "SEE ATTACHED PAGE 1"

B. Action Requested: *I WOULD LIKE THE MONEY PLACED ON MY BOOKS OR SENT BACK TO ROBERTA FIELDS AS SOON AS POSSIBLE AND TO BE INFORMED ON WHICH ACTION IS TAKEN. I.F. ALL POSSIBLE I WOULD LIKE TO GO TO 3RD DRAW (DUCAT ATTACH) THANK YOU*

Inmate/Parolee Signature: *Raynard B Hill*   Date Submitted: *5-19-94*

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: *OUR records do not show receipt of money order from Ms. Fields. Please let her put a tracer on said money order and send us a copy of the front and back part of the money order. Submit your canteen ducat for the first draw in June, cuz it is too late for the third draw. Pls. see attached*

Staff Signature: *CHRIS*   Date Returned to Inmate: *6/2/94*

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

*ON 5-26-94 I RECIEVED I/m REQUEST FORM back from the MAILROOM STATING THE FEDERAL EXPRESS PACKAGE HAS BEEN RECIEVED. THERE'S BEEN NUMEROUS OCCASIONS WHERE I/m'S MONEY HAS BEEN LOST OR PUT ON ANOTHER I/m's ACCOUNT.*

Signature: *Raynard Hill H43428*   Date Submitted: *6-7-94*

Note: Property/Funds appeals must be accompanied by a completed Board of Control form BC-1E, Inmate Claim

(ATTACHED PAGE 2)

CDC Appeal Number:

(COPY MADE)

First Level  ☐ Granted  ☐ P. Granted  ☒ Denied  ☐ Other _____

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: _____ Due Date: _____

Interviewed by: *You appeal is denied. You have not shown us a copy of your receipt from this Federal Express package. The mailroom agrees that it was received but there was no mention of a money order. We would be able to research this further with a copy of your receipt or copies of the result of the tracer. Per our telephone interview, you have not received this Federal Express package so the Trust office cannot solve your problem.*

Staff Signature: _____ Title: *Acctg Tech.*  Date Completed: _____

Division Head Approved: _____

Signature: _____ Title: *HWES(a)*  Returned Date to Inmate: *6-16-04*

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

_____

_____

_____

Signature: _____ Date Submitted: _____

Second Level:  ☐ Granted  ☐ P. Granted  ☐ Denied  ☐ Other _____

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: _____ Due Date: _____
☐ See Attached Letter

Signature: _____ Date Completed: _____

Warden/Superintendent Signature: _____ Date Returned to Inmate: _____

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

_____

_____

_____

_____

Signature: _____ Date Submitted: _____

For the Director's Review, submit all documents to:  Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION:  ☐ Granted  ☐ P. Granted  ☐ Denied  ☐ Other _____
☐ See Attached Letter

CDC 602 (12/87)

Date: _____

00581

ATTACHED PAGE 6   602 TO INMATE ACCOUNTS OFFICE

/

IN THE CALIFORNIA CODE OF REGULATIONS - TITLE 15,
CRIME PREVENTION AND CORRECTIONS, IT STIPULATES IN SEC.
3138(b) THAT MAIL WILL BE INSPECTED BEFORE DELIVERY
TO THE INMATE TO RECIEVE AND RECEIPT ANY FUNDS FOR
DEPOSIT INTO THE INMATES TRUST ACCOUNT, WHICH I FEEL
WAS VIOLATED.
    ALSO, IF THERE WAS SOME REASON WHY I COULDN'T EX-
CEPT THIS PIECE OF MAIL, SEC. 3147(5)(A) & (B) WAS VIO-
LATED BECAUSE ROBERTA FIELD OR THE INMATE (MYSELF)
WAS NOT INFORMED IN WRITING THE REASON WHY I WAS
NOT ABLE TO RECIEVE MY MAIL.
    NOW SINCE I'M IN THIS POSITION, I SHOULD BE CONCIDERED
TO QUALIFY FOR SEC. 3134. AS AN INDIGENT INMATE
SINCE I WAS UNABLE TO BUY HYGIENE MATERIALS OR GET
WRITING MATERIAL TO CORRESPOND WITH MY FAMILY BECAUSE ON
THE 13TH THE DAY AFTER FIRST DRAW I RECIEVED A $30.00
MONEY ORDER FROM MY PARENTS. SO NOW IT SEEMS I
WILL GO WITHOUT A TOTAL OF ABOUT 2 MOS SINCE I AR-
RIVED ON THE 18TH OF APRIL.

                                    Thank You

                                    Raymond B Field
                                    H-43428

00582

2

| | |
|---|---|
| LETTERS | — I'VE RECIEVED FOUR DIFFERENT LETTERS IN |
| 5-13-90 | RESPONSE FROM MRS. FIELDS TO MY INQUIRIES ABOUT |
| 5-15-90 | THE $50.00 M.O. SENT TO ME ON THE 5th OF MAY |
| 5-25-90 | BY FEDERAL EXPRESS WHICH AN ADDITIONAL CHARGE |
| 6-1-90 | OF $11.— WAS PAID FOR ONE DAY DELIEVERY. |

THERE'S NO DOUBT THAT THE MONEY WAS SENT TO ME AND FROM THE RESPONSE FROM THE MAIL-ROOM IT WAS RECIEVE HERE AT WASCO STATE PRISON BUT THE QUESTION IS, WHERE IS MY MONEY RIGHT NOW.

SINCE THE FIRST DEPOSIT, BECAUSE OF THIS PROBLEM WITH THE HANDLING OF INMATE'S MAIL & FUNDS, I WAS FORCED TO MISS "MAY" CANTEEN AND NOW IN JUNE I'VE NOT RECIEVED IT YET.

ON THE STREETS MRS. FIELDS HAS PLACED A TRACER ON THE FEDERAL EXPRESS PACKAGE THROUGH THE POSTMASTER & FEDERAL EXPRESS CARRIERS. IF NECESSARY A FULL BLOWN INVESTIGATION WILL TAKE PLACE.

THANK YOU

H43450

STATE OF CALIFORNIA—YOUTH AND ADULT CORRECTIONAL AGENCY                                                    PETE WILSON, Governor

# DEPARTMENT OF CORRECTIONS
P. O. Box 942883
Sacramento, CA  94283-0001



September 10, 1993


Raynard Hill   H-43428
Mule Creek State Prison, Ione
P.O. Box 409099
Ione, California  95640

RE:  DIRECTOR LEVEL DECISION
     CASE NO. 9300342
     INSTITUTION LOG NO. 93-1637

This matter was reviewed on behalf of the California Department
of Corrections, Inmate Appeals Branch, at Mule Creek State Prison
(MCSP), on August 30, 1993, by Appeals Examiner J. Donovan.

All submitted documentation and supporting arguments of the
parties have been considered.  To the extent such documentation
and arguments are in accordance with the findings and conclusions
stated herein, they have been accepted.  To the extent they are
inconsistent therewith, they have been rejected.

## ISSUES

Whether or not the institution's denial of appellant's request
for his EPRD date to be changed to December 15, 1993, was
appropriate.

## FINDINGS

### I

The appellant states that he was assigned a EPRD of December 15,
1993 which was increased to December 16, 1993 due to the
appellant having an eight hours work lay-in.  The appellant
maintains that he had actually worked from October 14, 1992
through the date of the lay-in on November 6, 1992 which
constituted a period of 23 days.  Accordingly, the appellant
contends that he should have been eligible for "E" time pursuant
to California Code of Regulations, Section 3045.2 (a) which
states that after 20 calender days that he had earned "E" time.
The appellant maintains that his total work period should be the
basis for "E" time earnings and not just that time accumulated on
a monthly basis, as claimed by the institution.

HILL, H-43428 – CASE NO. 9300342
Page 2

## II

The institution takes the position that the appellant did not earn any "E" time for the Month of October, 1992 as he was not in a credit qualifying assignment for 20 days as procedurally required.  The institution informs that the appellant did earn 16 hours Excused Time Off (ETA) for the month of November, 1992 but that he had not yet earned that ETA on November 6, 1992 when he was absent from work with a medical lay-in.

## III

The Department's rules regarding excused time off are contained in the California Code of Regulations (CCR), Title 15, Section 3045.2.

> **3045.2   Excused Time Off (ETA).**
> (a)      "It   is   the   policy   of   the   California Department of  Corrections  that  inmates  assigned  to work/training,  group  A  and  B  may  accumulate  excused time off as an incentive in the manner set forth in this  article.    Excused  time  off  is  earned  by  each inmate  assigned  to  a  work/training  assignment  for  not less than 20 calender days."
> (b)    "Inmates  assigned  to  Work  Group  A  earn  16 hours of ETA per month. Inmates assigned to Work Group B earn eight hours per month.  ETA shall be computed on a monthly basis...."

The documentation and arguments presented are persuasive that the appellant had not accumulate ETA when he was off work on lay-in status November 6, 1992 and that he was properly assessed an "A" day by his supervisor.

The institution was clearly in compliance with the referenced regulation which requires that ETA time be computed on a monthly basis.  Accordingly the appellant was only in a credit qualifying assignment for 16 days in October and had not accumulated ETA when he received the lay-in.

### DETERMINATION OF ISSUE

The institution's denial of appellant's request was appropriate.

The appeal is denied.

HILL, H-43428 - CASE NO. 9300342
Page 3

## ORDER

No changes or modifications are required by the institution.

This decision exhausts the administrative remedy available to appellant within the Department of Corrections.

JACK R. REAGAN, Chief
Inmate Appeals Branch

cc:  Warden Henry, MCSP
     Appeals Coordinator, MCSP

State of California                                              Department of Corrections

# Memorandum

Date  :    AUG 1 7 1993          C-FILE COPY

To   :    HILL   H-43428
          Housing Unit: C-G-150-L

Subject:  **SECOND LEVEL APPEAL RESPONSE (LOG #93-01908)**
          **MULE CREEK STATE PRISON**

          <u>**Summary of Appeal**</u>

          You are appealing the alleged delay in receipt of dental
          treatment, and claim that your recent treatment resulted in
          pain which you feel was in retaliation for the filing of
          this appeal.

          <u>**Summary of Investigation**</u>

          The issues in your appeal have been investigated by T. L.
          Pacheco, Appeals Coordinator.  You were interviewed at the
          First Level of Review and examination of the documents
          presented indicates that the issue does not need
          clarification.

          A review of this matter, including examination of submitted
          documentation and interviews with staff, was conducted in
          preparation for a Second Level response.

          You are requesting preventative treatment.

          Review of this matter at the Second Level of Review
          indicates that your appeal is without merit.

          California Code of Regulations, Section 3350, **General**
          **Policy**, states:

                The department will provide every reasonable medical,
                surgical and dental service for inmates, and will
                maintain adequate facilities and staff for such
                service. In an emergency or when specialized services
                are deemed necessary and are not available within
                departmental facilities, an inmate may, upon request of

CDC 1617 (3/89)

00588

HILL  H-43428
APPEAL LOG #93-01908
PAGE 2

an institution's chief medical or dental officer and
approval of the warden or superintendent, be
temporarily placed in a community medical facility for
such emergency or specialized services. In extreme
emergencies when a physician is not on duty or
immediately available, the senior custodial officer on
duty, in conjunction with on-duty medical staff, may
place an inmate in a community medical facility. Such
emergency action will be reported to the institution's
administrative and medical officers-of-the-day as soon
as it is possible to do so.

Interviews with staff revealed that on July 27, 1993 Dr.
Garbutt treated a large filling on the upper right side.
Dr. Garbutt did not feel that a crown was warranted.  The
filling was reinforced with pins, and a medical dressing was
placed below the filling to help protect the nerve.

Dr. Garbutt denies that he retaliated against you, and any
inadvertent pain you might have received was not
intentional.  If you are continuing to have pain as a result
of this recent procedure, please submit a sick-call slip for
re-evaluation.

Because your scaling needs are not an emergency, you have
been placed on the routine care waiting list.  You will
receive the scaling when your turn comes up on the list.

**Appeal Response**

Based on the above information, your appeal is denied.

(MS.) IVALEE HENRY
Warden
Mule Creek State Prison

Attachment

cc:  C-File
     Appeals Office

00589

ᗰENTAl DEᖇᗩᖇTᗰNT    NEEDS DENTAL woᖇ

STATE OF CALIFORNIA    DEPARTMENT OF CORRECTIONS

**INMATE/PAROLE**INMATE COᑭᗰ    Location: Institution/Parole Region    Log No.    Category

**APPEAL FORM**    CSP    1. 93 1908    8F

CDC 602 (12/87)

2.    2.

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|---|---|---|---|
| HILL, RAYNARD B. | H-43428 | VDC Computer Tech | CG-150L |

A. Describe Problem: Since Approx Oct '92 thru the present time I've had problems with my teeth. I went to the dentist a couple of times to get some relief. Each time I was told "You're on the Waiting List we will call you." I was told by the Dentist at the reception Center in Wasco, that my teeth can be saved if I get the proper care. It is now June 23rd 1993 and hopefully I'm on a waiting list I would guess maybe once they bad enough to pull then I would get some service.    (continued pg 4)

If you need more space, attach one additional sheet.

B. Action Requested: Should be looked into to why no preventive care is taking place in the Dental Dept at White Creek State Prison. I need the work done on my teeth it becoming unbearable. I don't want to lose my teeth if it's avoidable.

Inmate/Parolee Signature: Raynard B Hill H-43428    Date Submitted:

C. INFORMAL LEVEL (Date Received: 1-6-93 ) PARTIALLY GRANTED

Staff Response: THE PROPER PREVENTATIVE TO MAINTAIN YOUR TEETH IS TO BRUSH THEM YOURSELF. YOU ARE TO BE SEEN IN THE NEAR FUTURE FOR A FILLING OF ONE TOOTH WHICH IS ROUTINE IN NATURE. THAT WAS ALL THE TREATMENT INDICATED. DUE TO STAFF SHORTAGE IT HAS TAKEN SOME TIME HOWEVER URGENT CARE MANDATES OUR IMMEDIATE ATTENTION. YOUR NEED WILL BE

Staff Signature: ADDRESSED WHEN YOUR NAME COME    Date Returned to Inmate: 7-7-93
UP ON THE ROUTINE LIST. R Holton

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

As for the Informal Level Response, it seems to be the same pattern of response for almost a year. Apparently she "R. Holton" has been looking at some other inmate's file she has thrown in a corner. (see attache page #2

Signature: Raynard B Hill H-43428    Date Submitted: 7-13-93

Note: Property/Funds appeals must be accompanied by a completed    CDC Appeal Number:
Board of Control form BC-1E, Inmate Claim

First Level    ☑ Granted    ☐ P. Granted    ☐ Denied    ☐ Other _____

E. REVIEWER'S ACTION (Complete within 15 working days) Date assigned: 7-19-93    Due Date: 8-9-93

Interviewed by: DR. GARBUTT

AS WAS EXPLAINED TO YOU IN THE PAST, ON 7-7-93 TO BE MORE SPECIFIC, YOUR NAME WAS ALREADY LISTED FOR ROUTINE CARE; YOUR NAME CAME UP TODAY, 7-27-93, AND A FILLING WAS DONE, WHICH COMPLETED THE FILLINGS THAT HAD BEEN DIAGNOSED TO BE DONE AS OF YOUR INITIAL EXAM AT MULE CREEK. YOUR NAME IS ALSO LISTED TO DO A DEEP GUM SCALING. THIS PROCEDURE WILL BE DONE WHEN YOUR NAME COMES UP ON THE LIST. IN THE MEAN TIME, SHOULD YOU HAVE ANY EMERGENCIES OR DENTAL PROBLEMS PLEASE SUBMIT A REQUEST AND YOU WILL BE SEEN AT THE NEXT AVAILABLE SICK CALL.

Staff Signature: Arthur R. Garbutt    Title: DENTIST    Date Completed: 7-27-93

Division Head Approved:    Returned
Signature: Ee D DDS    Title: chief dentist    Date to Inmate: 7-28-93

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

ITS APPARENT that DR. Garbutt is trying to appear that he is doing his job in a professional manner, but in reality for the past year he hasn't done much at least in my face and cause more problems (see attached page #3)

Signature: Reymond B Hill H-43428    Date Submitted: 8-1-93

Second Level    ☐ Granted    ☐ P. Granted    ☑ Denied    ☐ Other _____

G. REVIEWER'S ACTION (Complete within 10 working days) Date assigned: _____    Due Date: _____
☐ See Attached Letter

Signature: J L Rophex    Date Completed: 8/17/93

Warden/Superintendent Signature: Record    Date Returned to Inmate: 8/17/93

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

_____

_____

_____

_____

Signature: _____    Date Submitted: _____

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION:    ☐ Granted    ☐ P. Granted    ☐ Denied    ☐ Other _____
☐ See Attached Letter

Date: _____

CDC 602 (12/87)

#1   Attached, age

California Code and Regulations "Title 15."

3350. States the department will provide every reasonable medical, surgical and dental service for inmates, and will maintain staff for such services.

3354.(a) Only members of institutional's medical staff, or paid person to perform medical service under contract with institution shall be permitted to diagnose illness and prescribe medication and treatment for inmates, which I feel I was refused even through I told them I was in great pain.

Raynard B. Hill
CDC# H-43438
Housing C-Gym-150 Low

00592

#3   attached i. e.

From day one in September when I first went to the dentist, I had two teeth that was giving me problems which I was told would be fixed. I also was told I would get my teeth scaled because the build-up was so bad that me gums are bleeding.

What I call preventive care in this case "Which we all know to brush their teeth" is that since they know I need fillings and in pain that they will fix them or at least give me some pain killers for the pain I'm having, and also which they refused to mention is the problem with my gums. I feel they should know that by freeing my gums from all of the plaque could prevent gum decease which will cause my teeth to fall out.

What was called a Routine job about a year ago has changed drasticly. If for some reason that this Institution can't provide the proper dental care for its wards of the state, maybe its time to look at an alternate way to handle the problem.

"The Dental Dept. needs to start doing their job"

00593

#3    Attached page

AT 8:30 am on July 27th, 1993, I was ducted to
the Dental Dept. Dr. Garbutt DDS. informed me that
I was scheduled for a filling job. When I informed
him that the tooth is chipped off on one side and
needs a crown because there's no wall to support the
filling, but Dr. Garbutt reply was that your file
says a feeling not caring about what my teeth
actually need.

   I feel that the dental job was done as a
hurry-up job in response to the 602 in the
formal-level that I filed. I feel that Dr.
Garbutt DDS has voilated the departments rules and
regulations code 3084.1 (d) in a form of repres-
al taken out on me by (1) not only removing the
temporary filling that was in the tooth but also drill-
ing out my entire tooth, triggering nerve endings
with the drill & cold water, air. (2) drilling four pins
in the same tooth and also some kind of tooth clamp
so when the filling is put in the tooth, this will sup-
port the filling to the tooth, in which when the clamp
was removed, it was done in a rough manner to
where I thought Dr Garbutt was trying to
pull my tooth out. (3) Now that Dr Garbutt
has drilled & grinded my tooth to almost nothing,

00594

*Cont. #3*

I don't even have a bite, or place my teeth
will meet, not only is there half a tooth, but
the pain from nerves or sensitivity to hot & cold
is worse then ever which was avoidable. So
surely if any work to repair this tooth is
done, it is surely to be pulled because of Dr.
Gorbutts DDS actions.

  When I informed Dr Gorbutt DDS of my
gum bleeding & the puss that formed in them
that I had to pop for the pain, He told me
that I was scheduled for an endept Teeth-
Scaling and the problem was due to tarter
build-up and again that I'm on a waiting
list for that also, Which could take another
year and I'll have no teeth by then.

  I would like someone to come and look at my
teeth first hand and see the unprofessional treat-
ment I'm getting here at Mule Creek State
Penitenery. I told Dr. Gorbutt DDS that my tooth
feels like a nerve is exposed he just said "there
not any" but all I feel is pain.

00595

STATE OF CALIFORNIA                                                                    DEPARTMENT OF CORRECTIONS

**INMATE/PAROLEE** C-FILE    Location: Institution/Parole Region    Log No.    Category
**APPEAL FORM** COPY mcsp    1. 93 1637    13C
CDC 602 (12/87)                                                        2. _____    2. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

| NAME | NUMBER | ASSIGNMENT | UNIT/ROOM NUMBER |
|------|--------|-----------|------------------|
| RAYNARD B. HILL | H43428 | Voc. Computers CVCT.0208 | C-Gym-1501 |

A. Describe Problem: LEGAL Summary Type-1) States that my EPRD date has
changed from 12-15-93 to 12-16-93 due to an 'A' DAY GIVEN to me by
the RECORDS Dept. because they say I had no ETO Time Available. I
WAS ASSIGNED to the Kitchen (CFW2.1245) DMS#288 on 10-14-92, on
11-6-92 I RECIEVED A MEDICAL LAY-IN from Physician 'Smith' and
GIVEN 8 hours 'E' time from Supr. 'Lowe. Due to the California Code
& Regulations Title 115, 3045.2 (a) states After 20 Calender days, we
EARNED ETO Time. (ATTACHED Time., LAY-IN, & LEGAL status Summary
If you need more space, attach one additional sheet. Sheets) Copies MADE! (One Additional Page)

B. Action Requested: I would like my EPRD date changed back to the
Original date of 12-15-93. Any Alteration to my ETO Time
changed Also.

Inmate/Parolee Signature: *Raynard B Hill*                    Date Submitted: 5-31-93

C. INFORMAL LEVEL (Date Received: 6-14-93 ) - Denied

Staff Response: You were assigned and started your assignment on 10-14-92.
From 10-14-92 thru 10-31-92 is 18 Calendar days. So you did not
earn ETO for the month of October. You earned 16 hrs ETO after you
had worked 20 Calendar days in November which would be available
to use the following month - not the same month it was earned

Staff Signature: A. Custaul, CC&S                    Date Returned to Inmate: 6-15-93

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono, CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

3045.2.(a) states ETO Time After 20 Calender days. Which means
10-14-92 thru 11-5-92 (23 days) 3045.2.(b) states the max. ETO
Time that can be EARNED per month (16 hrs). I WORKED IN NOVEMBER
5 Calender days which I should get credit for which seems I've
been denied. *Raynard B Hill H43428*

Signature: *Raynard B Hill H43428*                    Date Submitted: 6-18-93

Note: Property/Funds appeals must be accompanied by a completed    CDC Appeal Number:
Board of Control form BC-1E, Inmate Claim

00596

First Level  ☑ Granted  ☐ P. Granted  ☐ Denied  ☐ Other _____

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: _____ Due Date: _____

Interviewed by: _____

_____

_____

_____

_____

_____

Staff Signature: _____ Title: _____ Date Completed: _____

Division Head Approved:                                                    Returned

Signature: _____ Title: _____ Date to Inmate: _____

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

_____

_____

_____

Signature: _____ Date Submitted: _____

Second Level  ☐ Granted  ☐ P. Granted  ☒ Denied  ☐ Other _____

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: 6-24-93    Due Date: 7-9-93

☒ See Attached Letter

Signature: _____ Date Completed: 7-6-93

Warden/Superintendent Signature: _____ Date Returned to Inmate: 7-14-93

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

_____

_____

_____

_____

Signature: _____ Date Submitted: _____

For the Director's Review, submit all documents to:  Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION:  ☐ Granted  ☐ P. Granted  ☐ Denied  ☐ Other _____
☐ See Attached Letter

Date: _____

CDC 602 (12/87)

00597

(CONT 602.)

29 Jul 92 ARRIVal

14 Oct 92 Kitchen CFW 2. 1245

26 Jan 93 Voc Computer CVCT. 0208

1) Not having ETO Time WAS NOT A TRUE STATEMENT

    a) FROM Oct 14th Thru Nov 6th INMATE ACCRUED 23 days
       October Calendar days - 10/14 - 10/31/93 = 18 Calendar
    CREDIT for WORK PERIOD            7 No ETO EARNED Day.

    b) 3045(a) Excused time off IS EARNED by EACH INMATE ASSIGNED

        to A WORK/TRAINING ASSIGNMENT for NOT LESS then 20 CALENDER

    days.

    c) BASED ON RATIO of... 16 hour ETO Time / per month " per 3045.2

     (b) ETO Time is computed on monthly basis doesn't mean BECAUSE

    the time WAS NOT computed, it WAS NOT EARNED and should get

    CREdit for that time. ( Your Time WAS Computed - From 10/14 - 10/31/92
                         there are 18 Calendar days )

2) 3043.2 (C) (3) states when failure to work beyond the I/m's control

    due to Illness or Injury & medically diagnosed to be unable to part-

    icipate, shall not BE CAUSE for denial or forfeiture of credits.

3) 3043.4 (b) Non-credit will BE EARNED WHEN AN I/m NOT AuthoRIZED

    to BE Absent from his or her ASSIGNMENT or does NOT complete

    the minimum number of hours in Any day shall be denied

    WORK Time CREdits for that day.

4) 3043.5 (D) T/m shall continue to EARN ETC while on short-

    term medical/psychiatric LAY-IN or UNASSIGNED status.

NAME and NUMBER: _____  HOUSING: _____

| MULE CREEK STATE PRISON HEALTH SERVICES DIVISION MEDICAL / DENTAL LAY-IN SLIP |

A Check is placed in the space where the actual amount of "E" Time is used:

2 hrs: _____    4 hrs: _____    6 hrs: _____    8 hrs / 1 day: _✓_    16 hrs / 2 days: _____

24 hrs / 3 days: _____    32 hrs / 4 days: _____    40 hrs / 5 days: _____

INMATE WILL USE "E" TIME FROM (Dates): 11/6/92 TO 11/6/92 Ending at 2400 hrs.

REASON FOR LAY-IN: Left ankle sprain

PHYSICIAN: Smith                    RN / MTA: _____, MTA

Orig: C - File                    1st copy - Med. File
                                  2nd copy - Assign. Lt.
                                  3rd copy - Inmate

DATE 11/6/92    # 2125            MEDICAL-PSYCHIATRIC-DENTAL

---

CR29370        69                                34          15      116

---

RECV DT/ COUNTY/   CASE/   SENTENCE DATE/
CNT  OFF-CODE DESCRIPTION                                     OFFENSE DATE

CONTROLLING PRINCIPAL & CONSECUTIVE   (INCLUDES ENHANCEMENTS,OFFENSES)

---CONTROLLING CASE ---
7/29/1992   VEN   CR29370        7/13/1992
  01 P212.5(B)  ROBBERY 2ND                              04/02/1992
                (S)WPN
                12022(B) ARM/D

| MWTIP WAIVER | | BEGINNING | CREDIT | TOTAL | TOTAL | NET |
| DATE | | BALANCE | APPLIED | LOST | RESTORED | TOTAL |
| 07/29/1992 | | 38 | 236 | 0 | 0 | 236 |

CREDITS AUTO VESTED PER PC-2934 :    7

| TRAN | | | | RULE | VIOL | |
| TYPE | DATE | END DATE | LOG NUMBER | NUMBER | CAT | DAYS |
| ICO | 10/14/1992 | 04/30/1993 | | | | 178 |

LG LGT JACS   TLG AS OF 04/30/1993

EPRD IS 12/16/1993 BASED ON CREDIT APPLIED THRU 04/30/1993 AND WORK GROUP A1

---

"A" Day 11/6/92
(No E/S Available
At That Time)

3043

STATE OF CALIFORNIA
**INMATE WORK SUPERVISOR'S TIME LOG**
CDC 1697 (5/92)

DEPARTMENT OF CORRECTIONS
DISTRIBUTION:
WHITE - WORK SUPERVISOR
YELLOW - INMATE

| CDC NUMBER | INMATE'S NAME | ETHNICITY | MONTH | YEAR |
|---|---|---|---|---|
| H43428 | HILL | B | NOV | 92 |

| JOB TITLE | POSITION NUMBER | PAY RATE (HOURLY) | REGULAR DAYS OFF | HOURS OF ASSIGNMENT | TIME CARD NUMBER |
|---|---|---|---|---|---|
| L-5 | CFW2-1245 | .08 | W/T | 0500-1300 | |

| SUPERVISOR'S NAME (PLEASE PRINT) | TITLE | SUPERVISOR'S SIGNATURE | DATE INITIATED |
|---|---|---|---|
| LOWE | C/O | | |

| DAY | TIME IN | TIME OUT | TIME IN | TIME OUT | TOTAL HOURS | TYPE OF TIME | MIN MET | TIME KEEPER'S SIGNATURE | DAY | TIME IN | TIME OUT | TIME IN | TIME OUT | TOTAL HOURS | TYPE OF TIME | MIN MET | TIME KEEPER'S SIGNATURE |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 1 RDO/HOL | | | | | 6 | S | Y | Stokes | 17 RDO/HOL | 5 | 5³⁰ | 6 | 11³⁰ | 6 | X | Y | Soun |
| 2 RDO/HOL | | | | | 6 | S | Y | Soun | 18 RDO/HOL | | | | | R | Y | | Soun |
| 3 RDO/HOL | | | | | 6 | S | Y | Soun | 19 RDO/HOL | | | | | R | Y | | Soun |
| 4 RDO/HOL | | | | | R | Y | | | 20 RDO/HOL | 5 | 5³⁰ | 6 | 11³⁰ | 6 | X | Y | Soun |
| 5 RDO/HOL | | | | | R | Y | | | 21 RDO/HOL | 0500 | 630 | 0600 | 1130 | 6 | X | Y | |
| 6 RDO/HOL | | | | | 8 E | Y | Soun | | 22 RDO/HOL | 5 | 5³⁰ | 6 | 11³⁰ | 6 | X | Y | Stokes |
| 7 RDO/HOL | 5 | 5³⁰ | 6 | 11³⁰ | 6 | X | Y | Stokes | 23 RDO/HOL | 5 | 5³⁰ | 10 8 | 11 3⁰ | 4 2 | X S | Y S | Soun |
| 8 RDO/HOL | 5 | 5³⁰ | 6 | 11³⁰ | 6 | X | Y | Stokes | 24 RDO/HOL | 5 | 5³⁰ | 6 | 11³⁰ | 6 | X | Y | Soun |
| 9 RDO/HOL | 5 | 5³⁰ | 6 | 11³⁰ | 6 | X | Y | Soun | 25 RDO/HOL | | | | | R | Y | | Soun |
| 10 RDO/HOL | 5 | 5³⁰ | 6 | 10³⁰ | 5 1 | X S | Y | Soun | 26 RDO/HOL | | | | | R | Y | | Soun |
| 11 RDO/HOL | | | | | R | Y | | Soun | 27 RDO/HOL | 5 | 5³⁰ | 6 | 11³⁰ | 6 | X | Y | Soun |
| 12 RDO/HOL | | | | | R | Y | | Soun | 28 RDO/HOL | 5 | 5³⁰ | 6 | 11³⁰ | 6 | X | Y | Stokes |
| 13 RDO/HOL | 5 | 5³⁰ | 6 | 11³⁰ | 6 | X | Y | Soun | 29 RDO/HOL | 5 | 5³⁰ | 6 | 11³⁰ | 6 | X | Y | Stokes |
| 14 RDO/HOL | 5 | 5³⁰ | 6 | 9³⁰ | 4 2 | X S | Y | Stk | 30 RDO/HOL | 5 | 5³⁰ | 6 | 11³⁰ | 6 | X | Y | Soun |
| 15 RDO/HOL | 5 | 5³⁰ | 6 | 9³⁰ | 4 2 | X S | Y | Stk | 31 RDO/HOL | | | | | | | | |
| 16 RDO/HOL | 5 | 5³⁰ | 6 | 11³⁰ | 6 | X | Y | Soun | | | | | | | | | |

| TOTAL DAYS MINIMUM MET | TOTAL X HOURS WORKED | X PAY RATE | = TOTAL PAY |
|---|---|---|---|
| 30 | 101 | .08 | 8.08 |

ENTER DATE(S) AND REASON(S) IF EXCEPTIONAL TIME (A, E, AND / OR S) USED:

11-92 3 time lockdown    11/6 - 8E - LAY-IN    11/23-25 - log count
11-23 - 25 - LOCKDOWN    11/10 - 1S - 1ST CLASS
11-3 - 5 - LOCKDOWN    11/4 - 2S - Special order    11/3-23-CLASS

NOTE

| TRANSFERRED IN (DATE): | DMS # | TRANSFERRED OUT (DATE): | DMS # |
|---|---|---|---|

00600

STATE OF CALIFORNIA
CDC 1033 (8/88)

DEPARTMENT OF CORRECTIONS

## COMPUTATION REVIEW HEARING DECISION

### DOCUMENTS REVIEWED

[ ] Sentencing Transcript

[ ] Abstracts of Judgment/Minute Orders

[ ] POR

[X] Time Cards/Classification Chronos

[ ] OBIS Printout

[X] Central File

[ ] Other _____

### REASONS/COMMENTS

As indicated in the Informal Level Response you did not earn any
EC in the month of Oct. 1998 as you were not in a credit earning
assignment for 30 days. (Nov 11-20-98) you did earn the max of
EC in Nov. 1998. However, on 11-6-98 (due to a lock)
counted as an "R" day as you had not yet earned any EC

_____

_____

_____

### DECISION

[ ] Appeal Granted

[X] Appeal Denied

If you are dissatisfied with your Computation Review Hearing Decision you may request a Third-Level Review.

### PANEL HEARING CASE

| HEARING PERSON | TITLE |
| --- | --- |
| L. Lynn | CC I/Supr/A |

| INMATE/PAROLEE | CDC NUMBER | INST/REGION | HEARING DATE |
| --- | --- | --- | --- |
| | H-43409 | MCSP | |

DISTRIBUTION:   ORIGINAL —   CENTRAL FILE
                COPY —   INMATE/PAROLEE

00601

STATE OF CALIFORNIA
CDC 1032 (12/86)

DEPARTMENT OF CORRECTIONS

## NOTICE OF TIME, DATE AND PLACE OF COMPUTATION REVIEW HEARING

Your Computation Review Hearing is scheduled for ___7-1-93 @ 3:40 PM___
(TIME)

on _____ at __Fac. "C" Program Office__
(DATE)                    (SPECIFIC LOCATION OF HEARING)

### CERTIFICATE OF SERVICE

On _____
(DATE)

I ☐ personally ☐ other _____ served this
(DESCRIBE)

Notice of Hearing.

by _____
(SIGNATURE)          (TITLE)          (DATE)

*Waives 24 hour notice*

### ACKNOWLEDGEMENT OF SERVICE

I, X _Raymond Price_ _____ hereby acknowledge on ___7-1-93___
(SIGNATURE OF INMATE/PAROLEE)                        (DATE)

receipt of the Notice of Hearing.

Hill                    H43428                    MCSP

INMATE/PAROLEE NAME          CDC NUMBER          INST/REGION

DISTRIBUTION:  ORIGINAL — CENTRAL FILE
                    COPY — INMATE/PAROLEE

00602

STATE OF CALIFORNIA                                                DEPARTMENT OF CORRECTIONS
CDC 1031 (8/88)

## ACKNOWLEDGEMENT OF RECEIPT

### I.  NOTICE OF RIGHT TO REQUEST A COMPUTATION REVIEW HEARING

Your administrative appeal has been reviewed by departmental staff at the informal level. In that appeal you alleged an issue which may adversely affect your term of confinement or period of parole. You may now request a Computation Review Hearing if you do not agree with the findings.

**Computation Review Hearing**

Whenever an inmate/parolee files an administrative appeal which sets forth a specific, clearly stated claim regarding an alleged error which adversely affects a term of confinement or period of parole, and that appeal is reviewed at the informal level, the inmate/parolee may then request a Computation Review Hearing if he/she is not satisfied with the findings. This hearing will be conducted as the second level of review of the inmate's/parolee's administrative appeal, and will afford full due process protections.

The only issue to be determined at a Computation Review Hearing is whether or not an error has been committed which adversely affects a term of confinement or period of parole.

If it is determined at the hearing that an error has occurred, departmental staff shall grant the appeal and correct the error or refer the matter to the attention of the appropriate agency or departmental staff for disposition. If it is determined that there is no error, the appeal will be denied.

If you wish to request a Computation Review Hearing, you must so state in Section D of your CDC-602, Inmate Appeal Form. This form should then be given to your Institution/Parole Region Appeals Coordinator for processing. You will be notified when a hearing has been scheduled.

### II.  COMPUTATION REVIEW HEARING RIGHTS

Prior to or at a Computation Review Hearing, an inmate/parolee shall be afforded the following:

a. The right to be notified in writing as soon as possible of the date, time and place at which the Computation Review Hearing will be conducted.

b. The right to review pertinent nonconfidential documents in his/her Central File before the hearing, and the opportunity to enter a written response to any material in the file.

c. The right to be present at the hearing and/or to speak on his or her own behalf, and to ask and answer questions.

d. The right to present relevant documents to the hearing panel.

e. The right to have the hearing conducted by a fair and impartial hearing panel.

f. The right to the assistance of an interpreter if he or she does not understand English. The Department shall provide an interpreter at state expense.

g. The right to staff assistance.

h. The right to receive written notice of any decision made, the information considered, and the reasons for the decision.

i. The right to appeal a Computation Review Hearing decision as provided in the Department's Administrative Manual (Chapter 7300).

### III.  ACKNOWLEDGEMENT

I hereby acknowledge receipt of "Notice of Right to Request a Computation Review Hearing" and "Computation Review Hearing Rights" form.

| Signature of inmate/parolee | CDC Number | Date 7-1-93 |
|---|---|---|

| Signature of Employee | Inst./Region | Date 7-1-93 | ☐ Yes  ☒ No  Interpreter Required |
|---|---|---|---|

L. Perry, CCR Sup (A) MCSP

(Print Last Name)  HiLL

DISTRIBUTION:  ORIGINAL — CENTRAL FILE
                          COPY — INMATE/PAROLEE

00603

STATE OF CALIFORNIA

**REQUEST FOR CORRESPONDENCE APPROVAL**

CDC 1074 (8/87)

DEPARTMENT OF CORRECTIONS

| | |
|---|---|
| FR:<br>*MS. (I) HENRY* | TO:<br>*WATCH COMMANDER* |
| TITLE:<br>*WARDEN* | TITLE: |
| INSTITUTION/PAROLE REGION:<br>*MULE CREEK STATE PRISON* | INSTITUTION/PAROLE REGION:<br>*VENTURA County JAIL* |
| ADDRESS:<br>*PO BOX 409000, C-Gym-150Lon*<br>*IONE, CA. 95640* | ADDRESS:<br>*800 SO VICTORIA AVE*<br>*VENTURA, CA 93009* |
| 1. INMATE/PAROLEE REQUESTING TO CORRESPOND:<br>*RAYNARD B. HILL* | 2. INMATE/PAROLEE UNDER YOUR JURISDICTION:<br>*SANDRA RUBIO* |
| CDC NUMBER: *H43438*    CURRENT STATUS<br>☒ INMATE   ☐ PAROLEE | CDC NUMBER: ———    CURRENT STATUS<br>☒ INMATE   ☐ PAROLEE |
| KNOWN GANG AFFILIATION(S):<br>*N/A* | KNOWN GANG AFFILIATION(S):<br>*N/A* |
| MISCELLANEOUS INFORMATION/COMMENTS:<br>*FRIEND* | MISCELLANEOUS INFORMATION/COMMENTS: |
| COUNSELOR/AGENT'S RECOMMENDATION:<br>☒ APPROVAL   ☐ DENIAL for the following<br><br>reason: *NO PRECLUDING FACTOR* | COUNSELOR/AGENT'S RECOMMENDATION:<br>☐ APPROVAL   ☒ DENIAL for the following<br><br>reason: *I/m RUBIO RELEASED FROM CUSTODY 6-4-93* |
| COUNSELOR/AGENT'S SIGNATURE:<br>▶ *B. Mayel*    DATE: *6/1/93* | COUNSELOR/AGENT'S SIGNATURE:<br>▶ *C.D. Steeno 565 0110*    DATE: *6-14-93* |
| COUNSELOR/AGENT'S NAME (TYPED OR PRINTED)<br>*G. MAYOL* | COUNSELOR/AGENT'S NAME (TYPED OR PRINTED)<br>*C.D. STEENO 565 0110* |
| SUPERVISING AUTHORITY'S DECISION:<br>☒ APPROVED   ☐ DENIED for the following<br><br>reason: ——— | SUPERVISING AUTHORITY'S DECISION:<br>☐ APPROVED   ☐ DENIED for the following<br><br>reason: ——— |
| SIGNATURE:<br>▶ *S. Wson*    DATE: *6-4-93*<br>TITLE: *CCII* | SIGNATURE:<br>▶ *C.D. Steeno 565 0110*    DATE: *6-14-93*<br>TITLE: *WATCH Cmdr* |

INSTRUCTIONS:

If request is denied, note reason and notify inmate/parolee #1

If request is approved by requesting facility, retain pending copy and forward request to inmate/parolee #2's supervising authority.

INSTRUCTIONS:

Receiving facility to retain last two copies (1 for inmate/parolee, 1 for inmate/parolee's file and return remainder to requesting facility.

DISTRIBUTION (After processing):
Original — Inmate/Parolee #1's File
  copy — Inmate/Parolee #1
  copy — Inmate/Parolee #2's File
  copy — Inmate/Parolee #2
  copy — Retained by requesting facility until process completed.

88 85724

00604

STATE OF CALIFORNIA                                                     DEPARTMENT OF CORRECTIONS
REQUEST FOR CORRESPONDENCE APPROVAL
CDC 1074 (8/87)

| FR. MS. I. HENRY | TO: Watch Commander |
|---|---|
| TITLE: WARDEN | TITLE: " |
| INSTITUTION/PAROLE REGION: MULE CREEK STATE PRISON | INSTITUTION/PAROLE REGION: Ventura County Jail |
| ADDRESS: ~~409000~~ P.O. Box 409000, G-Gym-150 Low  IONE, CA. 95640 | ADDRESS: 800 So. Victoria Ave.  Ventura, CA. 93009 |

| 1. INMATE/PAROLEE REQUESTING TO CORRESPOND: Raynard B. Hill | 2. INMATE/PAROLEE UNDER YOUR JURISDICTION: Sandra Rubio |
|---|---|
| CDC NUMBER: H43428  CURRENT STATUS: ☒ INMATE ☐ PAROLEE | CDC NUMBER:  CURRENT STATUS: ☒ INMATE ☐ PAROLEE |
| KNOWN GANG AFFILIATION(S): N/A | KNOWN GANG AFFILIATION(S): N/A |

| MISCELLANEOUS INFORMATION/COMMENTS. | MISCELLANEOUS INFORMATION/COMMENTS. |
|---|---|
| Arrest 2192 for Robbery, I'm disciplinary free, Assign. Voc. Computers.  · Sandra & I are good friends and I would like to have her as a pen-pal. | She was arrested for poss. of drugs and paraphilia. |

| COUNSELOR/AGENT'S RECOMMENDATION. ☒ APPROVAL ☐ DENIAL for the following  reason: no precluding factors | COUNSELOR/AGENT'S RECOMMENDATION: ☐ APPROVAL ☐ DENIAL for the following  reason: |
|---|---|
| COUNSELOR/AGENT'S SIGNATURE: ▶ P. May[?]    DATE: 5/10/93 | COUNSELOR/AGENT'S SIGNATURE: ▶    DATE: |
| COUNSELOR/AGENT'S NAME (TYPED OR PRINTED): G. MAYOL   CCII | COUNSELOR/AGENT'S NAME (TYPED OR PRINTED): |
| SUPERVISING AUTHORITY'S DECISION: ☒ APPROVED ☐ DENIED for the following  reason: | SUPERVISING AUTHORITY'S DECISION: ☒ APPROVED ☐ DENIED for the following  reason: |
| SIGNATURE: ▶    DATE: 5/11/93 | SIGNATURE: ▶    DATE: 5/25/93 |
| TITLE: CII | TITLE: SERGEANT |

INSTRUCTIONS:

If request is denied, note reason and notify inmate/parolee #1

If request is approved by requesting facility, retain pending copy and forward request to inmate/parolee #2's supervising authority.

INSTRUCTIONS:

Receiving facility to retain last two copies (1 for inmate/parolee, 1 for inmate/parolee's file and return remainder to requesting facility.

DISTRIBUTION (After processing):
   Original — Inmate/Parolee #1's File
      copy — Inmate/Parolee #1
      copy — Inmate/Parolee #2's File
      copy — Inmate/Parolee #2
      copy — Retained by requesting facility until process completed.

00605

# Oxnard High School

## Oxnard Union High School District

### This Certifies that

### Raynard Byrone Hill

has completed a course of Studies in accordance with the requirements of the State of California and the Board of Trustees of the Oxnard Union High School District and is therefore awarded this Diploma

Given at Oxnard, California, this ninth day of June, nineteen hundred and seventy-eight

_Janet Lindgren_
President, Board of Trustees

_Andy C. McEuen_
District Superintendent

_Eugene D. Dorn_
Principal

00606

# county of ventura

### SHERIFF'S DEPARTMENT
### BOOKING AND PROPERTY RECORD

7-16-90
@ 0950

| BOOKING NO. | 00616514 |
| ARREST RPT NO. | |

| NAME | HILL, RAYNARD BYRUN | DATE 02/16/90 | TIME 1722 | BI NO. 00163880 |
| AKA | | BOOKING AUTHORITY PROBABLE CAUSE | | CII NO. A06514416 |
| DOCUMENT NO. | ISSUE AUTHORITY | BAIL AMOUNT 50,000.00 | WHOSE PRISONER | FACILITY MJ | FBI NO. 1H056209 |

| CHARGES | | | RECEIVED FROM HESS | AGENCY OXNARD PD. |
| PC243.4 | F | SEXUAL BATTERY | | |
| PC207 | F | KIDNAPING | SEARCHED BY WALL, R   2466 | RECEPTION BOOKED BY LEHMAN,J.   051XE |
| PC664 | F | ATTEMPT CRIME | BOOKED BY | APPROVED |
| PC261.2 | F | RAPE BY FORCE | NAHULNA,T.   2594   02/16/90 2202 | |
| PC289 | F | PENETRATION BY FOREIGN O | FINGERPRINT CLASSIFICATION | |
| HS11950 | M | UNDER INFLNCE CONTRLD SU | | |
| | | | REMARKS | |

| RACE B | SEX M | AGE 30 | HEIGHT 5'11 | WEIGHT 205 | BUILD HVY | HAIR BLK | EYES BRO | BIRTH DATE 03/10/60 | POB CA | DRIVER'S LICENSE/STATE N6280284   CA | SOC. SEC. NO. 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 |
| MEDICINE YES  NO X | HEALTH CLAIMS INJURY TO HAND | | | | SCARS, MARKS OR TATTOOS HAND INJURY HAS LARGE CIRCULAR MARK | | | | | | |
| HOME ADDRESS 3660 KEEL AVE. | | CITY OXNARD | | STATE CA | ZIP 93041 | HOME PHONE 885 985-6742 | | | | | |
| EMERGENCY CONTACT NAME, ADDRESS, PHONE ROYAL HILL SR. SAI | | | | | | RELATIONSHIP FATHER | | | | | |
| EMPLOYER'S NAME, ADDRESS, PHONE UNEMPLOYED | | | | | | OCCUPATION WELDER | | | | | |

## PROPERTY RECORD

| TRACER NO. 01210852 | DATE 02/16/90 | CASH .03 | BOOKING NO. 00616514 |
| NAME HILL, RAYNARD BYRON | | | FAC. MJ |

PROPERTY
WHITE TOWEL
BOTTLE OPENER
WHT AND PURPLE STRIPED SHIRT;BLK PANTS
BLK SOCKS;BRO SHOES,GREEN UNDERWEAR
# 1455

VENTURA COUNTY SHERIFF
RECORD BUREAU COPY,
NOT TO BE DUPLICATED
TO _____ State Prison
BY: _____ Eon
DATE: 5-24-95

## FINAL RELEASE

| DISPOSITION | | O.R. | | S.S. |
| ☐ PROBATION | ☐ DISMISSED | | ☐ FINE PAID | ☐ BAIL POSTED |
| ☐ STAY | ☐ S.L. | |
| ☐ NO COMPLAINT | ☐ WORK PROGRAM | |

■ CO - refiled

| TO APPEAR AT | COURT DATE | COURT TIME |
| RELEASE TO | DEPT. 0750 Trans | RELEASE APPROVAL 149 |
| RELEASE WARRANT CHK 2264 - Local Cleta Rice | PREPARED BY 2264 | RELEASED BY LJOS | DATE 10-11-90 | TIME 0532 |

| TRACER NO. 01247445 | $ 10.05 | I HEREBY CERTIFY THAT I HAVE RECEIVED ALL MONEY AND PROPERTY HELD IN TRUST FOR ME BY THE VENTURA COUNTY JAIL. |

I UNDERSTAND MY SIGNATURE ACKNOWLEDGES THE CORRECTNESS OF THE INFORMATION FURNISHED BY ME.

X _____ Raynard Hill
INMATE SIGNATURE

X _____ Raynard B Hill
INMATE SIGNATURE

00607

STATE OF CALIFORNIA-YOUTH AND ADULT CORRECTIONAL AGENCY      PETE WILSON, GOVERNOR

Department of Corrections
# AVENAL STATE PRISON
#1 KINGS WAY
P.O. BOX 8
AVENAL, CA  93204

**DATE:**  5-17-95

| | |
|---|---|
| **OUR:** | H-43428 |
| **CII:** | A06514416 |
| **YOUR:** | 163880-616514 |
| | 90C009675 |

VENTURA COUNTY SHERIFF OFFICE
800 SOUTH VICTORIA AVENUE
VENTURA, CA 93009

The person identified below was committed to state prison for a term of _____3 YEARS_____.  We are unable to locate the arrest report and disposition from your agency.

NAME:___HILL_____RAYNARD_____BYRON___  DESCRIPTION: MALE/FEMALE
          (Last)        (First)      (Middle)

AKA:_____

Date of Birth:___3-10-60_____ Race:__BLACK_____

Other Information: _ARRESTED ON 7-16-90 FOR SEXUAL BATTERY, KIDNAPPING, RAPE BY FORCE_
(Include arrest data, or circumstances which might aid in
identification)._FEAR, SEXUAL PENETRATION BY FOREIGN OBJECT, USE, UNDER INFLUENCE CONTROL
CONTROL SUBST_

The information requested is needed for a criminal justice activity.

I certify that I have a need for the record requested as defined in Section 701(e), Article 1, Subchapter 7, Chapter 1, Title 11, of the California Administrative Code.

Yours very truly,

K.A. HARRELL,
Correctional Case Records Manager

BY: ___IRENE LIGGINS___ _Irene Liggins_____
    HWD CLERK  (209)386-0587 EXT. 5115

# OXNARD POLICE DEPARTMENT-BOOKING FORM

| BOOKING NO. |
|---|

**CHARGES:** R WANT X **SEE BACK FOR ADDITIONAL CHARGES**

CII NO.

BI NO. 49402    FBI NO.

BOOKING DATE 7-16-90    TIME 1200

PLACE OF BIRTH CA

DR.LIC.NO./STATE N0280284

| SEX | RACE | AGE | HAIR | EYES | HEIGHT | WEIGHT | BUILD | FACIAL HAIR |
|---|---|---|---|---|---|---|---|---|
| M | B | 30 | BLK | BRN | 510 | 210 | | BEARD |

**SCARS/MARKS/TATTOOS**

**HOME ADDRESS** 36060 KEEL AV, OXNARD    **PHONE** 485-6799    **OCCUPATION**

**EMPLOYERS NAME** UNEMPLOYED    **ADDRESS**    **PHONE**

**EMERGENCY CONTACT NAME** ROYAL HILL SR. (FATHER)    **ADDRESS** SAI    **PHONE**

**MEDICINE** YES    **HEALTH CLAIMS** "CODIENE 3's" HAND INJURY    **FINGERPRINTED** YES X NO

| ARR REC OPD | ARRESTING AGENCY | TURNED OVER TO | | |
|---|---|---|---|---|
| 02 | OXPD | | | |

**RECVD FROM**    **BOOKED BY** Wilson    **APPROVED BY**

**FINAL RELEASE** CS    **BOND/RECT NO.**    **TO APPEAR**    **DIVISION**    **DATE**    **TIME**

| COUNTY JAIL NO. | RELEASED BY | TIME | DATE | WARRANT CHK BY | SDCAL | NCIC |
|---|---|---|---|---|---|---|
| 616514 | | | | Wilson | X | X |

**PERSON CALLED**    **PHONE NO.**    **DATE**    **TIME**    **COMPLETED/OFFICER**

**DATE OF SENTENCE**    **COURT**    **SENTENCE**

**PROPERTY**    **DESC**    **CONDITION**

I, _____ AGREE TO
RELEASE TO _____ THE
FOLLOWING PROPERTY: KEYS

I RECEIVED THE ABOVE _____

$ _____ AND ALL PROPERTY IS RECEIVED BY ME
X _____

00609



OXNARD POLICE DEPARTMENT
5604
CRIME REPORT

DR: 90-16450
CC: 0220
Possibility of Restitution: NO

2. Code Section       3. Crime                              4. Classification       5. Report Area
   207 P.C.              KIDNAPPING                            HANDS                    214
   261.2 P.C.            RAPE WITH FOREIGN OBJECT
   220 P.C.              ASSAULT WITH INTENT TO COMMIT RAPE
   243.4 P.C.            SEXUAL BATTERY

6. Date/Time Occurred         7. Date/Time Reported        8. Location of Occurrence
   07/14/90, 1135, SAT           07/14/90, 1142               118 COOPER RD., OXNARD
                                                              (PAUL'S AUTOMOTIVE REPAIR)

9. Victim's Name            10. Residence Address                        11. Res. Phone
   SOZA, MARIA CURYSTINA        145 GAVIOTA PLACE, OXNARD                    488-3230
                                                      (FRIEND'S PHONE) (805)  927-8160

12. Occupation      13. Race/Sex  14. Age  15. DOB      16. Bus. Address       17. Bus. Phone
    WAITRESS           W/F            31      08/26/58      UNEMPLOYED             *

18. Additional Persons (Yes/No) *

19. Name                    20. Code  21. Residence Address                   22. Res. Phone
    LINCOLN, DONEL             W         2437 GRAND AVE. #263, VENTURA            656-6910

23. Occupation      24. Race/Sex  25. Age  26. DOB      27. Bus. Address       28. Bus. Phone
    *                  W/M            46      09/16/44      *                      *

29. Name                    30. Code  31. Residence Address                   32. Res. Phone
    *                          *         *                                        *

33. Occupation      34. Race/Sex  35. Age  36. DOB      37. Bus. Address       38. Bus. Phone
    *                  *              *       *             *                      *

_____ MODUS OPERANDI _____

39. Describe Characteristics of Premises and Area Where Offense Occurred:
    PUBLIC ROADWAY, DIRT/GRAVEL AREA NEXT TO COMMERCIAL BUSINESS AND RAILROAD TRACKS
40. Describe Briefly How Offense Was Committed:
    SUSPECT FOLLOWS VICTIM, GRABS VICTIM AND THROWS HER TO GROUND. PULLS VICTIM'S PANTS DOWN,
    PLACES FINGERS INSIDE VAGINA.  WHEN CONFRONTED BY WITNESS, SUSPECT FLEES THE AREA )
41. Describe Weapon, Instrument, Equipment, Trick, Device or Force Used:
    HANDS
42. Motive - Type of Property Taken or Other Reason for Offense:
    SEXUAL GRATIFICATION
43. Estimated Loss Value and/or Extent of Injuries - Minor, Major:
    SCRATCHES ON RIGHT ARM, SWELLING AND REDNESS  TO BREASTS,  SCRATCHES ON  LEGS  AND  ANKLES,
    COMPLAINT OF PAIN TO BACK OF NECK AND TOP OF HEAD
44. What Did Suspect/s Say - Note Peculiarities:
    "I'M GOING TO SHOW YOU SOMETHING."  "YOU'RE MY WOMAN."
45. Victim's Activity Just Prior To and/or During Offense:
    WALKING ON SIDEWALK EN ROUTE TO SHOPPING CENTER
46. Trademark - Other Distinctive Action of Suspect/s:
    DAYTIME.  RAPE WITH FOREIGN OBJECT. SEXUAL BATTERY.
47. Vehicle Used:                                         COMPLAINT SIGNED:(Yes/No)
    BROWN, 1989 HONDA CIVIC, CA LIC 2RBF638                   *

00610

PAGE 2                          CRIME REPORT                        DR: 90-16450

48. Suspect #1 (Name)      49. Race/Sex  50. Age  51. Ht.  52. Wt.  53. Hair  54. Eyes
    HILL, RENARD BYRON          B/M          29       5-10     210      BLK       BRN
    (ALSO USES FIRST NAME RAYNARD)
55. ID No. or DOB                                              56. Arrested (Yes/No)
    12/10/60 (ALSO USES 03/10/60)                                 NO

57. Address, Clothing and Other Identifying Marks or Characteristics
    3660 KEEL AVENUE, OXNARD - PHONE 984-2001
    WEARING WHITE T-SHIRT AND LEVIS, GRAY CAP
58. Suspect #2 (Name)      59. Race/Sex  60. Age  61. Ht.  62. Wt.  63. Hair  64. Eyes
    *                          *            *        *        *        *         *

65. ID No. or DOB                                              66. Arrested (Yes/No)
    *                                                             *

67. Address, Clothing and Other Identifying Marks or Characteristics   68. Add. Names (Y/N)
    *                                                                       *

---

### PROPERTY

Code: EV/B     Item: 1          Brand: SEIKO
Name: WATCH
Qty: 1         Id No: *         Model: *
Value: *
Misc.  Desc.:  MAN'S  YELLOW METAL WATCH WITH WHITE STONES IN CIRCULAR PATTER ON FACE,
BROKEN ON ONE SIDE

APS Card Completed: (yes/no) *

---

### PROPERTY

Code: EV/L     Item: 2          Brand: *
Name: BUTTON
Qty: 1         Id No: *         Model: *
Value: *
Misc. Desc.: BLUE BUTTON WITH BLUE THREAD STILL ATTACHED

APS Card Completed: (yes/no) *

---

### PROPERTY

Code: EV/L     Item: 3          Brand: *
Name: WHITE PAPER
Qty: 1         Id No: *         Model: *
Value: *
Misc. Desc.: WHITE TOILET PAPER REMOVED BY SUSPECT FROM VICTIM'S UNDERWEAR

APS Card Completed: (yes/no) *

PAGE 3                          CRIME REPORT                     DR: 90-16450

### PROPERTY

Code: EV/L    Item: 4          Brand: POLAROID
Name: PHOTOGRAPHS
Qty: 6        Id No: *          Model: *
Value: *
Misc. Desc.: SIX PHOTOGRAPHS DEPICTING VICTIM'S INJURIES

APS Card Completed: (yes/no) *

---

### PROPERTY

Code: EV/L    Item: 5          Brand: *
Name: PHOTOGRAPHIC LINEUP
Qty: 1        Id No: *          Model: *
Value: *
Misc.  Desc.: ONE PHOTOGRAPHIC LINEUP WHICH INCLUDES PHOTOGRAPH OF SUSPECT RENARD HILL
IN POSITION #4 AND TWO PHOTOGRAPHIC LINEUP INSTRUCTION SHEETS SIGNED  BY  VICTIM  SOZA
AND WITNESS LINCOLN

APS Card Completed: (yes/no) *

---

### VEHICLE

Code: S    Lic.: 2RBF638       State: CA          Yr: *
Veh. Yr: 1989                  Make: HONDA        Model: CIVIC
Body Style: 2-DR               Color: BRN         VIN: *
Hold: *    Towed: *
Other Characteristics: *

---

### SOLVABILITY FACTORS

        __N__ A.  Was an arrest made?
        __Y__ B.  Was there a witness to the crime?
        __Y__ C.  Was a suspect named or known?
        __Y__ D.  Can a suspect be described?
        __Y__ E.  Can a suspect be identified?
        __Y__ F.  Can the suspect vehicle be identified?
        __N__ G.  Is an unusual M.O. present?
        __N__ H.  Is stolen property traceable?
        __Y__ I.  Is significant physical evidence present?
        __N__ J.  Was there a limited opportunity for anyone but
                  the suspect to commit the crime?
        __Y__ K.  Do you recommend follow-up investigation?

00612

PAGE 4                          CRIME REPORT                      DR: 90-16450

DETAILS:

## VICTIM'S STATEMENT:

VICTIM MARIA SOZA STATED THAT ON 07/14/90 AT APPROXIMATELY 1125 HOURS, SHE WAS WALKING NORTHBOUND ON THE SIDEWALK ON THE WEST SIDE OF THE STREET OF OXNARD BOULEVARD FROM FOURTH STREET. SOZA SAID THAT SHE HEARD A VOICE YELLING AT HER "DO YOU WANT A RIDE?" COMING FROM ACROSS THE BOULEVARD (EAST SIDE). SOZA LOOKED OVER AND SAW A BLACK MALE IN A BROWN COMPACT VEHICLE WHO HAD STOPPED IN THE ROADWAY AND WAS YELLING AT HER. SOZA SAID SHE MADE NO VERBAL REMARK, BUT WAIVED HER HAND AT THE SUBJECT AND SHOOK HER HEAD INDICATING NO. THE VICTIM CONTINUED WALKING NORTHBOUND AND ATTEMPTED TO AVOID THE SUBJECT WHO CONTINUED TO CALL OUT TO HER, ASKING HER IF SHE WANTED A RIDE. SOZA CONTINUED WALKED.

SOZA SAID THAT THE DRIVER (AND ONLY OCCUPANT OF THE VEHICLE) DROVE UP NEXT TO HER AND AGAIN ASKED HER IF SHE WANTED A RIDE. SOZA SAID THAT SHE IGNORED THE SUBJECT AND CONTINUED WALKING NORTHBOUND TO SECOND STREET. SOZA SAID THAT THE SUBJECT WAS DRIVING ERRATICALLY ACROSS THE ROADWAY AND CONTINUED TO FOLLOW HER, MAKING A CIRCULAR PATTERN, DRIVING FIRST SOUTHBOUND, MAKING A U-TURN AND THEN COMING NORTHBOUND ON OXNARD BOULEVARD. SOZA STATED SHE PASSED ROYAL LIQUOR AND SAW THE SUSPECT AGAIN DRIVING UP TOWARD HER.

THE VICTIM CONTINUED WALKING AND AS SHE GOT TO THE CORNER OF MAGNOLIA STREET AND OXNARD BOULEVARD SHE SAW THE SUBJECT DRIVE INTO THE PARKING LOT OF THE CONVENIENCE MART LOCATED ON THE SOUTHWEST CORNER OF MAGNOLIA STREET AT OXNARD BOULEVARD. SOZA SAID THAT SHE BECAME EXTREMELY FRIGHTENED AND BEGAN WALKING QUICKLY ACROSS THE ROADWAY AND THEN BEGAN JOGGING ACROSS OXNARD BOULEVARD TO COOPER ROAD. SOZA SAID THAT SHE LOOKED BACK AND SAW THAT THE SUBJECT WAS FOLLOWING HER AGAIN. SHE FLAGGED DOWN A VEHICLE WHICH WAS TRAVELLING WESTBOUND ON COOPER ROAD APPROACHING THE BOULEVARD AND ASKED A LATIN MALE DRIVER AND FEMALE PASSENGER FOR HELP. THE SUBJECTS REFUSED TO HELP HER AND DROVE AWAY. A SECOND VEHICLE TRAVELLING WESTBOUND ON COOPER ROAD WAS FLAGGED DOWN BY SOZA. SHE ASKED THE LATIN MALE DRIVER FOR ASSISTANCE AND THIS DRIVER ALSO REFUSED AND DROVE AWAY WESTBOUND ON COOPER ROAD.

SOZA SAID AT THAT TIME SHE WAS GRABBED FROM BEHIND BY THE SUSPECT AND DRAGGED ACROSS THE ROADWAY. SOZA SAID THAT SHE WAS SCREAMING AND YELLING FOR HELP. SOZA SAID THAT SHE GRABBED ONTO A METAL POLE APPROXIMATELY TEN FEET FROM THE ASPHALT ROADWAY JUST SOUTH OF COOPER ROAD AND JUST WEST OF PAUL'S AUTOMOTIVE REPAIR. SHE SAID SHE PLEADED WITH THE SUSPECT TO LET HER GO, BUT HE ONLY REPLIED "I WANT TO SHOW YOU SOMETHING. I'M GONNA SHOW YOU SOMETHING."

SOZA SAID THAT THE SUSPECT FORCIBLY REMOVED HER HANDS FROM THE METAL POLE AND CONTINUED DRAGGING HER ACROSS THE DIRT/GRAVEL ROADWAY NEXT TO THE RAILROAD TRACKS. SOZA SAID THAT DURING THE TIME THAT THE SUSPECT WAS DRAGGING HER SHE LOST ONE SHOE AND A FEW FEET LATER LOST THE OTHER SHOE. SOZA STATED SHE STRUGGLED WITH THE SUSPECT ATTEMPTING TO FREE HERSELF, BUT THE SUSPECT CONTINUED HOLDING ONTO HER AND GRABBING HER ARMS, RESTRAINING HER, AND ALSO BEGAN PULLING HER HAIR IN AN ATTEMPT TO CONTROL HER. SOZA SAID THAT THERE WERE PEOPLE STANDING IN FRONT OF PAUL'S AUTOMOTIVE, BUT NO ONE ATTEMPTED TO ASSIST HER AT THAT TIME.

PAGE 5                              CRIME REPORT                        DR: 90-16450

SOZA WAS THEN THROWN TO THE GROUND BY THE SUSPECT AND LANDED ON HER BACK. THE SUSPECT HELD HER ARMS DOWN AND WAS FACING THE VICTIM. THE SUSPECT PULLED UP SOZA'S DRESS AND SPREAD HER LEGS APART. SOZA SAID THAT SHE CONTINUED TO YELL AND SCREAM, BEGGING FOR SOMEONE TO HELP HER. THE SUSPECT THEN PULLED SOZA'S UNDERWEAR TO HER KNEES. HE THEN REMOVED SOME TOILET TISSUE WHICH SOZA HAD PLACED IN HER UNDERWEAR BECAUSE SHE DID NOT HAVE A PANTY LINER AND WAS JUST AT THE END OF HER PERIOD AND DID NOT WISH TO SOIL HER UNDERWEAR. THE SUSPECT THREW THE TOILET TISSUE TO THE GROUND, AND WITH HIS LEFT HAND GRABBED HER VAGINAL AREA AND IN A FORCEFUL MOVEMENT FORCED HIS FINGERS UP INTO HER VAGINA. SOZA SAID THAT SHE DID NOT KNOW WHICH FINGERS THE SUSPECT PLACED INTO HER VAGINA, BUT FELT HIS FINGERS INSIDE HER VAGINA.

SOZA SAID THAT SHE KICKED THE SUSPECT WITH HER FOOT, FORCING THE SUSPECT BACK. SUSPECT AGAIN GRABBED HER ARMS AND HELD HER DOWN, BUT SHE WAS ABLE TO PULL UP HER UNDERWEAR. SOZA CONTINUED TO FIGHT THE SUSPECT, AND AT THAT TIME WITNESS LINCOLN YELLED OUT TO THE SUSPECT TO LEAVE HER ALONE. SOZA CONTINUED SCREAMING, TELLING WITNESS LINCOLN THAT SHE DID NOT KNOW THE SUSPECT AND ASKING FOR HELP. THE SUSPECT TOLD LINCOLN THAT SOZA WAS HIS GIRLFRIEND AND THEY WERE JUST HAVING AN ARGUMENT. HE CONTINUED HOLDING ONTO THE VICTIM AND AGAIN TRIED TO CONVINCE THE WITNESS THAT SOZA WAS HIS GIRLFRIEND. WITNESS LINCOLN KEPT TELLING THE SUSPECT TO LEAVE HER ALONE AND TO RELEASE HER. THE SUSPECT CONTINUED TO REFUSE. WITNESS LINCOLN STATED HE WAS GOING TO CALL THE POLICE AND THE SUSPECT REPLIED "GO AHEAD AND CALL THE POLICE. SHE'LL JUST GET IN TROUBLE." SOZA STATED SHE GRABBED THE WITNESS AND AGAIN TOLD HIM THAT SHE HAD NO IDEA WHO THE SUSPECT WAS, THAT SHE HAD NEVER SEEN HIM BEFORE, AND THAT THE SUSPECT HAD JUST ATTEMPTED TO RAPE HER. THE SUSPECT AT THAT TIME BEGAN BACKING UP AND THEN RAN ACROSS THE RAILROAD TRACKS WESTBOUND ACROSS OXNARD BOULEVARD INTO THE PARKING LOT OF THE CONVENIENCE FOOD MART AT MAGNOLIA AND OXNARD BOULEVARD.

SOZA SAID THAT SHE TOLD WITNESS LINCOLN THAT THE SUSPECT WAS DRIVING A METALLIC BROWN COMPACT VEHICLE. SOZA SAID THAT LINCOLN THEN WENT ACROSS THE STREET TO ATTEMPT TO LOCATE THE VEHICLE. SOZA SAID THAT SHE FOLLOWED THE WITNESS ACROSS OXNARD BOULEVARD TOWARD THE FOOD MART. SOZA SAID THAT SHE SAW THE SUSPECT COMING OUT OF THE FOOD MART, GET INTO THE BROWN HONDA CIVIC AND DRIVE OUT OF THE PARKING LOT AND TRAVEL SOUTHBOUND ON OXNARD BOULEVARD. SOZA SAID THAT WITNESS LINCOLN THEN WROTE DOWN THE LICENSE NUMBER OF THE SUSPECT'S VEHICLE.

SOZA THEN WENT TO PAUL'S AUTOMOTIVE AND CONTACTED POLICE WHO HAD JUST ARRIVED.


WITNESS' STATEMENT:

WITNESS DONEL LINCOLN SAID THAT ON 07/14/90 AT APPROXIMATELY 1140 HOURS, HE HEARD A WOMAN SCREAMING AND YELLING FOR HELP. LINCOLN DESCRIBED THE PLEAS AS FRANTIC AND EXTREMELY FRIGHTENED. LINCOLN, WHO HAD BEEN INSIDE PAUL'S AUTOMOTIVE, CAME AROUND THE SIDE OF THE BUILDING WHERE THE SCREAMS WERE COMING FROM. LINCOLN SAID THAT HE SAW A BLACK MALE HOLDING THE WHITE FEMALE DOWN ON THE GROUND. LINCOLN SAID THAT THE FEMALE WAS LYING ON HER BACK AND THAT THE SUSPECT WAS FACING HER, HOLDING BOTH OF HER ARMS DOWN AROUND HER SHOULDER AREA. LINCOLN SAID THAT THE SUSPECT WAS LEANING OVER HER AND HAD HIS ONE LEG IN BETWEEN THE VICTIM'S LEGS AND THE OTHER PARTIALLY TO THE RIGHT SIDE OF THE VICTIM.

PAGE 6                                CRIME REPORT                        DR: 90-16450

LINCOLN SAID THAT HE APPROACHED AND YELLED AT THE SUSPECT TO LEAVE THE VICTIM ALONE.
THE SUSPECT RESPONDED BY SAYING THIS WAS HIS WOMAN AND "HER NAME IS MARY. SHE'S MY
WOMAN. SHE'S JUST MY OLD LADY." LINCOLN TOLD THE SUSPECT AGAIN TO LEAVE HER ALONE
AND TO LET HER UP. THE SUSPECT HELD ONTO THE VICTIM'S ARMS AS SHE STOOD UP.

LINCOLN SAID THAT AS HE GOT CLOSER TO THE VICTIM THE SUSPECT AGAIN TOLD HIM THAT SHE
WAS HIS WOMAN. SUDDENLY, THE VICTIM GRABBED ONTO LINCOLN, TELLING HIM THAT SHE HAD
NEVER SEEN THE SUSPECT BEFORE AND DID NOT KNOW WHO HE WAS. LINCOLN SAID THAT THE
VICTIM'S VOICE WAS BREAKING AND THAT SHE WAS NOTICEABLY FRIGHTENED. LINCOLN SAID THAT
THE VICTIM WAS CLINGING ONTO HIM, ASKING HIM TO PROTECT HER. LINCOLN SAID THAT HE
TOLD THE SUSPECT THAT HE WAS GOING TO CALL THE POLICE AND THE SUSPECT REPLIED "GO
AHEAD. SHE'LL BE THE ONE THAT GETS INTO TROUBLE." THE SUSPECT THEN LEFT THE AREA
RUNNING WESTBOUND ACROSS THE RAILROAD TRACKS AND THEN ACROSS OXNARD BOULEVARD.

LINCOLN SAID THAT HE FOLLOWED THE SUSPECT ACROSS THE STREET AND BEGAN WRITING DOWN
LICENSE NUMBERS OF CARS BECAUSE HE WAS NOT SURE AT THAT TIME WHICH VEHICLE BELONGED TO
THE SUSPECT.

LINCOLN SAID THAT AS HE APPROACHED THE CONVENIENCE FOOD MART HE SAW THE SUSPECT COMING
OUT OF THE STORE AND SAW HIM GET INTO A BROWN HONDA. LINCOLN DESCRIBED IT AS HAVING A
SHINY METALLIC GLAZE. LINCOLN SAID THAT HE SAW THE SUSPECT DRIVING AWAY AND THAT THE
SUSPECT YELLED SOMETHING AT HIM THAT HE COULD NOT UNDERSTAND. HE WATCHED AS THE
SUSPECT DROVE SOUTHBOUND ON OXNARD BOULEVARD. LINCOLN THEN WROTE DOWN THE LICENSE
NUMBER OF THE SUSPECT VEHICLE. LINCOLN SAID THAT HE IS POSITIVE THAT THE LICENSE
NUMBER THAT HE WROTE DOWN WAS THAT OF THE SUSPECT VEHICLE.

LINCOLN DESCRIBED THE SUSPECT AS BEING A BLACK MALE, APPROXIMATELY 5-9, HEAVY BUILD,
MUSTACHE, SHORT AFRO, WEARING A GRAY CAP, DIRTY WHITE T-SHIRT AND WHAT APPEARED TO BE
BLUE LEVIS. LINCOLN SAID THAT THE SUSPECT APPEARED TO BE IN HIS LATE TWENTIES.


SUSPECT'S ACTIONS:

SUSPECT FOLLOWS THE VICTIM AS SHE IS WALKING ALONG A PUBLIC ROADWAY. SUSPECT
CONFRONTS VICTIM AND ASKS VICTIM IF SHE WISHES A RIDE. VICTIM REFUSES. SUSPECT
CONTINUES TO FOLLOW THE VICTIM. SUSPECT PULLS HIS VEHICLE INTO A PARKING LOT AND
PARKS IT. SUSPECT FOLLOWS VICTIM AS SHE ATTEMPTS TO FLEE. SUSPECT GRABS VICTIM,
FORCES VICTIM INTO AN UNOCCUPIED DIRT AREA NEXT TO A COMMERCIAL BUILDING. SUSPECT
THROWS THE VICTIM ONTO THE GROUND, SEXUALLY ASSAULTS VICTIM AND FLEES WHEN CONFRONTED
BY WITNESS.


OFFICER'S ACTIONS:

ON 07/14/90 AT APPROXIMATELY 1144 HOURS, I WAS DISPATCHED TO A CALL OF A DOMESTIC AT
PAUL'S AUTOMOTIVE AT 118 COOPER ROAD, OXNARD.

UPON MY ARRIVAL I WAS FLAGGED DOWN BY AN EMPLOYEE OF PAUL'S AUTOMOTIVE WHO TOLD ME
THAT A BLACK MALE AND A WHITE FEMALE WERE HAVING AN ARGUMENT NEXT TO THE BUSINESS ON
THE WEST SIDE NEAR THE RAILROAD TRACKS.

I WENT TO THAT LOCATION AND CHECKED THE AREA, BUT DID NOT LOCATE ANYONE.  THE SUBJECT
THEN  STATED THAT THE WOMAN WHO HAD BEEN INVOLVED IN THE ARGUMENT, LATER IDENTIFIED AS
MARIA SOZA, WAS ACROSS THE STREET AT THE CORNER OF COOPER ROAD AND OXNARD  BOULEVARD.
SOZA WAS STANDING NEXT TO A WHITE MALE, LATER IDENTIFIED AS WITNESS DONEL LINCOLN.

MARIA SOZA AND DONEL LINCOLN THEN WALKED ACROSS THE STREET AND  CONTACTED  ME  AND
OFFICER RANDEY COLE, WHO HAD ALSO BEEN DISPATCHED TO THE CALL.

I OBTAINED A BRIEF STATEMENT AS TO WHAT HAD OCCURRED AND A DESCRIPTION OF THE  SUSPECT
AND SUSPECT  VEHICLE FROM BOTH SOZA AND LINCOLN.  SOZA IDENTIFIED THE SUSPECT AS BEING
A BLACK MALE, IN HIS LATE TWENTIES, APPROXIMATELY 5-8 TO 5-9, HEAVY BUILD, SHORT BLACK
AFRO, BROWN EYES, WITH A THIN MUSTACHE.  SHE STATED WAS WEARING A WHITE T-SHIRT AND
LEVIS.  SOZA SAID THAT SHE DID NOT SMELL ANY ODOR OF  AN  ALCOHOLIC  BEVERAGE  ON  THE
SUBJECT.   SOZA  DID  NOT NOTICE ANY VISIBLE TATTOOS OR OTHER MARKINGS ON THE SUSPECT.
SOZA SAID THAT THE SUSPECT HAD BEEN WEARING A GOLD WATCH ON HIS LEFT  WRIST,  BUT  SHE
BROKE  THE  WATCH OFF WHEN SHE WAS STRUGGLING WITH HIM AS SHE WAS LYING ON THE GROUND.
SOZA POINTED OUT THE WATCH TO OFFICER COLE.

WITNESS  LINCOLN GAVE THE SAME DESCRIPTION OF THE SUSPECT, ADDING THAT THE SUSPECT WAS
WEARING A GRAY CAP WITH A VERY SHORT BILL.

WITNESS  LINCOLN SHOWED ME THE PIECE OF PAPER THAT HE WROTE DOWN THE LICENSE NUMBER TO
THE SUSPECT VEHICLE ON.  CALIFORNIA LICENSE NUMBER 2RBF638.  MR. LINCOLN DESCRIBED THE
VEHICLE AS BEING A NEW MODEL TWO-DOOR COMPACT.

I ADVISED DISPATCH VIA RADIO OF THE SUSPECT'S DESCRIPTION AND VEHICLE INFORMATION  AND
REQUESTED A REGISTERED OWNER CHECK.  I WAS INFORMED THAT THE VEHICLE WAS REGISTERED TO
A SANDRA MORRIS AT 1640 LOOKOUT DRIVE, OXNARD.  THE VEHICLE  IS  A  1989  HONDA.   MR.
LINCOLN DESCRIBED THE VEHICLE AS BEING VERY SHINY "METALLIC."

MR. LINCOLN AND MS. SOZA BOTH SAID THAT THEY COULD POSITIVELY IDENTIFY THE SUSPECT  IF
THEY SAW HIM AGAIN.

AS I WAS CHECKING THE AREA FOR THE  SUSPECT  VEHICLE  I  WAS  ADVISED  BY  OFFICER  B.
SCHMALHOFER  THAT  HE  HAD  ARRESTED A SUBJECT WHO MATCHED THAT DESCRIPTION OUT OF THE
SAME VEHICLE AS THE VEHICLE WE HAD DESCRIBED OVER  THE  AIR,  WITH  THE  SAME  LICENSE
NUMBER.   OFFICER  SCHMALHOFER MET ME AT THE STATION AND GAVE ME INFORMATION REGARDING
THAT ARREST.  THE SUBJECT'S NAME WAS RENARD (ALSO SPELLED RAYNARD) BYRON HILL, WITH  A
DATE  OF  BIRTH  OF  12/10/60  AND ALSO 03/10/60.  HE HAD BEEN ARRESTED ON 07/07/90 AT
APPROXIMATELY 1100 HOURS.  OFFICER SCHMALHOFER INFORMED ME THAT HE WAS A SUBJECT  WHOM
HE  HAD  TO  PHYSICALLY  RESTRAIN  AT  THE  CORNER OF WOOLEY ROAD AND VENTURA ROAD.   I
RECALLED THAT INCIDENT WHEN I, WHILE OFF-DUTY, OBSERVED OFFICER SCHMALHOFER  WRESTLING
WITH  THE  SUBJECT,  ATTEMPTING  TO  PLACE  HIM  UNDER  ARREST.   I  ASSISTED  OFFICER
SCHMALHOFER IN HANDCUFFING HILL.

A  PHOTOGRAPH  WAS  OBTAINED  FROM  SUSPECT HILL'S FILE  UNDER B.I. NUMBER 49402.  A
PHOTOGRAPHIC LINEUP WAS PUT TOGETHER WITH THE  PHOTOGRAPH  OF  HILL  AND  FIVE  OTHER
SUBJECTS  WITH THE SAME GENERAL DESCRIPTION AND AGE AS THE SUSPECT.  THE PHOTOGRAPH OF
HILL WAS IN POSITION NUMBER 4.

I HAD OFFICER COLE TRANSPORT THE VICTIM AND WITNESS TO THE OXNARD POLICE DEPARTMENT. I TALKED WITH BOTH VICTIM AND WITNESS AND THEN INFORMED THEM OF THE PHOTOGRAPHIC LINEUP INSTRUCTION SHEET. I THEN GAVE THEM EACH A SHEET TO READ AND THEY WERE PLACED IN SEPARATE INTERVIEW ROOMS.

SOZA WAS STILL VISIBLY SHAKING AND VERY UPSET. SHE STATED THAT SHE FELT LIGHT-HEADED AND WAS HAVING DIFFICULTY CONCENTRATING. I EXPLAINED TO SOZA THAT I WOULD READ HER THE STATEMENT ON THE PHOTOGRAPHIC LINEUP INSTRUCTION SHEET. I THEN READ THE STATEMENT TO HER. SHE STATED SHE UNDERSTOOD AND HAD NO QUESTIONS. SHE THEN SIGNED HER NAME ON THE FORM AS INDICATED.

I ASKED SOZA IF SHE WAS HAVING ANY DIFFICULTY SEEING AT THAT TIME AND SHE STATED SHE WAS NOT. I THEN ASKED SOZA TO CAREFULLY LOOK OVER EACH OF THE SIX PHOTOGRAPHS AND TELL ME WHETHER OR NOT SHE SAW THE SUBJECT WHO HAD ASSAULTED HER IN THAT LINEUP. SOZA LOOKED AT THE LINEUP FOR APPROXIMATELY SIX SECONDS, IMMEDIATELY LOOKING AT THE PHOTOGRAPH IN POSITION #4. SOZA LOOKED AGAIN AT THE OTHER SUBJECTS AND AGAIN WENT BACK TO PHOTOGRAPH #4 AND STATED THAT SHE WAS POSITIVE THAT THIS WAS THE SUBJECT WHO HAD ASSAULTED HER BY STATING "THAT'S HIM. I'M POSITIVE THAT'S HIM." SOZA MADE OTHER STATEMENTS, POSITIVELY IDENTIFYING HILL AS THE SUSPECT.

I THEN REQUESTED SOZA TURN THE LINEUP OVER AND SIGN HER NAME, WRITE THE NUMBER OF THE PHOTOGRAPH THAT SHE CHOSE AS THE SUSPECT AND THE DATE AND TIME ON THE BACK OF THE LINEUP. SOZA SIGNED HER NAME AND WROTE NUMBER 4 ON THE BACK OF THE FORM. HER HAND WAS STILL SLIGHTLY SHAKING AND SHE PLACED THE PEN DOWN ON THE TABLE. I THEN WROTE THE DATE ON THE LINEUP AND NOTED THE TIME.

I THEN WENT INTO THE SEPARATE ROOM WHERE WITNESS DONEL LINCOLN WAS WAITING FOR ME. I TALKED WITH WITNESS LINCOLN BRIEFLY ABOUT THE PHOTOGRAPHIC LINEUP AND ASKED HIM TO READ THE PHOTOGRAPHIC LINEUP INSTRUCTION SHEET AND TO MAKE SURE HE UNDERSTOOD THE LINEUP BEFORE ATTEMPTING TO LOOK AT THE PHOTOGRAPHS. AFTER READING THE PHOTOGRAPHIC LINEUP INSTRUCTION SHEET MR. LINCOLN SAID HE HAD NO QUESTIONS AND UNDERSTOOD THE LINEUP INSTRUCTIONS.

I EXPLAINED TO MR. LINCOLN THAT I WANTED TO LOOK AT THE PHOTOGRAPHS OF EACH OF THE SIX SUBJECTS CAREFULLY BEFORE MAKING HIS DECISION ON WHETHER OR NOT THE PERSON THAT HE HAD OBSERVED COMMITTING THE ASSAULT ON VICTIM SOZA EARLIER WAS IN THAT GROUP OF PHOTOGRAPHS. I TOLD MR. LINCOLN NOT TO TURN THE LINEUP OVER, BUT JUST TO LOOK AT THE PHOTOGRAPH AS I LAID THE LINEUP ON THE TABLE. MR. LINCOLN LOOKED AT THE PHOTOGRAPHS CAREFULLY AND AFTER APPROXIMATELY FOUR SECONDS I NOTED THAT HE WAS CONTINUALLY LOOKING AT PHOTOGRAPH #4. AFTER APPROXIMATELY THREE MORE SECONDS HE STATED SOMETHING TO THE EFFECT OF "THIS LOOKS LIKE HIM. THIS IS THE GUY. BUT I WOULDN'T WANT TO PUT ANYBODY IN JAIL UNLESS I COULD SEE HIM IN PERSON." FOR HIS EXACT QUOTE REFER TO PHOTOGRAPHIC LINEUP SIGNED BY LINCOLN.

THE PHOTOGRAPHIC LINEUP ALONG WITH THE PHOTOGRAPHIC LINEUP INSTRUCTION SHEETS WERE MARKED, TAGGED AND PLACED INTO EVIDENCE.

I THEN OBTAINED MR. LINCOLN'S COMPLETE STATEMENT AND HE LEFT THE STATION.

Case 3:07-cv-03165-CRB    Document 19-13    Filed 07/07/2008    Page 79 of 110

I TALKED AGAIN WITH VICTIM SOZA.  SHE WAS STILL VERY UPSET ABOUT THE INCIDENT.  SHE HAD BEEN CRYING AND TEARS WERE RUNNING DOWN HER FACE.  I OBTAINED A MORE DETAILED STATEMENT FROM SOZA.  DURING OUR CONVERSATION SHE INFORMED ME THAT THE SUSPECT HAD REMOVED THE TOILET TISSUE THAT SHE HAD PUT IN HER UNDERWEAR AND HAD THROWN IT ONTO THE GROUND.  SHE ALSO STATED THAT DURING THE TIME SHE WAS BEING DRAGGED ACROSS THE ROADWAY AND INTO THE DIRT/GRAVEL AREA THAT THE SUSPECT TORE THE BACK OF HER DRESS AND ONE OF THE BUTTONS WAS MISSING.  SOZA HAD ALSO DESCRIBED THAT THE SUSPECT HAD PLACED HIS FINGERS INSIDE HER VAGINA.

I CONTACTED DETECTIVE NEITZEL TO DETERMINE WHETHER OR NOT A MEDICOLEGAL EXAMINATION WAS NECESSARY.  I INFORMED DETECTIVE NEITZEL THAT SOZA HAD TOLD ME THAT SHE WAS NOT INJURED VAGINALLY, AND IT DID NOT APPEAR THAT THERE WOULD BE ADDITIONAL EVIDENCE THAT COULD BE OBTAINED BY DOING A MEDICOLEGAL.  DETECTIVE NEITZEL REQUESTED THAT I PUT OUT A PROBABLE CAUSE WANT FOR SUSPECT HILL.  A PROBABLE CAUSE WANT WAS BROADCAST FOR THE ARREST OF RENARD HILL.

VICTIM SOZA WAS THEN TRANSPORTED BACK TO COOPER ROAD AND OXNARD BOULEVARD WHERE SHE SHOWED ME EXACTLY WHERE THE INCIDENT TOOK PLACE.  OFFICER SEDILLOS AND I CHECKED THE AREA IN AN ATTEMPT TO LOCATE THE BUTTON THAT WAS TORN FROM THE VICTIM'S DRESS.  AFTER APPROXIMATELY 20 MINUTES OF SEARCHING THE AREA A BLUE BUTTON FROM THE VICTIM'S DRESS WITH BLUE THREAD STILL ENTWINED IN THE CENTER TWO HOLES WAS LOCATED APPROXIMATELY TEN FEET NORTHWEST OF WHERE THE ASSAULT TOOK PLACE NEAR PAUL'S AUTOMOTIVE REPAIR.

VICTIM SOZA ALSO POINTED OUT THE WHITE TOILET TISSUE THAT SHE HAD PLACED INSIDE HER UNDERWEAR WHICH HAD BEEN REMOVED BY THE SUSPECT AND THROWN ON THE GROUND.  THE PAPER WAS FOUND IN THE SAME LOCATION WHICH HAD BEEN POINTED OUT EARLIER BY VICTIM SOZA AS BEING THE LOCATION WHERE SHE WAS ASSAULTED AND THROWN ON HER BACK.

THE BUTTON AND PAPER WERE RETRIEVED AND LATER MARKED, TAGGED AND PLACED INTO EVIDENCE.

I WAS GIVEN THE MAN'S WATCH BY OFFICER COLE WHICH THE VICTIM SAID SHE TORE FROM THE SUSPECT'S ARM WHILE HE WAS RESTRAINING AND ATTACKING HER.  THAT WATCH WAS ALSO MARKED, TAGGED AND PLACED INTO EVIDENCE.

SOZA AGAIN DESCRIBED HOW SHE WAS LYING ON HER BACK, SCREAMING FOR HELP AND TRYING TO PUSH THE SUSPECT AWAY, WITH SUCCESS.  SHE AGAIN BEGAN TO CRY.  OFFICER SEDILLOS WAS REQUESTED TO TRANSPORT VICTIM SOZA TO HER RESIDENCE, WHICH HE DID.

FOR FURTHER INFORMATION REFER OFFICER SCHMALHOFER'S ARREST OF SUSPECT HILL ON 07/07/90 REFER DR90-15901.

ALL LINEUPS, PHOTO LINEUPS, TAPES, INTERVIEWS WITH WITNESSES, PHYSICAL EVIDENCE, AND OTHER EVIDENCE OBTAINED BY ME ARE LISTED IN THE REPORTS SUBMITTED.

PHOTOGRAPHS  YES            TAPES  NO            PHYSICAL EVIDENCE  YES

Date/Time:  07/14/90
Rpt. Off.:  JANA YOUNG              I.D. No.: 1661
Rpt. Off.:  *                       I.D. No.: *
Date Typed: 07/14/90                Typist Initials: RT

00618



DR: 90-16450

## ARREST REPORT

CC: ∣Ø220

Possibility of Restitution: NO

Crime: 207 P.C., 664/261 P.C., 289 P.C.

Beat/Grid: *

Victim's Name: SOZA, MARIA

Location of Incident: 519 META STREET, OXNARD

Date/Time of Occurrence: 7/16/90, 0950 HOURS

---

### ADDITIONAL PERSONS

Code: S     Name: HILL, RAYNARD BYRONE          AKA: *
Race: B     Sex: M       Age: 30       Ht: 5-10     Wt: 230
Build: HVY  Hair: BLK    Eyes: BRN     DOB: 12/10/60
DL# ST: *
Res. Add: 3660 KEEL
Zip: *              Ph: 985-6742
Bus. Add: *
Zip: *              Ph: *
Occupation: CERTIFIED WELDER
County Res: YES       Undocumented Pers: NO
Interpreter Req: NO
Indication of Drugs/Alcohol: YES – COCAINE
Relationship to Suspect/Victim: NO
Additional Names: NO

---

### DETAILS:

OFFICER ROGER WHITNEY AND I WERE ON PATROL IN THE LEMONTREE MOTEL WHEN WE OBSERVED A SUBJECT WHOM WE BELIEVED TO BE WANTED. WE KNEW THE SUBJECT BY THE NAME OF BERNARD HILL. THE SUBJECT WAS WALKING WESTBOUND ON THE THIRD FLOOR OF THE LEMONTREE. AS HE REACHED THE STAIRWAY HE BEGAN TO FLEE DOWN THE STAIRWAY.

I BEGAN TO PURSUE THE SUBJECT ON FOOT AS HE RAN EASTBOUND ON THE SECOND FLOOR. OFFICER WHITNEY RAN DOWN THE FRONT STAIRS AND INTERCEPTED THE SUBJECT AT THE EAST END OF THE SECOND FLOOR.

AT THIS TIME THE SUBJECT TURNED AND BEGAN RUNNING WESTBOUND ON THE SECOND FLOOR RUNNING DIRECTLY TOWARDS ME. APPROXIMATELY ONE THIRD THE WAY DOWN THE HALLWAY HE STOPPED NOTICING THAT OFFICER WHITNEY WAS BEHIND HIM AND I WAS IN FRONT OF HIM AT WHICH TIME HE JUMPED OFF THE SECOND FLOOR INTO THE VACANT FIELD.

PAGE 2                        ARREST REPORT                        DR: 90-16450

I THEN CONTINUED TO RUN EASTBOUND AND OUT THE FRONT DOOR AND BEGAN TO PURSUE THE SUBJECT ON FOOT SOUTHBOUND ON META, AND THEN WESTBOUND ON SIXTH. I OBSERVED THE SUBJECT RUN INTO THE CITY CENTER MOTEL WHERE I LOST SIGHT OF HIM. WE WERE CONTACTED BY WITNESSES INSIDE THE MOTEL AREA WHO SAID HE HAD RUN INTO A ROOM. WE BEGAN CHECKING ROOM BY ROOM FOR THE SUBJECT.

WHEN WE WENT TO ROOM #35 WE KNOCKED AT THE DOOR. A BLACK FEMALE LOOKED OUT THE WINDOW. AT THIS TIME OFFICER COATES WAS ALSO ASSISTING US AND HE MOTIONED TO THE FEMALE TO OPEN THE DOOR. SHE OPENED THE DOOR SLIGHTLY. SHE ASKED WHAT WAS GOING AND WE ADVISED HER THAT THERE WAS A SUBJECT WHO WAS WANTED FOR A CRIME WHO HAD FLED THE AREA AND WE WERE LOOKING FOR HIM AS WITNESSES HAD STATED HE HAD GONE INTO ONE OF THE ROOMS IN THE CITY CENTER MOTEL. WE ASKED HER IF ANYBODY WAS IN THE ROOM WITH HER AND SHE MADE NO STATEMENT AND JUST STARED AT US.

WE ASKED IF WE COULD GO IN THE ROOM TO VERIFY THAT THE SUBJECT WAS NOT HIDING INSIDE THE ROOM AT WHICH TIME SHE STEPPED BACK AND SWUNG OPEN THE DOOR INDICATING TO US THAT SHE WAS GIVING US HER CONSENT TO SEARCH THE ROOM.

I ENTERED THE ROOM AND NOTED IN THE BED ON THE NORTH SIDE OF THE ROOM WAS LAYING THE SUSPECT WHOM I KNEW TO BE RAYNARD HILL. HE WAS COMPLETELY UNCLOTHED EXCEPT FOR A BATH TOWEL AND WAS IN BED ACTING AS IF HE WERE ASLEEP.

WE ROLLED HIM OVER, HANDCUFFED HIM AND WALKED HIM OUT OF THE ROOM. I LOCATED HIS CLOTHES UNDER THE BED WHICH WERE UNDER THE BED. THE BED WAS ON THE SOUTHSIDE OF THE ROOM. HIS CLOTHES WERE TAKEN AT THIS TIME

HE WAS TRANSPORTED TO THE OXNARD POLICE STATION BY OFFICER RODRIGUEZ AND PLACED IN A HOLDING CELL.

I THEN CONTACTED DETECTIVE NEITZEL AND ADVISED HIM WE HAD THE SUBJECT IN CUSTODY AS THERE WAS AN OUTSTANDING PROBABLE CAUSE WANT FOR THE SUBJECT. HE WAS SUBSEQUENTLY INTERVIEWED BY DETECTIVE NEITZEL.

FOR ADDITIONAL INFORMATION REFER TO HIS REPORT. AS I WAS COMPLETING THE BOOKING FORMS I NOTED SYMPTOMOLOGY OF ONE BEING UNDER THE INFLUENCE OF COCAINE. FOR ADDITIONAL INFORMATION REFER TO THE NARCOTIC ARREST REPORT.

ALL LINEUPS, PHOTO LINEUPS, TAPES, INTERVIEWS WITH WITNESSES, PHYSICAL EVIDENCE, AND OTHER EVIDENCE OBTAINED BY ME ARE LISTED IN THE REPORTS SUBMITTED.

PHOTOGRAPHS  *____          TAPES  *____          PHYSICAL EVIDENCE  *____

Date/Time:  7/16/90, 2000 HOURS
Rpt. Off.:  R. COLE                I.D. No.: 4067/2B
Rpt. Off.:  *                      I.D. No.: *
Date Typed: 7/16/90B               Typist Initials: MH

90-16450

OXNARD POLICE DEPARTMENT                          DR: 90-16806
5604
CRIME REPORT - NARCOTICS
                                    Category and Class: 4215

                                    Possibility of Restitution: NO

                                    Beat/Grid: 2/237

Date of Report: 07/16/90                          Booking #:

Code Section/s: 11550 H & S

Crime/s: UNDER THE INFLUENCE OF COCAINE

---

Location of Arrest: CITY CENTER MOTEL                    City: OXNARD

How Arrested: ON VIEW

Date, Time, Day of Occurrence: 07/16/90, 0950 HOURS, MONDAY    Local ID No:

Suspect's Name: HILL, RAYNARD BYRONE

Date, Time, Day of Arrest: 07/16/90, 0950 HOURS, MONDAY       CII #:

Alias:

SS#:                                       DR. LIC.:

Residence Add: 3660 KEEL WAY               City: OXNARD        State: CA

US Citizen: YES   Occupation: CERTIFIED WELDER   Employed: NO

Race: B        Sex: M        DOB: 12/10/60   Age: 29           Hair: BLK

Eyes: BRN      Height: 5'10"   Weight: 230

Birthplace:

Prior Dept. Record: OTHER CRIMES

Narcotic Use Status: USER OF DANGEROUS DRUGS

How Used (This Arrest): INHALE

Drug Involved: COCAINE

Tattoos/Marks/Scars:
Veh Yr:                Veh Make:                    Model:
Body Type:             License No.                  State:
Veh Color:             Registered Owner:
Stored At:
Status:                Agent/Officer:

00621

90 - 16450

PAGE 2                    CRIME REPORT — NARCOTICS                    DR: 90-16606

Co-Defendants (Name/Booking #):

_____

DETAILS:

OFFICER  ROGER WHITNEY AND I WERE DOING A ROUTINE FOOT PATROL IN THE AREA OF THE LEMON
TREE HOTEL.  WE SAW RAYNARD HILL, WHOM WE KNEW WAS WANTED.  HE FLED.   AFTER A  FOOT
PURSUIT HE WAS APPREHENDED AT THE CITY CENTER MOTEL.   (FOR FURTHER INFORMATION ON THE
FOOT PURSUIT, REFER TO REPORT 90-16450.)  HILL WAS TRANSPORTED TO  THE  OXNARD  POLICE
DEPARTMENT.

AS I WAS OBTAINING THE BOOKING INFORMATION IN A BOOKING CELL AT THE POLICE STATION,  I
NOTICED  THAT  HILL'S PUPILS LOOKED  DILATED WHEN HE WOULD TALK TO ME.  IT SHOULD BE
NOTED THAT WHILE HE WAS SITTING, MOST OF THE TIME HE WOULD SIT WITH HIS EYES CLOSED AS
IF  HE  WERE SLEEPING.  WHEN I ASKED HIM IF HE WAS TIRED, HE SAID HE WAS TIRED, BUT WAS
NOT SLEEPING AND THAT HE JUST HAD HIS EYES CLOSED.  IT SHOULD BE  NOTED  THAT  HE  WAS
ALSO EXTREMELY NERVOUS AS HE WAS SITTING.  HIS SPEECH WAS EXTREMELY RAPID.

I ASKED HILL TO SIT RELAXED WITH HIS EYES CLOSED FOR APPROXIMATELY ONE MINUTE.  I TOOK
HIS  PULSE  FOR 15 SECONDS AND NOTED THAT HIS HEART RATE WAS 128 BEATS PER MINUTE.  AT
THE CONCLUSION OF ONE MINUTE, I HAD HIM OPEN HIS EYES.  HIS PUPILS  WERE  DILATED  AND
PULSATED WITH THE INTRODUCTION OF LIGHT.  (IT SHOULD BE NOTED THAT I USED A THREE-CELL
MAGLITE FLASHLIGHT.)

I  ASKED HILL  IF  HE  WOULD PROVIDE A URINE SAMPLE, AND HE SAID HE WOULD AS IT WAS A
CONDITION OF HIS PROBATION.  HE PROVIDED A URINE SAMPLE AT 1024 HOURS.  IT WAS  TAGGED
AND  PLACED  INTO  EVIDENCE FOR TRANSPORTATION TO THE CRIME LAB.  NO FURTHER QUESTIONS
WERE ASKED OF HIM DUE TO OTHER CHARGES PENDING AGAINST HIM REGARDING THE 11550  HEALTH
AND SAFETY CODE CHARGE.

ALL LINEUPS, PHOTO LINEUPS, TAPES, INTERVIEWS WITH WITNESSES, PHYSICAL  EVIDENCE,  AND
OTHER EVIDENCE OBTAINED BY ME ARE LISTED IN THE REPORTS SUBMITTED.

PHOTOGRAPHS  NO               TAPES  NO          PHYSICAL EVIDENCE  YES

_____
Date/Time:  07/16/90, 2103 HOURS
Rpt. Off.:  R. COLE                    I.D. No.: 4067 2-B
Date Typed: 07/17/90                   Typist Initials: JB

00622

DR: 90-16450

### FOLLOW-UP REPORT

CC:

Crime: 243.4, 207, 664/261.2, 289 P.C.

Beat/Grid:

Victim's Name: SOZA, MARIA

Suspect's Name: HILL, REYNARD

---

### ADDITIONAL PERSONS

Code: S    Name: HILL, REYNARD BYRONE          AKA: RENARD
Race: B    Sex: M      Age: 29      Height: 5'10    Weight: 210
Build: HVY  Hair: BLK    Eyes: BRN    DOB: 12/10/60
DL# St.:
Res. Add.: TRANSIENT, CITY CENTER MOTEL
Zip:                  Phone:
Bus. Add.:
Zip:                  Phone:
Occupation:
County Resident:      Undocumented Person:
Interpreter Required:
Indication of Drugs/Alcohol: YES
Relationship to Victim/Suspect:
Additional Names: NO

---

### PROPERTY

Code: EV/L        Item: 1        Brand:
Name: MICROCASSETTE
Qty: 1        Id No:        Model:
Value:
Misc. Desc.: ONE TAPE OF INTERVIEW WITH SUSPECT

APS Card Completed: (yes/no)

---

### DETAILS:

ON 07/06/90 AT APPROXIMATELY 1020 HOURS I WAS ADVISED BY OFFICER COLE THAT A REYNARD
HILL HAD BEEN TAKEN INTO CUSTODY AS PER P.C. WANT ISSUED BY JANA YOUNG. I THEN WENT
TO THE JAIL AREA WHERE AN INTERVIEW WAS CONDUCTED.

00623

PAGE 2                       FOLLOW-UP REPORT                  DR: 90-16450

ON 07/16/90 AT APPROXIMATELY 1031 HOURS MR. HILL WAS ADVISED OF THE CHARGES FOR WHICH
HE WAS ARRESTED. HE ALSO WAS ADVISED OF HIS RIGHTS PER MIRANDA WHICH HE WAIVED BY
INDICATING THAT HE WOULD ANSWER MY QUESTIONS UNLESS THEY FELT THAT THEY WERE
INCRIMINATING AND AT THAT POINT, HE WOULD TELL ME THAT THOSE PARTICULAR QUESTIONS HE
WOULD NOT ANSWER.

MR. HILL WENT ON TO RELATE THAT HE KNEW THE WOMAN THAT IS THE VICTIM IN THIS
PARTICULAR INCIDENT. HE STATED THAT SHE HAD BEEN WITH LEON PARKS AND MELVIN CAMERON
EARLIER IN THE DAY. HE STATES THAT SHE WAS AT LEON PARKS HOUSE BETWEEN 8:30 AND 9:00
ON THE FOURTEENTH AND THAT SHE HAD LEFT WITH MELVIN CAMERON AFTER HE HAD GIVEN HER
$150. HE WOULD NOT SAY WHAT THE $150 WAS FOR. HE STATED THAT LATER MELVIN CAMERON
CAME BACK AND AT THAT TIME THE SUBJECT WHOM HE KNOWS AS MARY WAS NOT WITH MELVIN.

HE THEN TOOK LEON PARKS BACK TO THE LEMON TREE HOTEL AT APPROXIMATELY 10:30 IN THE
MORNING AND TWENTY MINUTES AFTER THAT, LOCATED THE VICTIM. HE STATED HE WAS ONLY
TRYING TO GET HIS MONEY BACK. HE STATED THAT HE BELIEVES THAT SHE IS A PROSTITUTE AND
USES DOPE. HE STATED THAT HE WAS TRYING TO STOP HER LONG ENOUGH SO THAT SHE WOULD
RETURN HIS MONEY. HE STATED THAT HE DID NOT PULL DOWN HER PANTIES AND HE DID NOT TAKE
KLEENEX FROM HER PANTIES. HE STATED THAT HE DID NOT PENETRATE HER WITH HIS FINGER OR
ANYTHING ELSE. HE STATED THAT HE HAD NO INTENTION OF RAPING HER AND THAT HE ONLY
WANTED TO GET HIS MONEY BACK.

HE STATED THAT HE DID NOT SAY ANYTHING TO HER LIKE "SHE WAS MY WOMAN" OR ANYTHING ELSE
NEAR THAT. HE STATED THAT SHE IS LYING ABOUT THE WHOLE BACKGROUND TO THIS INCIDENT.
HE STATED THAT HE HAS SEEN MELVIN CAMERON, AFTER THIS INCIDENT HAPPENED, AND MELVIN
CAMERON HAS NOT MENTIONED ANYTHING ABOUT THIS INCIDENT AT ALL TO HIM, SO HE DOES NOT
KNOW IF SHE HAD GONE BACK TO THE LEMON TREE HOTEL OR NOT. HE STATED THAT SHE HAD BEEN
IN HIS CAR EARLIER IN THE DAY ALSO. IT IS MY UNDERSTANDING THAT THAT WAS WHEN THEY
WENT OVER TO THE HAYES STREET ADDRESS FOR THEIR CONTACT WITH LEON PARKS.

**OFFICER'S ACTIONS:**

THE ABOVE INFORMATION WAS TAKEN FOR A REPORT. DURING THE ENTIRE INTERVIEW THE SUSPECT
WOULD ONLY SAY THAT HE HAD MADE CONTACT WITH HER AND THAT HE HAD STRUGGLED WITH HER,
HOWEVER, IT WAS TO GET $150 BACK. HE WAS ASKED SEVERAL TIMES IF POSSIBLY HE HAD
MISTAKEN THE VICTIM FOR THE SUBJECT WHOM HE KNOWS AS MARY AND HE STATED THAT HE WAS
ABSOLUTELY SURE THAT THIS PERSON WAS THE SAME.

HE WAS ALSO ASKED HOW I COULD GET A HOLD OF LEON PARKS AND MELVIN CAMERON AND HE
STATED THAT PERHAPS I COULD SEE HIM IN THE COLONIA OR OVER AT THE LEMON TREE HOTEL,
HOWEVER, HE HAD NO PHONE NUMBERS OR ANY OTHER INFORMATION AS TO A SPECIFIC ROOM AT THE
LEMON TREE HOTEL. THE INVESTIGATION IS TO CONTINUE.

ALL LINEUPS, PHOTO LINEUPS, TAPES, INTERVIEWS WITH WITNESSES, PHYSICAL EVIDENCE, AND
OTHER EVIDENCE OBTAINED BY ME ARE LISTED IN THE REPORTS SUBMITTED.

PHOTOGRAPHS  NO            TAPES  NO          PHYSICAL EVIDENCE  NO

---

Date/Time: 07/16/90, 1125 HOURS
Rpt. Off.: E. NEITZEL              I.D. No.: 0908, D-22
Rpt. Off.:                        I.D. No.:
Date Typed: 07/16/90              Typist Initials: RS

00624

DR: 90-16450

FOLLOW-UP REPORT

CC:

Crime: 243.4 P.C., 207 P.C., 289 P.C., 664/261.2 P.C.

Beat/Grid:

Victim's Name: SOZA, MARIA

Suspect's Name: HILL, REYNARD

---

PROPERTY

Code: EV/L          Item: 1          Brand:
Name: CASSETTE TAPE
Qty: 1          Id No:          Model:
Value:
Misc. Desc.: CASSETTE TAPE RECORDING OF TELEPHONE INTERVIEW WITH VICTIM MARIA SOZA

APS Card Completed: (yes/no) NO

---

DETAILS:

ON 07/16/90, AT APPROXIMATELY 1630 HOURS, I CONTACTED VICTIM MARIA SOZA BY TELEPHONE. SHE ADVISED THAT SHE IS NOW LIVING AT 2360 EMERSON STREET, CAMBRIA, CALIFORNIA 93428, 927-8160.    SHE STATED THAT SHE IS NOW WORKING AND WORKS FROM 8:00 A.M. TO 3:00 P.M. FOUR OR FIVE DAYS A WEEK.  HER WORK TELEPHONE NUMBER IS 927-4691.  SHE PREFERS TO BE CONTACTED AT HOME,  BUT IF IT IS NECESSARY TO CONTACT HER AT WORK PLEASE ASK FOR JIM RIVERS WHO WILL THEN BE ABLE TO CONTACT HER.

MARIA SOZA STATED THAT SHE LEFT HER MOTHER'S HOME TO GO SHOPPING.  SHE STATED SHE BELIEVES THAT SHE LEFT HER MOTHER'S HOME AT APPROXIMATELY 9:00 O'CLOCK ON SATURDAY MORNING.   HER MOTHER'S NAME IS LILY SOZA.  SHE STATED THAT THE REASON SHE WAS WALKING IS THAT SHE DOES NOT HAVE A CAR OR A LICENSE AT THIS POINT BECAUSE OF A DRUNK DRIVING CONVICTION.    SHE STATED THAT SHE WAS EN ROUTE TO THE ESPLANADE.  I ASKED HER IF SHE KNEW WHERE THE LEMON TREE HOTEL WAS.  SHE STATED SHE DID KNOW WHERE THAT WAS, HOWEVER, HAS NOT BEEN THERE.   SHE ALSO STATED THAT SHE HAD NOT BEEN TO HAYES AVENUE ON SATURDAY.  SHE ALSO STATED THAT SHE HAD NEVER BEEN IN THE SUSPECT'S CAR.

MARIA SOZA STATED THAT THE SUSPECT HAD NOT GIVEN HER $150 AND THAT HE HAD NOT GIVEN HER ANY MONEY.  SHE DOES NOT KNOW A LEON PARKS NOR DOES SHE KNOW A MELVIN CAMERON AND SHE CERTAINLY IS NOT MELVIN CAMERON'S GIRLFRIEND.  MARIA SOZA STATED THAT SHE DOES NOT USE COCAINE AND SHE DOES NOT USE HEROIN.   SHE STATED SHE IS NOT ENGAGED IN ANY

PAGE 2                          FOLLOW-UP REPORT                    DR: 90-16450

PROSTITUTION ACTIVITY. SHE DID STATE THAT THE SUSPECT MIGHT HAVE THOUGHT HE KNEW HER BECAUSE HE KEPT CALLING HER BY THE NAME MARY. SHE STATED THAT NO ONE SHE KNOWS OF CALLS HER MARY. SHE IS KNOWN TO ALL OF HER FRIENDS AS MARIA.

MARIA SOZA STATED THAT SHE IS MORE THAN WILLING TO COME TO VENTURA COUNTY TO APPEAR IN COURT OR MEET WITH THE DISTRICT ATTORNEY WHENEVER NECESSARY. SHE DID AGAIN STATE THAT SHE WAS JUST STARTING A BRAND NEW JOB, HOWEVER, SHE BELIEVES THIS IS IMPORTANT ENOUGH THAT SHE WILL TAKE OFF WORK. MARIA SOZA STATED THAT SHE HAS DEVELOPED MORE BRUISES ON HER ARMS SINCE THE ORIGINAL PHOTOGRAPHS WERE TAKEN AND SHE WILL ATTEMPT TO MAKE SOME ARRANGEMENTS TO HAVE PHOTOGRAPHS OF THOSE BRUISES TAKEN.

FOR FURTHER INFORMATION REFER TO THE CASSETTE TAPE WHICH WAS PLACED INTO EVIDENCE.

ALL LINEUPS, PHOTO LINEUPS, TAPES, INTERVIEWS WITH WITNESSES, PHYSICAL EVIDENCE, AND OTHER EVIDENCE OBTAINED BY ME ARE LISTED IN THE REPORTS SUBMITTED.

PHOTOGRAPHS  NO           TAPES  YES           PHYSICAL EVIDENCE  NO

Date/Time:   07/16/90, 1700
Rpt. Off.:   E. NEITZEL          I.D. No.: 0908, D22
Rpt. Off.:                       I.D. No.:
Date Typed: 07/16/90 (A)         Typist Initials: MAH

00626

DR: 90-16450

FOLLOW-UP REPORT

CC: *

Crime: 243.4 P.C./207 P.C.

Beat/Grid: *

Victim's Name: SOZA, MARIA

Suspect's Name: HILL, RENARD

---

### DETAILS:

ON 07/18/90 AT 0930 HOURS I WENT TO PAUL'S GARAGE AT 118 COOPER ROAD IN OXNARD. I CONTACTED SEVERAL PEOPLE THERE THAT HAD OBSERVED PORTIONS OF THE ASSAULT THAT HAD OCCURRED ON 07/14/90.

I FIRST SPOKE TO TERESA RUIZ, THE OFFICE MANAGER. SHE IS A LATIN FEMALE. THE PHONE AT WORK IS 483-4317. IF SHE NEEDS TO BE SUBPOENAED OR CONTACTED SHE IS NORMALLY THERE BETWEEN 8:00 AND 5:00. RUIZ STATED THAT SHE DID NOT SEE ANY OF THE ASSAULT FIRST-HAND. SHE STATED SHE DID HEAR A FEMALE SCREAMING AND THE SCREAMS MADE THE WOMAN SEEM AS THOUGH SHE WERE VERY AFRAID. SHE STATED SOMEONE CALLED OUT TO CALL THE POLICE AND SHE DID SO.

I THEN SPOKE TO DANNY AHN. HE IS A KOREAN MALE, 43 YEARS OF AGE. HE ALSO CAN BE CONTACTED OR SERVED AT 118 COOPER ROAD IN OXNARD BETWEEN 8:00 AND 5:00, MONDAY THROUGH SATURDAY. HIS PHONE NUMBER AT WORK IS 483-4317. MR. AHN'S PRIMARY LANGUAGE IS KOREAN. HIS ENGLISH IS VERY BROKEN. IF CALLED TO TESTIFY IN COURT HE WILL PROBABLY NEED A TRANSLATOR.

MR. AHN STATED HE WAS IN THE GARAGE WHEN HE HEARD A WOMAN SCREAMING. HE THEN WENT OUTSIDE. HE STATED WHEN HE DID SO HE SAW A LATIN FEMALE AND A BLACK MALE SUBJECT. HE STATED BY THE TIME HE GOT OUTSIDE THE FEMALE WAS ON THE GROUND AND THE BLACK MAN HAD HER BY THE ARM. WHEN HE GOT HER UP IT LOOKED LIKE HE WAS TRYING TO TAKE HER SOMEWHERE, BY THE ARM. HE STATED HE DID NOT GET TOO CLOSE TO THE BLACK MALE. HE STATED THE FEMALE WAS OBVIOUSLY VERY AFRAID AND FRIGHTENED. HE STATED SHE WAS CRYING. HE STATED THE BLACK MALE SUBJECT SAID THAT THE LADY WAS UNDER THE INFLUENCE OF COKE AND THAT HE HAD TO TAKE HER HOME. THE FEMALE LOOKED TOWARD AHN AND ASKED HIM TO CALL THE POLICE. AT THAT TIME THE BLACK SUBJECT SAID SOMETHING SIMILAR TO "DO YOU WANT TO CALL THE POLICE OR DO YOU WANT TO GO HOME?" HE STATED THE LADY SAID SOMETHING SIMILAR TO "I DON'T KNOW HIM, PLEASE HELP ME." HE STATED SHE BEGAN TO CRY EVEN HARDER. MR. AHN STATED ABOUT THAT TIME A WHITE MAN, WHO WAS A CUSTOMER AT PAUL'S GARAGE, WENT TO HELP THE FEMALE. HE STATED SHE KEPT TELLING THE WHITE MAN TO PLEASE HELP HER AND NOT TO LET HIM (THE BLACK MAN) TOUCH HER. AHN STATED WHEN IT BECAME APPARENT THAT THE POLICE WERE BEING CALLED, THE BLACK MAN LEFT THE AREA. HE STATED THE WHITE MAN BEGAN TO CHASE HIM.

I THEN SPOKE TO IGNACIO DIAZ CASTRO, A LATIN MALE, 21 YEARS OF AGE.   HE WORKS AS A MECHANIC AT PAUL'S GARAGE, LOCATED AT 118 COOPER ROAD, PHONE 483-4317. HE CAN BE CONTACTED OR SERVED AT THAT ADDRESS BETWEEN 8:00 AND 5:00, MONDAY THROUGH SATURDAY.

MR. CASTRO STATED THAT HE FIRST HEARD THE FEMALE SCREAMING. AT THAT TIME, WHEN HE LOOKED OUT, THE FEMALE WAS HOLDING ON TO A METAL SIGNAL AND THE BLACK MALE WAS TRYING TO PULL HER AWAY. HE STATED HE PULLED HER FREE AND CONTINUED DOWN THE TRACK TO WHERE SHE WAS MOMENTARILY OUT OF SIGHT. CASTRO STATED THE FEMALE KEPT TELLING THE MAN TO LEAVE HER ALONE. HE STATED THE FEMALE WAS CRYING AND WAS OBVIOUSLY VERY AFRAID. HE STATED AT ONE TIME SHE WAS DOWN ON THE GROUND AND THE MAN APPEARED TO BE HOLDING HER DOWN. HE STATED HER DRESS WAS UP BUT HE DID NOT KNOW IF HER UNDERWEAR WAS DOWN. HE STATED THE MAN SAID SOMETHING SIMILAR TO HER BEING HIS GIRLFRIEND AND THAT SHE WAS ON DRUGS. CASTRO STATED THAT THE WOMAN APPEARED TO BE AFRAID BUT SHE DID NOT LOOK LIKE SHE WAS UNDER THE INFLUENCE OF ANYTHING AT THE TIME. HE STATED A WHITE MAN HELPED HER. HE STATED THE WHITE MALE SAID SOMETHING SIMILAR TO "CALL THE POLICE." WHEN HE WAS ADVISED THAT THE POLICE HAD BEEN CALLED HE LEFT THE AREA VERY QUICKLY.

CASTRO STATED LATER IN THE DAY THE BLACK MAN CAME BACK TO THE AREA, LOOKING FOR HIS WATCH. CASTRO'S ENGLISH IS VERY BROKEN AND IF USED IN COURT HE WILL PROBABLY NEED A TRANSLATOR.

I WENT BACK AND ASKED MR. AHN IF HE FELT THE LADY WAS UNDER THE INFLUENCE OF ANYTHING. HE DID NOT THINK SO, HE STATED SHE JUST APPEARED TO BE VERY, VERY FRIGHTENED.

I PULLED OLD BOOKINGS ON LEON PARKS AND MELVIN CAMERON. IN THE PAST MELVIN CAMERON HAS LISTED ADDRESSES OF 327 AND 340 NORTH ANITA STREET, AS WELL AS 320 NORTH ANITA STREET AND 1331 JUNEWOOD STREET. I ALSO FOUND A 1986 ADDRESS OF 555 SUNKIST STREET. I WENT TO THE AREA OF ANITA STREET. 320 ANITA STREET IS AN ABANDONED HOUSE. I COULD NOT LOCATE 327 OR 340 NORTH ANITA STREET. WHEN I PULLED LEON PARKS' ARREST RECORD I FOUND THAT HE LISTED THE ADDRESSES OF 1314 WEST ELM STREET IN OXNARD, 161 SOUTH "C" STREET, OXNARD, AND 633 MARTINIQUE STREET IN NEWBURY PARK. I WENT TO 161 SOUTH "C" STREET AND THE RESIDENTS STATED THEY DID NOT KNOW WHO LEON PARKS WAS. I WENT TO 1314 WEST ELM STREET AND THERE WAS NO ONE HOME. I LEFT MY BUSINESS CARD AT THAT ADDRESS.

I THEN WENT TO THE LEMON TREE HOTEL AND CONTACTED BERTHA OCHOA. I ASKED IF I COULD SPEAK TO MELVIN CAMERON OR TO LEON PARKS AND WHAT THEIR ROOM NUMBER WAS. SHE STATED NEITHER OF THOSE SUBJECTS RENTED A ROOM AT THE LEMON TREE HOTEL. SHE STATED THAT SHE HAS HEARD THE NAME LEON PARKS BEFORE AND SHE WILL ASK AROUND. SHE STATED SHE WILL TELL PARKS OR CAMERON, IF SHE LOCATES THEM, THAT I WANT TO TALK TO THEM REFERENCE THEIR POSSIBLY BEING WITNESSES.

ALL LINEUPS, PHOTO LINEUPS, TAPES, INTERVIEWS WITH WITNESSES, PHYSICAL EVIDENCE, AND OTHER EVIDENCE OBTAINED BY ME ARE LISTED IN THE REPORTS SUBMITTED.

PHOTOGRAPHS  NO            TAPES  NO          PHYSICAL EVIDENCE  NO

---

Date/Time:  07/18/90, 1110 HOURS
Rpt. Off.:  E. NEITZEL              I.D. No.: 0908  D-22
Rpt. Off.:  *                       I.D. No.: *
Date Typed: 07/19/90               Typist Initials: AR

DR: 90-16450

## FOLLOW-UP REPORT

CC:

Crime: 207, 261.2, 243.4, 189 P.C.

Beat/Grid:

Victim's Name: SOZA, MARIA

Suspect's Name: HILL, RENARD

---

### DETAILS:

ON 07/18/90 AT APPROXIMATELY 0820 HOURS I CONTACTED LILY SOZA, WHO IS A HISPANIC FEMALE 67 YEARS OF AGE. SHE LIVES AT 145 GAVIOTA PLACE, OXNARD, 93033; 488-3230. MRS. SOZA STATED THAT SHE DID SEE HER DAUGHTER, MARIA, ON THIS WEEKEND. SHE FELT THAT AT FIRST, SHE PROBABLY SAW HER ON FRIDAY AFTERNOON ABOUT FOUR O'CLOCK, HOWEVER, SHE LATER SAID THAT SHE WAS NOT SURE AND THAT IT MIGHT HAVE BEEN ON SATURDAY AND IT MIGHT HAVE BEEN IN THE MORNING. SHE STATES THE ONLY THING THAT SHE IS SURE OF IS THAT IT WAS NOT ON SUNDAY BECAUSE SHE WAS NOT HOME.

SHE STATES THAT MARIA LIVES IN CAMBRIA AND SHE SEES HER VERY INFREQUENTLY. SHE STATES THAT MARIA HAS TWO CHILDREN AND AS FAR AS SHE KNOWS, IS NOT INVOLVED IN ANY DRUGS OR PROSTITUTION OR ANYTHING OF THAT NATURE. SHE COMMENTED THAT MARIA IS "A PRETTY GOOD KID." DURING MY TIME OF TALKING TO LILY SOZA, IT APPEARED THAT SHE WOULD FORGET THE QUESTIONS VERY QUICKLY AFTER I WOULD ASK THEM, SHE WOULD SOMETIMES PAUSE FOR A LONG, LONG TIME BEFORE ANSWERING THE QUESTION.

ON 07/18/90 AT APPROXIMATELY 0845 HOURS I TALKED TO MARIA SOZA BY PHONE. I TOLD HER THAT I HAD TALKED TO HER MOTHER AND SHE STATED THAT HER MOTHER IS GETTING OLDER AND AS OF LATELY, HAS BEEN GETTING VERY, VERY FORGETFUL. SHE STATED THAT SHE HITCHHIKED FROM CAMBRIA TO OXNARD TO VISIT HER MOTHER AND SOME FRIENDS. SHE STATED SHE HITCHHIKED BECAUSE SHE DID NOT HAVE MONEY FOR A BUS AND HITCHHIKING IS NOT UNUSUAL FOR HER. SHE STATED THAT ON FRIDAY NIGHT, SHE STAYED WITH A FRIEND IN A MOTEL, WHICH IS AT THE CORNER OF VENTURA ROAD AND PLEASANT VALLEY ROAD IN PORT HUENEME.

SHE STATED THE FRIEND WHOM SHE STAYED WITH'S NAME IS DAN DUGGAN AND HIS TELEPHONE NUMBER IS 653-9014. SHE STATED THAT LATER, SHE FOUND OUT ON SATURDAY, EVIDENTLY AFTER SHE LEFT, HE HAD ATTEMPTED TO COMMIT SUICIDE AND IS NOW IN VISTA DEL MAR HOSPITAL. SHE STATED THAT SHE LEFT HIM ABOUT 7:30 IN THE MORNING AND THEN WENT TO HER MOTHER'S HOUSE. SHE STILL FEELS IT WAS ABOUT 9:00 A.M. WHEN SHE LEFT HER MOTHER'S HOUSE TO GO SHOPPING. SHE STATED HER BROTHER WAS NOT HOME AND THAT WOULD HAVE BEEN THE ONLY OTHER PERSON WHO MIGHT HAVE BEEN ABLE TO VERIFY THAT SHE WAS THERE. AGAIN, SHE STATED THAT IT IS VERY NORMAL FOR HER TO HITCHHIKE AND SHE HITCHHIKED A RIDE DOWN TO THE AREA OF DOWNTOWN OXNARD, AS SHE WAS GOING TOWARD THE ESPLANADE WHEN THE SUBJECT ATTACKED HER.

PAGE 2                          FOLLOW-UP REPORT                    DR: 90-16450

SHE AGAIN STATED SHE DOES NOT KNOW THE SUSPECT, SHE DID NOT GET MONEY FROM HIM TO BUY
DRUGS AND SHE HAS, AGAIN, NO IDEA WHY THE SUBJECT WOULD SAY THAT HE KNOWS HER.  SHE
STATES THAT SHE HAS NEVER BEEN INVOLVED WITH DRUGS NOR IN PROSTITUTION.  SHE STATED THE
ONLY ARREST THAT THE POLICE MIGHT NOT BE AWARE OF WOULD BE A DRIVING UNDER THE
INFLUENCE FOR ALCOHOL IN CAMBRIA, WHICH IS ONE OF THE REASONS THAT SHE HITCHHIKES NOW
RATHER THAN DRIVES.


OFFICER'S ACTIONS:

THE ABOVE INFORMATION WAS TAKEN FOR A REPORT, THE INVESTIGATION IS TO CONTINUE.

ALL LINEUPS, PHOTO LINEUPS, TAPES, INTERVIEWS WITH WITNESSES, PHYSICAL EVIDENCE, AND
OTHER EVIDENCE OBTAINED BY ME ARE LISTED IN THE REPORTS SUBMITTED.

PHOTOGRAPHS __NO__              TAPES __NO__          PHYSICAL EVIDENCE __NO__

---

Date/Time:   07/18/90, 0900 HOURS
Rpt. Off.:  E. NEITZEL              I.D. No.: 0908, D-22
Rpt. Off.:                         I.D. No.:
Date Typed: 07/19/90               Typist Initials: RS

00630

DR: 90-16450

## FOLLOW-UP REPORT

CC: *

Crime: 207, 261.2, 220, 243.4 P.C.

Beat/Grid: *

Victim's Name: SOZA, MARIA

Suspect's Name: HILL, RAYNARD

---

### DETAILS:

ON 07/26/90 I HAD A TELEPHONE CONVERSATION WITH WITNESS DONEL LINCOLN. MR. LINCOLN WAS DESCRIBED IN THE INITIAL REPORT AS BEING A WITNESS WHO CAME TO VICTIM SOZA'S AID UPON BEING ASSAULTED BY RAYNARD HILL.

I READ TO MR. LINCOLN THE STATEMENTS THAT WERE WRITTEN IN THE OFFICIAL OXNARD POLICE DEPARTMENT CRIME REPORT, DR90-16450, WHICH OFFICER JANA YOUNG HAD PREPARED ON HIS BEHALF. MR. LINCOLN STATED THAT HE AGREED WITH THE STATEMENTS THAT OFFICER YOUNG HAD PUT IN THE REPORT EXCEPT FOR THE FOLLOWING:

MR. LINCOLN SAID THAT HE IS NOT POSITIVE WHEN THE SUSPECT HAD THE VICTIM DOWN ON THE GROUND WHETHER HE HAD ONE OF HIS LEGS IN BETWEEN THE VICTIM'S LEGS AND THE OTHER LEG TO THE RIGHT SIDE. MR. LINCOLN STATED HE IS FAIRLY SURE THAT ONE OF THE SUSPECT'S LEGS WAS BETWEEN THE VICTIM'S LEGS, BUT IS NOT ABSOLUTELY POSITIVE OF THAT. THE SUSPECT'S OTHER LEG WAS TO THE VICTIM'S RIGHT SIDE AND TO MR. LINCOLN'S LEFT SIDE WHILE HE WAS LOOKING AT THEM.

MR. LINCOLN ALSO ADVISED ME THAT THERE WERE A COUPLE OF OTHER PEOPLE NEAR THE STREET AND NEAR THE AREA WHO WERE WATCHING THE INCIDENT WHEN HE CAME OUT OF PAUL'S AUTOMOTIVE AND SAW WHAT WAS GOING ON. MR. LINCOLN DOES NOT KNOW WHO THESE PEOPLE WERE OR WHETHER THEY HAD BEEN PATRONS OF PAUL'S AUTOMOTIVE AND MR. LINCOLN DOES NOT KNOW THEM. MR. LINCOLN IS UNABLE TO GIVE A DESCRIPTION OF THESE PEOPLE AND STATES HE WAS JUST AWARE THAT OTHER PEOPLE WERE LOOKING ON AND NOT HELPING THE VICTIM.

MR. LINCOLN STATED THAT WHEN HE FIRST HEARD YELLING AND SCREAMING HE WAS INSIDE OF PAUL'S AUTOMOTIVE. MR. LINCOLN STATED THAT WHILE HE HEARD THE YELLING AND SCREAMING HE HAD WAITED FOR A LITTLE BIT DUE TO THE FACT THAT HE BELIEVED THAT HE WAS IN A BAD PART OF TOWN AND IT WAS JUST SOMETHING NORMAL THAT WAS GOING ON.

WHEN THE YELLING AND SCREAMING DID NOT STOP, MR. LINCOLN STATED THAT HE WENT OUTSIDE TO SEE WHAT WAS GOING ON. IT WAS AT THIS TIME THAT HE OBSERVED THAT THE SUSPECT WAS ON TOP OF THE VICTIM NEAR THE BUSINESS AREA AND DOWN IN THE FIELD WHERE THE ASSAULT TOOK PLACE.

MR. LINCOLN STATED THAT IT WAS VERY OBVIOUS TO HIM THAT THE VICTIM WAS IN NEED OF ASSISTANCE AND THAT SHE WAS VERY FRIGHTENED. MR. LINCOLN ALSO STATED THAT THE SUSPECT WAS ON TOP OF THE VICTIM AND WAS HOLDING HER DOWN TO THE GROUND. MR. LINCOLN COULD PLAINLY SEE THAT THE VICTIM'S DRESS WAS PULLED UP PAST HER PANTIES. MR. LINCOLN STATED THAT THE VICTIM AT THIS TIME HAD HER PANTIES ON AND THAT THE PANTIES WERE IN PLAIN VIEW OF EVERYONE WATCHING. MR. LINCOLN STATED THAT THE DRESS WAS PULLED FAR UP TO THE POINT WHERE THE VICTIM'S PANTIES WERE IN FULL VIEW, AND EVEN PART OF THE VICTIM'S STOMACH WAS VISIBLE. MR. LINCOLN ALSO STATED THAT THE TOP OF THE VICTIM'S DRESS APPEARED TO HAVE BEEN RIPPED OPEN A LITTLE BIT AND BUTTONS HAD BEEN POPPED OFF OF THE TOP OF THE DRESS.

MR. LINCOLN STATED THAT WHEN HE APPROACHED THE VICTIM AND SUSPECT IN THE FIELD THE SUSPECT WAS CONTINUALLY TALKING TO HIM, TRYING TO CONVINCE HIM THAT THE FEMALE WAS HIS GIRL AND THAT EVERYTHING WAS ALL RIGHT. MR. LINCOLN STATED THAT ALTHOUGH THE SUSPECT WAS TELLING HIM THAT THE GIRL WAS HIS GIRLFRIEND HE STILL FELT THAT IT WAS WRONG FOR A MAN TO ASSAULT A WOMAN IN THAT MANNER, REGARDLESS IF IT WAS A STRANGER OR A GIRLFRIEND.

IT WAS MR. LINCOLN'S OPINION AT THAT TIME THAT THE GIRL WAS IN NEED OF ASSISTANCE AND THAT WAS WHY HE WAS WALKING UP TO THEM.

AS MR. LINCOLN WAS WALKING UP TO THE VICTIM AND SUSPECT THE GIRL HAD GOTTEN UP OFF OF THE GROUND AND WAS STANDING, BUT THE SUSPECT STILL HAD HOLD OF HER. MR. LINCOLN STATED THAT THE GIRL GRABBED HOLD OF HIM AND CONVINCED HIM THAT THE SUSPECT WAS ASSAULTING HIM AND THAT SHE WANTED PROTECTION FROM HIM. MR. LINCOLN STATED THAT THE GIRL WAS EXTREMELY FRIGHTENED AND WAS TREMBLING AT THIS TIME.

THE SUSPECT SUBSEQUENTLY RAN FROM THE AREA AND WENT ACROSS THE RAILROAD TRACKS AND ACROSS OXNARD BOULEVARD. MR. LINCOLN STATED THAT AT FIRST HE STAYED WITH THE VICTIM TO CALM HER DOWN A LITTLE BIT BEFORE HE PURSUED THE SUSPECT. MR. LINCOLN STATED THAT HE STAYED WITH THE VICTIM FOR APPROXIMATELY ONE TO TWO MINUTES PRIOR TO GOING ACROSS OXNARD BOULEVARD WHERE HE HAD SEEN THE SUSPECT HEADED TOWARD.

MR. LINCOLN STATED THAT HE WAS IN THE AREA OF THE CONVENIENCE STORE AND APPARENTLY THE VICTIM HAD BUILT UP ENOUGH COURAGE TO ALSO COME ACROSS THE STREET TO ASSIST AND IT WAS LESS THAN FIVE MINUTES AFTER THE ASSAULT THAT BOTH THE VICTIM AND WITNESS LINCOLN OBSERVED THE SUSPECT COMING OUT OF THE CONVENIENCE STORE AND ENTER A VEHICLE.

MR. LINCOLN STATED THAT HE WROTE THE LICENSE PLATE NUMBER OF THE SUSPECT'S VEHICLE DOWN ON A BILL OF SALE ON A USED CAR THAT HE HAD JUST PURCHASED AT PAUL'S AUTOMOTIVE. MR. LINCOLN STATES THAT HE STILL HAS THIS BILL OF SALE AT HIS RESIDENCE AND WILL KEEP IT FOR COURT IF NECESSARY.

MR. LINCOLN STATED THAT THE OFFICER WHO TOOK THE REPORT FROM HIM INITIALLY HAD TAKEN THIS BILL OF SALE AND APPARENTLY MADE A PHOTO COPY OF IT AND GAVE HIM BACK THE ORIGINAL BILL OF SALE. I LATER CONFIRMED THIS WITH OFFICER JANA YOUNG WHO STATES THAT SHE DID INDEED MAKE A PHOTOCOPY OF THE BILL OF SALE GIVEN TO HER BY WITNESS LINCOLN AND THAT BILL OF SALE IS CONFIRMED TO BE IN EVIDENCE UNDER THIS DR NUMBER (90-16450).

MR. LINCOLN HAD NOTHING FURTHER TO ADD TO THIS INTERVIEW.

PAGE 3                        FOLLOW-UP REPORT                    DR: 90-16450

ALL LINEUPS, PHOTO LINEUPS, TAPES, INTERVIEWS WITH WITNESSES, PHYSICAL EVIDENCE, AND
OTHER EVIDENCE OBTAINED BY ME ARE LISTED IN THE REPORTS SUBMITTED.

PHOTOGRAPHS _NO_           TAPES _NO_           PHYSICAL EVIDENCE _NO_

---

Date/Time:  07/26/90
Rpt. Off.:  M. PALMIERI          I.D. No.: 0956 D-24
Rpt. Off.:  *                    I.D. No.: *
Date Typed: 07/26/90             Typist Initials: RT



DR: 90-16450

## FOLLOW-UP REPORT

CC:

Crime: 261.2, 207, 220, 243.4 P.C.

Beat/Grid:

Victim's Name: SOZA, MARIA

Suspect's Name: HILL, RAYNARD

---

### ADDITIONAL PERSONS

Code: W      Name: HALL, PRECIL                               AKA:
Race: B      Sex:  F     Age: 31      Height:                 Weight:
Build:       Hair:       Eyes:        DOB: 07/26/59
DL# St.:
Res. Add.: 519 META STREET, OXNARD (LEMON TREE MOTEL)
Zip:                     Phone: NONE
Bus. Add.:
Zip:                     Phone:
Occupation:
County Resident:         Undocumented Person:
Interpreter Required:
Indication of Drugs/Alcohol:
Relationship to Victim/Suspect:
Additional Names: NO

---

### DETAILS:

ON  07/23/90,  I  WAS  MADE  AWARE  OF  THE  ARREST  OF RAYNARD HILL FROM LAST WEEK.  I
ATTEMPTED TO CONTACT THE FEMALE SUBJECT, IN WHICH RAYNARD HILL HAD BEEN ARRESTED IN HER
ROOM  AT  THE  CITY  CENTER  MOTEL.   WHEN RAYNARD HILL WAS ARRESTED ON 07/16/90, HE WAS
TAKEN OUT OF ROOM #35 AT THE CITY CENTER MOTEL AND THERE WAS  A  BLACK  FEMALE  SUBJECT
INSIDE  THE  ROOM  AT  THE TIME.  THIS FEMALE SUBJECT WAS NOT IDENTIFIED IN THE ORIGINAL
REPORTS.  I ATTEMPTED TO CONTACTED HER AND OBTAIN A STATEMENT FROM HER.

I  HAD  PREVIOUSLY ASKED OFFICERS ROGER WHITNEY AND RANDEY COLE, WHO WERE THE ARRESTING
OFFICERS AT THE SCENE OF RAYNARD HILL, TO ATTEMPT TO CONTACT THE BLACK  FEMALE  SUBJECT
THAT  WAS  IN  THE  ROOM  AT  THE TIME OF RAYNARD HILL'S ARREST.  OFFICER ROGER WHITNEY
STATED THAT HE COULD NOT RECALL THE FEMALE'S NAME, BUT HE WOULD BE  ABLE  TO  RECOGNIZE
HER  IF  SEEN AGAIN IN THE AREA.  OFFICER WHITNEY ALSO STATED THAT HE SEES THIS SUBJECT
OFTEN IN THE AREA OF THE CITY CENTER MOTEL OR THE LEMON TREE MOTEL, AND IF HE  HAS  THE
OPPORTUNITY TO CONTACT HER, HE WOULD LET ME KNOW.

ON 07/26/90 AT APPROXIMATELY 0930 HOURS, I WAS REQUESTED BY OFFICER ROGER WHITNEY TO GO
TO THE LEMON TREE MOTEL. HE HAD THE BLACK FEMALE SUBJECT, IN WHICH RAYNARD HILL HAD
BEEN ARRESTED IN HER ROOM.

I CONTACTED THIS SUBJECT AND SHE IDENTIFIED HERSELF AS PRECIL HALL (DOB: 07/26/59).
SUBJECT HALL STATED THAT SHE CURRENTLY RESIDES AT THE LEMON TREE MOTEL LOCATED AT 519
META STREET. SHE IS CURRENTLY LOOKING FOR ANOTHER PLACE TO LIVE AND A JOB, DUE TO THE
FACT THAT THE LEMON TREE MOTEL HAS BEEN CURRENTLY TAKEN OVER BY THE CITY OF OXNARD AND
THE OWNER OF THE MOTEL HAS BEEN EVICTED.

SUBJECT HALL STATED THAT ON THE DATE RAYNARD HILL HAD BEEN ARRESTED, SHE WAS THE ONLY
OTHER PERSON INSIDE THE MOTEL ROOM AT THE TIME. SUBJECT HALL STATED THAT SHE HAD
STAYED AT THAT MOTEL ROOM VISITING A FRIEND BY THE NAME OF "BERNADETTE" (UNKNOWN LAST
NAME) OVERNIGHT. HALL STATED THAT SHE KNOWS RAYNARD HILL ONLY AS RAYNARD AND KNOWS HIM
ONLY THROUGH OTHER PEOPLE, AND SHE HAS BEEN WITH HIM DURING SOME PARTIES.

SUBJECT HALL STATED THAT SHE WAS SLEEPING INSIDE THE MOTEL ROOM WHEN RAYNARD HILL HAD
ENTERED. SHE DID NOT KNOW AT THE TIME HOW RAYNARD HAD ENTERED THE ROOM. HALL STATED
THAT SHE WAS AWAKENED BY SOMEONE KNOCKING AT THE DOOR, AT WHICH TIME SHE ANSWERED THE
DOOR AND DISCOVERED IT WAS THE POLICE. HALL STATED THAT SHE DID NOT KNOW RAYNARD WAS
IN THE ROOM AT THAT TIME AND BELIEVED THAT THE OTHER SUBJECT IN THE OTHER BED WAS
BERNADETTE. HALL STATED THAT SHE DID NOT KNOW THAT BERNADETTE HAD LEFT THE MOTEL ROOM
PRIOR TO RAYNARD HILL'S ENTRY INTO THE ROOM. SUBJECT HALL STATED THAT WHEN SHE
RESPONDED TO THE DOOR AND THE POLICE REQUESTED TO GO INSIDE, SHE WENT OVER TO THE BED
AND ALLOWED THE POLICE TO GO IN. SHE STATED THAT SHE BELIEVED IT WAS BERNADETTE IN BED
AND WHEN SHE OBSERVED THAT IT WAS RAYNARD HILL, SHE WAS SHOCKED TO FIND OUT THAT HE WAS
IN THE BED AND NOT BERNADETTE.

HALL STATED THAT SHE SUBSEQUENTLY HAD CONTACT WITH BERNADETTE AND TOLD HER OF WHAT
HAPPENED. HALL STATED THAT BERNADETTE WAS UNAWARE THAT RAYNARD HILL HAD ALSO ENTERED
THE ROOM, AND FOUND OUT THAT WHEN BERNADETTE LEFT THE ROOM, SHE LEFT THE ROOM WITH THE
DOOR OPENED. SUBJECT HALL STATES THAT SHE BELIEVES RAYNARD HILL HAD JUST COME IN THE
OPENED DOOR, JUMPED IN THE UNOCCUPIED BED AND CLOSED THE DOOR BEHIND HIM. SUBJECT HALL
STATES THAT SHE DOES NOT KNOW RAYNARD HILL THAT WELL AND HE DID NOT SAY ANYTHING OF
WHAT WAS GOING ON PRIOR TO HIM BEING TAKEN BY THE POLICE.

I ALSO ASKED SUBJECT HALL IF KNOWS A SUBJECT BY THE NAME OF MELVIN CAMERON. SHE STATED
THAT SHE KNOWS A BLACK MALE SUBJECT BY THE NAME OF MELVIN, BUT SHE DOES NOT KNOW HIS
LAST NAME. AGAIN, SUBJECT HALL STATED THAT SHE HAS ONLY SEEN MELVIN ON OCCASION AT
PARTIES OR GET TOGETHERS AND DOES NOT KNOW ANYTHING ABOUT HIM.

I ASKED SUBJECT HALL IF SHE KNOWS A SUBJECT BY THE NAME OF LEON PARKS. AGAIN, SHE
STATED THAT SHE KNOWS A SUBJECT NAMED LEON, UNKNOWN LAST NAME, A BLACK MALE AND ALSO
KNOWS HIM CASUALLY FROM MEETING HIM WITH OTHER PEOPLE. SHE STATED THAT SHE HAS NO IDEA
OF ANY GIRLFRIENDS THAT MELVIN OR LEON MAY HAVE, AND DOES NOT KNOW ANYBODY BY THE NAME
OF MARIE OR MARY.

I ALSO ASK SUBJECT HALL OF WHAT SHE HAD BEEN DOING ON THE SATURDAY PRIOR TO RAYNARD
HILL'S ARREST, AND SHE STATED THAT SHE WAS IN THE AREA OF THE LEMON TREE MOTEL ALL DAY.
HALL STATES ON THAT DAY, SATURDAY (07/14/90), SHE HAD NOT SEEN MELVIN, LEON, OR RAYNARD
ALL DAY.

PAGE 3                          FOLLOW-UP REPORT                          DR: 90-16450


AGAIN, SUBJECT HALL DOES NOT KNOW ANY OF THESE SUBJECTS BY LAST NAME, AND  STATES  THAT
SHE IS ONLY TEMPORARILY IN TOWN AND IS CURRENTLY LOOKING FOR A PLACE TO STAY DUE TO THE
FACT THAT THE LEMON TREE MOTEL HAS BEEN CONFISCATED BY THE CITY IN THE  PROCESS  OF   AN
ABATEMENT.

ALL LINEUPS, PHOTO LINEUPS, TAPES, INTERVIEWS WITH WITNESSES,  PHYSICAL  EVIDENCE,   AND
OTHER EVIDENCE OBTAINED BY ME ARE LISTED IN THE REPORTS SUBMITTED.

PHOTOGRAPHS  NO          TAPES  NO          PHYSICAL EVIDENCE  NO


---

Date/Time:  07/26/90, 1430 HOURS
Rpt. Off.:  M. PALMIERI          I.D. No.: 0956/D-24
Rpt. Off.:                       I.D. No.:
Date Typed: 07/26/90             Typist Initials: BL

00636

# Investigation Report

DATE REC'D _7/16/90_ DR# _90-16450_ VICTIM _SOZA, MARTA._

7/16/90 Suspect has been arrested.
D.A. Review. Reports Follow; ups

Cleared by Arrest

00637

VENTURA COUNTY
SHERIFF'S CRIME LABORATORY
TOXICOLOGY SECTION

DATE RECEIVED: 8-30-90

Subject: Hill, Raynard                    Laboratory File No: 90-3544
H & S 11550: X                            Agency OXRD
Other: _____                            Report to Perrin
Agency File No. 90-16606
               90-16450

DRUG ANALYSIS REPORT

SAMPLE ANALYZED: Urine
PRESUMPTIVE TEST PERFORMED: 7-19-90  DAMON REF. LAB_____  CRIME LAB X

TYPE:       RIA _____   EMIT  X _____

RESULT:     COCAINE/BENZOYLECGONINE POS          AMPHETAMINES _____
            OPIATES _____                      BARBITUATES _____
            PCP _____                          OTHER _____

REMARKS:


CONFIRMATION ANALYSIS PERFORMED: 9-10-90  DAMON REF LAB_____  CRIME LAB X

TYPE:       GC  X _____  TLC _____        GCMS _____  OTHER _____

RESULT:     COCAINE/BENZOYLECGONINE POS *        METHAMPHETIME _____
            MORPHINE _____                     AMPHETAMINE _____
            PHENCYCLIDINE _____                OTHER _____

REMARKS     * also detected ecgonine methyl ester

ANALYST: K. Denise Richardson        DATE: 9-10-80
                                           JW  9-10-90
         _____ DATE: 9-10-90

CITY OF OXNARD POLICE SEP 12 1 49 PM '90

00638

00639

RECORDS OFFICE

'95 JUL 20 A10:34

CSP-KCA
RECEIVED

BLANK PAGE

STATE OF CALIFORNIA
**NOTIFICATION IN CASE OF INMATE DEATH, SERIOUS INJURY,
OR SERIOUS ILLNESS**
CDC 127 (Rev 06/01)

| CDC NUMBER | COMMITMENT NAME | | INSTITUTION |
|---|---|---|---|
| H-43428 | HILL, RAYNARD | | CTF-III |

The inmate shall provide accurate information to identify the next of kin and any person(s) to be notified in the event of his/her death, serious illness, or serious injury as determined by a physician. In compliance with Penal Code Section 5022, the inmate shall provide the name(s), last known address(es), and telephone number(s) of the next of kin and person(s) to be notified. The inmate shall also notify his or her assigned Correctional Counselor of changes as soon as possible. Staff shall use reasonable effort to contact the person(s) identified by the inmate based on the information provided by the inmate. Therefore, it is important that the inmate ensure the information provided is current and accurate.  DEBRA

| NAME OF KIN | STREET ADDRESS | | TELEPHONE NUMBER (HOME) |
|---|---|---|---|
| KAREN E. SCOTT | 7735 N. Debra Ave | | (559) 275-9444 |
| RELATIONSHIP | CITY | STATE  ZIP CODE | TELEPHONE NUMBER (WORK) |
| SISTER | FRESNO | CA 93722 | (559) 275 9443 |
| NAME OF KIN | STREET ADDRESS | | TELEPHONE NUMBER (HOME)  ✱ 559 268 6362 |
| RELATIONSHIP | CITY | STATE  ZIP CODE | TELEPHONE NUMBER (WORK) |

| NAME OF PERSON TO NOTIFY  SAME | STREET ADDRESS | | TELEPHONE NUMBER (HOME) |
|---|---|---|---|
| RELATIONSHIP | CITY | STATE  ZIP CODE | TELEPHONE NUMBER (WORK) |

If the inmate has a will, the inmate shall identify the person to be contacted who possesses or has access to it. This form is not to be used as a will.

| NAME OF CONTACT FOR WILL | STREET ADDRESS | | TELEPHONE NUMBER (HOME) |
|---|---|---|---|
| ENTER NONE IF THERE IS NO WILL | CITY | STATE  ZIP CODE | TELEPHONE NUMBER (WORK) |

Is inmate a foreign national?   ☐ Yes   ☒ No

This information shall be updated annually as part of the classification review process, as part of the classification committee review when the inmate is being referred to the Classification Staff Representative for program placement or transfer consideration, or whenever the inmate desires to revise the information.

| DATE | INMATE'S SIGNATURE | COUNSELING STAFF WITNESS'S PRINTED NAME/ TITLE/ SIGNATURE | INSTITUTION |
|---|---|---|---|
| 12/29/04 | Raynard Hill | M. MORTON / CCI  M. Mort | CTF-III |
| 12-22-05 | Raynard Hill | J CALLAHAN  CCI | CTF H |
| 8-8-06 | Raynard Hill | J CALLAHAN  CCI | CTF-III |
| 2/14/07 | Raynard Hill | B Keres  B/eck  B Keres | CCI-II |
| 2/19/08 | Raynard Hill | B Keres  CCI | CCI-II |
| DATE | INMATE'S SIGNATURE | COUNSELING STAFF WITNESS'S PRINTED NAME/ TITLE/ SIGNATURE | INSTITUTION |
| DATE | INMATE'S SIGNATURE | COUNSELING STAFF WITNESS'S PRINTED NAME/ TITLE/ SIGNATURE | INSTITUTION |
| DATE | INMATE'S SIGNATURE | COUNSELING STAFF WITNESS'S PRINTED NAME/ TITLE/ SIGNATURE | INSTITUTION |
| DATE | INMATE'S SIGNATURE | COUNSELING STAFF WITNESS'S PRINTED NAME/ TITLE/ SIGNATURE | INSTITUTION |
| DATE | INMATE'S SIGNATURE | COUNSELING STAFF WITNESS'S PRINTED NAME/ TITLE/ SIGNATURE | INSTITUTION |

Additional instructions are listed on the back of this form.

DISTRIBUTION
ORIG - C-FILE
COPY - INMATE

**THIS FORM IS NOT A WILL**

00641

2

# CALIFORNIA CORRECTIONAL INSTITUTION

## INMATE APPEAL RESPONSE

| | |
|---|---|
| **Appeal Log #:** | CCI-0-08-00096 |
| | Second Level Response |
| **Inmate Name:** | **HILL, RAYMOND – H43428** |
| **APPEAL DECISION:** | **PARTIALLY GRANTED** |
| **INTERVIEWED BY:** | DR. BZOSKIE, MD – CMO (A) |
| **APPEAL ISSUE:** | MEDICAL |

**ACTION REQUESTED:**     Inmate states that he has been approved for arthroscopy of his right rotator cuff in his right shoulder.  Inmate requests to be placed back on Tylenol with Codeine or any other medication that can alleviate his pain while he is waiting for his surgery to be completed.  You were interviewed by K. Davey, Supervising Registered Nurse II on January 15, 2008 for this appeal's first level of review.  Your unit health record revealed that on January 08, 2008 you were seen by an orthopedic specialist and you were awaiting a Magnetic Resonance Imaging (MRI) scan to your right rotator cuff.  Follow-up appointments with specialty care providers were pending.  On January 07, 2008, you were seen for a follow-up appointment by Dr. Ross where your MRA was completed and you were scheduled for a 30 day follow-up appointment.

**Appeal Response:**     All submitted documentation and supporting arguments have been carefully reviewed and evaluated according to departmental policies and procedures.

At this level of review, a comprehensive review of the appellant's medical file and this appeal was conducted.  Based upon the review, this appeal at the Second Level of Review is **PARTIALLY GRANTED.**  Your unit health record was thoroughly reviewed by T. Bzoskie, MD, Chief Medical Officer (A) on February 13, 2008 and it revealed that you were examined by an orthopedic surgeon on October 29, 2007 and then again on January 08, 2008.  On the latter appointment, an additional diagnostic study was requested.  This study, an MRA of your shoulder was completed and you were again seen by the orthopedic specialist on February 08, 2008.  On February 11, 2008, you were seen by a medical provider for a follow-up where it was noted that you were prescribed pain medications.  You were also provided with pain medication on 07/13/07, 08/27/07, 09/24/07, 10/24/07, 11/25/07, 11/30/07, 12/11/07, 01/22/08 and 02/11/08.  Furthermore, a referral for surgical recommendation made by the orthopedic specialist has been submitted and a follow-up visit with a physician is planned.  Your referral for this surgery will be followed per medical protocol.  You are being seen regularly by an orthopedic specialist and a primary care provider.  You have been treated and will continue to be

CA

FEB 2 6 2008

**C-FILE**

CCI-08-00096
HILL, RAYMOND – H43428
Second Level Response, Page 2,

treated with pain medications.  You have a referral for surgical treatment and a follow-up is scheduled.

**Appeal Decision:**    Based upon all available information and the requested action, this appeal is **PARTIALLY GRANTED** at the Second Level of Review. If dissatisfied, you may attach supporting documents and submit a Third Level Appeal to the Appeals office within 15 days of receipt of response.

Dr. Bzoskie, CMO (A)
Chief Medical Officer (Acting)

2/25/08
Date

00643

# CALIFORNIA CORRECTIONAL INSTITUTION

## INMATE APPEAL RESPONSE

**Appeal Log #:**        CCI-0-08-00096
                        First Level Response

**Inmate Name:**        **HILL, RAYMOND – H43428**

**APPEAL DECISION:**    **PARTIALLY GRANTED**

**INTERVIEWED BY:**     K. DAVEY, SRN II – SUPV.

**APPEAL ISSUE:**       MEDICAL

**ACTION REQUESTED:**    Inmate states he has been approved for arthroscopy of his right rotator cuff in his right shoulder. Inmate also requested to be placed back on Tylenol with Codeine or any other medication that can alleviate his pain while waiting for the procedure to be done.

**Appeal Response:**    All submitted documentation and supporting arguments have been carefully reviewed and evaluated according to departmental policies and procedures.

At this level of review, a comprehensive review of the appellant's medical file and this appeal was conducted. Based upon the review, this appeal at the First Level of Review is **PARTIALLY GRANTED.** You were interviewed by K. Davey SRN II on January 15, 2008. Your Unit Health record has documentation that you were seen by Ortho Specialist on January 8, 2008 pending MRI to the right rotator cuff. Follow-up appointment with Specialty Care is pending. MRA to the right rotator cuff was done. Dr. Ross saw you on January 7, 2008 and you will be scheduled for a 30 day follow-up.

**Appeal Decision:**    Based upon all available information and the requested action, this appeal is at the first level of review is **PARTIALLY GRANTED.** If dissatisfied, you may attach supporting documents and submit a Second Level Appeal to the Appeals office within 15 days of receipt of response.

K. Davey SRN II
Supervising Registered Nurse                    Date 1/18/08

JAN 18 2008

**INMATE/PAROLEE
APPEAL FORM**
CDC 602 (12/87)

Location:    Institution/Parole Region        Log No.                    Category

1. _____  _____        1. _____        _____

2. _____                     2. _____

You may appeal any policy, action or decision which has a significant adverse affect upon you. With the exception of Serious CDC 115s, classification committee actions, and classification and staff representative decisions, you must first informally seek relief through discussion with the appropriate staff member, who will sign your form and state what action was taken. If you are not then satisfied, you may send your appeal with all the supporting documents and not more than one additional page of comments to the Appeals Coordinator within 15 days of the action taken. No reprisals will be taken for using the appeals procedure responsibly.

NAME *HILL, R.B.*  NUMBER *H43428*  ASSIGNMENT *PIA-TEXTILES*  UNIT/ROOM NUMBER *2/82Low*

A. Describe Problem: AFTER NUMEROUS DOCTORS ORDERS FOR PRESCRIBED TREATMENT OF ARTHROSCOPY TO RT. ROTATOR CUFF. TREATMENT HAS BEEN DENIED DR. HAROLD TATE REVIEWED MED FILE & NEW MRI WHICH STATES "TEAR IN RT ROTATOR CUFF" AND DR. TATE DISCONTINUES PAIN MEDICATION (T-3's) TYLENOL W/ CODIENE. WHICH MADE PAIN TOLERABLE UNTIL PROCEDURE COULD BE DONE. NOW PAIN HAS BECAME EXTREME ONCE AGAIN WITH THROBBING ACHES & PAIN, AS A CHRONIC CARE PATIENT. C.C.I. FAILS TO ADEQUATELY TREAT CHRONIC PAIN, BY REDUCING TO REGULAR TYLENOL 325 mg. WHICH IS NOT EFFECTIVE.

If you need more space, attach one additional sheet.

B. Action Requested: IF YOU'RE NOT GOING TO TREAT MY PAIN, I WANT PRESCRIBED DR.S ORDER ARTHROSCOPY ON RT ROTATOR CUFF, PLACED BACK ON (T3's) TYLENOL W/ CODIENE OR ANY OTHER MEDICATION THAT ELIMINATE PAIN UNTIL PROCEDURE CAN BE DONE. ERRORS CONTINUE TO BE MADE IN SCHEDULING & DOCUMENTATION.

Inmate/Parolee Signature: *Raymond B. Hill*        Date Submitted: *12-31-07*

C. INFORMAL LEVEL (Date Received: _____ )

Staff Response: _____

BYPASS

Staff Signature: _____        Date Returned to Inmate: _____

D. FORMAL LEVEL
If you are dissatisfied, explain below, attach supporting documents (Completed CDC 115, Investigator's Report, Classification chrono. CDC 128, etc.) and submit to the Institution/Parole Region Appeals Coordinator for processing within 15 days of receipt of response.

BYPASS

Signature: _____        Date Submitted: _____

Note: Property/Funds appeals must be accompanied by a completed
Board of Control form BC-1E, Inmate Claim        CDC Appeal Number:

00645

First Level    ☐ Granted    ☒ P. Granted    ☐ Denied    ☐ Other _____

E. REVIEWER'S ACTION (Complete within 15 working days): Date assigned: 01/11/08 ___ Due Date: 02/15/08

Interviewed by: _____

_____

_____

_____

_See Attached Memo_

_____

Staff Signature X _____ Title: SRN? ___ Date Completed: 1-15-08

Division Head Approved: _Marissa Pell_ ___ Title: CHSA ___ Returned

Signature: _____ Date to Inmate: 1-28-08

F. If dissatisfied, explain reasons for requesting a Second-Level Review, and submit to Institution or Parole Region Appeals Coordinator within 15 days of receipt of response.

_____

( SEE ADDITIONAL PG #1 )

Signature: _Raymond B Hill_ ___ Date Submitted: 1-27-08

Second Level    ☐ Granted    ☒ P. Granted    ☐ Denied    ☐ Other _____

G. REVIEWER'S ACTION (Complete within 10 working days): Date assigned: 01-31-08 ___ Due Date: 02-27-08

☒ See Attached Letter

Signature: X _____ Date Completed: 2/21/08

Warden/Superintendent Signature _Ben Traxtion (A)_ ___ Date Returned to Inmate: 02-21-08

H. If dissatisfied, add data or reasons for requesting a Director's Level Review, and submit by mail to the third level within 15 days of receipt of response.

_____

_____

_____

_____

_____

Signature: _____ Date Submitted: _____

For the Director's Review, submit all documents to: Director of Corrections
P.O. Box 942883
Sacramento, CA 94283-0001
Attn: Chief, Inmate Appeals

DIRECTOR'S ACTION:    ☐ Granted    ☐ P. Granted    ☐ Denied    ☐ Other _____
☐ See Attached Letter

Date: _____

CDC 602 (12/87)

ADDITIONAL PG # 1        08-0096

- SINCE APPROX OCT 06 I'VE BEEN DENIED, DELAY-
ED, & REFUSED TREATMENT (DR's ORDERED) for
my RT SHOULDER.
- I'VE HAD 3 MRI'S, THE LATEST 9/12/07, WHICH
ARRIVED TO CCI on 9-25-07, WHICH ALL SHOWS
OR ARE CONCLUDED TO BE PROBABLE TWO TEARS in
TENDONS.
- AFTER NUMEROUS ORDER'S for ARTHROSCOPY of RT ROTATOR
CUFF, THE PROCEDURE HAS BEEN PUT OFF OVER & OVER
AGAIN, WITH A REQUEST for THE SAME OR IRRELEVENT
TEST.
- ORTHOPEDIC ORDERED MRA HAS NOT BEEN
DONE
- DR ROSS SEEN me on 14-08, DID No TREATMENT, OR
ORDERED ANY. EXPLAINED ABOUT PAIN & BEING CUT
OFF of PAIN meds, HE STATES "HIS HANDS ARE TIED!"
- WHEN I SEEN K-DAVEY, SR.NII-SUPV, I TOLD HIM
I WAS CUT OFF PAIN meds T3's, AND NEED HELP!, AND
ASKED ARE YOU GOING TO DO ANYTHING for THE PAIN? OR
AM I GOING TO GET THE ARTHROSCOPY I NEED?
- DAVEY DISREGARDED my PLEAS of PAIN, AND STATED I
WAS GETTING TREATMENT. THIS INTERVIEW BY A NURSE WAS
USELESS AND A PAPERWORK formality

I'm STILL NOT GETTING No TREATMENT DONE!!

DATE 1-27-08                    Raymand Oxell

00647

CALI    RNIA CORRECTIONAL INSTITI    ON
SECOND LEVEL APPEAL RESPONSE

*2*

**DATE:**                         January 11, 2008

**NAME/NUMBER:**             HILL, H-43428

**APPEAL LOG NUMBER:**      CCI-0-07-02432

**INTERVIEWED BY:**          E. Paz, Correctional Sergeant, on December 17, 2007

**APPEAL DECISION:**         **Denied**

**APPEAL ISSUE:**            **PROPERTY**

Appellant requests his property be located and returned to him, or that he is reimbursed for the equal value of alleged missing items.

**APPEAL RESPONSE:**

All relevant documents and information submitted in writing have been carefully reviewed and considered. A thorough review has been conducted and evaluated in accordance with departmental policies and institutional procedures.

During the interview, the Appellant stated that he lost his items on August 21, 2007, during a search conducted by staff in Dorm 2, under the direction of R. Eaton, Correctional Sergeant. When the Appellant returned to the dorm after the search, he allegedly noticed that a clear plastic bag containing some personal items was missing from his locker. On December 20, 2007, Sgt. Paz conducted an additional interview in the Unit II Sergeant's office with the Appellant. He was given the opportunity to be reimbursed with similar items of equal value to the alleged missing property, however, Appellant declined to accept them, and made the statement, "No, we have nothing to talk about."

Based on the above, this appeal is **DENIED**. The Appellant failed to provide documentation or proof that the items in question were missing as a result of the search on August 21, 2007.

If dissatisfied, appellant may request a Director's Level review by following the instructions on the appeal form.


**M. BRYANT**
Associate Warden (A)
Units I and II

1/11/08
Date


**M. K. WITCHER**
Chief Deputy Warden (A)
Units I, II, III and Operations

Date