9

# EXHIBIT 19

STATE OF CALIFORNIA

**HEALTH CARE SERVICES**
**PHYSICIAN REQUEST FOR SERVICES**
(To be completed by requesting Physician and forwarded to Utilization Management Unit)

DEPARTMENT OF CORRECTIONS

NO LA 255 2

| PATIENT NAME Hill, Raymond | CDC NUMBER H93958 | | INSTITUTION CTF |
|---|---|---|---|
| DATE OF BIRTH 3-10-60 | EPRD DATE 2009 | GENDER Male | |

| PRINCIPLE DIAGNOSIS Rotator Cuff Tear | ICD - 9 CODE | CPT CODE(S) |
|---|---|---|
| REQUESTED SERVICE(S) (R) Shoulder Arthroscopy / Repair of Rotator Cuff | | # OF DAYS RECOMMENDED |

*Please circle all that apply:* Diagnostic Procedure/Consultation    Outpatient/Inpatient    Initial/Follow-up

Requested Treatment/Service is:   **EMERGENT    URGENT    (ROUTINE)**

*For the purpose of retrospective review,* if emergent or urgent, please justify: _____

Proposed Provider:  Dr Pompan _____ Anticipated Length of Stay: _____

Expected disposition (i.e., outpatient follow-up, return to institution, transfer): _____

Medical Necessity *(briefly describe the clinical situation; the history of the illness, treatments used, pertinent lab and imaging studies, or questions for the consultant):*

Requested by panel

Estimated time for service delivery, recovery, rehabilitation and follow-up: _____

Summary of preliminary or diagnostic work up, conservative treatment provided (if applicable, please provide TB code, CD4, viral load, albumin, total protein and dates within last 3 months): _____

Comments (diagrams, risk factors, prognosis, alternative management, etc.): _____

| REQUESTING PHYSICIAN PRINTED NAME C. Simmco M.D. | APPROVED / AUTHORIZED / DENIED / DEFERRED BY By the N Dayal | DATE 7-13-04 |
|---|---|---|
| REQUESTING PHYSICIAN SIGNATURE | DATE | Utilization management tracking #: |

| DATE OF CONSULTATION | PRINTED NAME OF CONSULTANT |
|---|---|

FINDINGS: _____

RECOMMENDATIONS: _____

FOLLOW-UP OR FURTHER EVALUATIONS REQUESTED: _____

| CONSULTANT SIGNATURE | DATE | CDC NUMBER, NAME (LAST, FIRST, MI) AND DATE OF BIRTH |
|---|---|---|
| ETA RN SIGNATURE | DATE | |
| PCP SIGNATURE | DATE | |

**Attach Progress Note page for additional information.**
**THIS FORM MUST BE RETURNED WITH THE PATIENT!!!**

DISTRIBUTION:
ORIGINAL - FILE IN UHR.
GREEN   - TO UHR PENDING ORIGINAL
CANARY  - CONSULTANT
PINK    - UM
GOLD    - SPECIALTY SCHEDULER

PHYSICIAN REQUEST FOR SERVICES (RFS)        CDC 7243 (Rev. 11/02)

EXHIBIT _20_

№ 504901

STATE OF CALIFORNIA
CDC 7362 (Rev. 03/04)

## HEALTH CARE SERVICES REQUEST FORM

DEPARTMENT OF CORRECTIONS

### PART I: TO BE COMPLETED BY THE PATIENT

*A fee of $5.00 may be charged to your trust account for each health care visit.*

**If you believe this is an urgent/emergent health care need, contact the correctional officer on duty.**

REQUEST FOR:   MEDICAL ☒   MENTAL HEALTH ☐   DENTAL ☐   MEDICATION REFILL ☒

NAME *HILL, R.B.*
CDC NUMBER *H43428*
HOUSING *LA-255 L*

PATIENT SIGNATURE *Raymond B Hill*
DATE *8-11-05*

REASON YOU ARE REQUESTING HEALTH CARE SERVICES. (Describe Your Health Problem And How Long You Have Had The Problem)
*I NEED ASTHMA & ALLERGY MEDS RENEWED*
*(2 INHALERS, ALLERGY PILLS & ARTIFICIAL TEARS,)*
*800 mg. IBUPROPHENS for PAIN in RT SHOULDER*

*NOTE: IF THE PATIENT IS UNABLE TO COMPLETE THE FORM, A HEALTH CARE STAFF MEMBER SHALL COMPLETE THE FORM ON BEHALF OF THE PATIENT AND DATE AND SIGN THE FORM*

### PART III: TO BE COMPLETED AFTER PATIENT'S APPOINTMENT

☐ Visit is not exempt from $5.00 copayment. (Send pink copy to Inmate Trust Office.)

### PART II: TO BE COMPLETED BY THE TRIAGE REGISTERED NURSE

Date / Time Received: | Received by:
Date / Time Reviewed by RN: | Reviewed by:

S: Pain Scale: 1 2 3 4 5 6 7 8 9 10

O: T: *99⁴* P: *78* R: *16* BP: *127/73* WEIGHT: *235½*   *8-26-05*   *1055*

A:
P:
☐ See Nursing Encounter Form

E:

APPOINTMENT SCHEDULED AS: | EMERGENCY (IMMEDIATELY) ☐ | URGENT (WITHIN 24 HOURS) ☐ | ROUTINE (WITHIN 14 CALENDAR DAYS) ☐

REFERRED TO PCP: | DATE OF APPOINTMENT:
COMPLETED BY | NAME OF INSTITUTION
PRINT / STAMP NAME | SIGNATURE / TITLE | DATE/TIME COMPLETED

CDC 7362 (Rev. 03/04)   Original - Unit Health Record   Yellow - Inmate (if copayment applicable)   Pink - Inmate Trust Office (if copayment applicable)   Gold - Inmate

B

00160

2c

# EXHIBIT 21

NOTE: SEND COPY OF PHYSICIAN'S ORDER FOR MEDICATION
TO PHARMACY AFTER EACH ORDER IS SIGNED.

| Order Date | Time | Problem # | Physician's Order and Medication (Orders must be dated, timed, and signed.) |
|---|---|---|---|
| 8/26/0 | | — | *[handwritten]* |
| | | | *[handwritten]* |
| | | — | *[handwritten]* |
| | | | *[handwritten]* |
| | | — | *[handwritten]* |

**ALLERGIES:** *[handwritten]*   **INSTITUTION** CTF-N   **ROOM/WING** LA 255↗

Confidential
client information
See W & I Code, Sections 4514 and
5328

**CDC NUMBER, NAME (LAST, FIRST, MI)**

Hill
H43428

## PHYSICIAN'S ORDERS

CDC 7221 (2/00)
STATE OF CALIFORNIA     OSP 00  35617     DEPARTMENT OF CORRECTIONS

00036

EXHIBIT 22

1    SUPPLEMENTAL RESPONSE TO INTERROGATORY NO. 11 (erroneously referred to as

2    Interrogatory no. 9):

3        Objection, this interrogatory is vague and ambiguous in that it states an incomplete

4    hypothetical, it is indefinite as to time, and not specifically directed to any defendant. Subject to

5    and without waiving these objections, and to the extent it can be answered by J. Chudy, M.D.,

6    diagnosis and evaluation of any medical issue is specific to each individual case. In general, the

7    Chief Medical Officer is responsible for all clinical operations, including the provision of follow

8    up evaluations. Follow up appointments ordered by the Physician are scheduled via our

9    schedulers. Ducats for such appointments are generated via the ducating system prior to the

10   scheduled appointment. Ducats are distributed to the inmate patients the evening prior to the

11   appointment. If an inmate does not show for their scheduled appointment at their appointment

12   time, our Health Care Access officers will initiate a process to locate the inmate patient and have

13   them brought to the clinic.

14   INTERROGATORY NO. 12 (erroneously referred to as Interrogatory no. 10):

15       CCI & CTF medical department contracts a M.R.I. trailer to come to the prison to

16   perform M.R.I.'s. How often do this trailer come to the prison?

17   RESPONSE TO INTERROGATORY NO. 12 (erroneously referred to as Interrogatory no. 10):

18       Objection, this interrogatory is vague and ambiguous in that it states an incomplete

19   hypothetical, it is indefinite as to time, and not specifically directed to any defendant. Subject to

20   and without waiving these objections, and to the extent it can be answered by J. Chudy, M.D.,

21   diagnosis and evaluation of any medical issue is specific to each individual case. On average, at

22   CTF, the MRI trailer comes twice weekly.

23       Dated: August 1, 2008.

EDMUND G. BROWN JR., Attorney General
24                                          of the State of California

25
                                            By: _____
26                                               JENNIFER C. ADDAMS
                                                 Deputy Attorney General
27                                               Attorneys for Defendants J. Chudy, M.D.;
                                                 D. Pompan, M.D., and I. Grewal, M.D.
28   SF2008401759
     40270232.wpd
                                            3

22

STATE OF CALIFORNIA — DEPARTMENT OF CORREC        AND REHABILITATION                  SCHWARZENEGGER, GOVENOR

**DIVISION OF ADULT OPERATIONS**
CORRECTIONAL TRAINING FACILITY
P. O. Box 686
Soledad, CA 93960



October 21, 2005


Inmate Appeals Branch
P.O. Box 942883
Sacramento, CA 94283-0001

RE: HILL, CDC #H43428 Institution Appeal Log #CTF-C-05-01422 Medical

N. Grannis, Chief:

Dr. Pompan, Orthopedic Specialist evaluated Inmate Hill June 21, 2005.    Dr. Pompan
recommended a MRI of his right shoulder. CTF Physician, Dr. Sinnaco ordered the MRI June 21,
2005.  A Mobile MRI Unit started coming to CTF-Soledad September 21, 2005.  Before that date
we were unable to schedule Inmate Hill due to the backlog at CSP Hospital and contract issues
with other outside specialists for this service.  I have verified with S. Morris, RN who is in charge of
scheduling all MRI's that Inmate Hill is on the list and it will be approximately 60-90 working days
for his MRI of the right shoulder to be completed.  The mobile unit completes approximately 10
MRI's each visit.   Inmate Hill will be re-evaluated by Dr. Pompan within 30-60 days of the
completed MRI.


K. Dennis, SSA
Medical Appeals Analyst

RECEIVED
INMATE APPEALS
BRANCH
OCT 28 2005

2 2

# EXHIBIT 23

No 806233

STATE OF CALIFORNIA
CDC 7362 (Rev. 03/04)

# HEALTH CARE SERVICES REQUEST FORM

DEPARTMENT OF CORRECTIONS

## PART I: TO BE COMPLETED BY THE PATIENT

*A fee of $5.00 may be charged to your trust account for each health care visit.*

**If you believe this is an urgent/emergent health care need, contact the correctional officer on duty.**

REQUEST FOR:    MEDICAL ☒    MENTAL HEALTH ☐    DENTAL ☐    MEDICATION REFILL ☐

| NAME | CDC NUMBER | HOUSING |
|------|-----------|---------|
| Hill R. B. | H43428 | LA-255 Low |

| PATIENT SIGNATURE | DATE |
|------|------|
| Raymond B. Hill | 11-13-05 |

REASON YOU ARE REQUESTING HEALTH CARE SERVICES. (Describe Your Health Problem And How Long You Have Had The Problem) *R1 SHOULDER In EXTREME PAIN, WHICH YOU ARE AWHERE OF, AND ANY PAIN MEDICATION GIVEN, IS NOT SUFFIENT WAS SCHEDULED FOR MRI ON JUNE 21, 2005, AND TO THIS DATE NO MRI OR ATTEMPT TO ELLIEVATE PAIN!!*

*NOTE: IF THE PATIENT IS UNABLE TO COMPLETE THE FORM, A HEALTH CARE STAFF MEMBER SHALL COMPLETE THE FORM ON BEHALF OF THE PATIENT AND DATE AND SIGN THE FORM*

## PART III: TO BE COMPLETED AFTER PATIENT'S APPOINTMENT

☐ Visit is not exempt from $5.00 copayment.  (Send pink copy to Inmate Trust Office.)

## PART II: TO BE COMPLETED BY THE TRIAGE REGISTERED NURSE

| Date / Time Received: | Received by: |
|------|------|
| Date / Time Reviewed by RN: | Reviewed by: |

S:    Pain Scale:    1    2    3    4    5    6    7    8    9    10

O:    T:    P:    R:    BP:    WEIGHT:

A:

P:

☐ See Nursing Encounter Form

E:

| APPOINTMENT SCHEDULED AS: | EMERGENCY (IMMEDIATELY) ☐ | URGENT (WITHIN 24 HOURS) ☐ | ROUTINE (WITHIN 14 CALENDAR DAYS) ☐ |
|------|------|------|------|
| REFERRED TO PCP: | | DATE OF APPOINTMENT: | |
| COMPLETED BY | | NAME OF INSTITUTION | |

| PRINT / STAMP NAME | SIGNATURE / TITLE | DATE/TIME COMPLETED |
|------|------|------|
| | | |

CDC 7362 (Rev. 03/04)    Original - Unit Health Record    Yellow - Inmate (if copayment applicable)    Pink - Inmate Trust Office (if copayment applicable)    Gold - Inmate

B

00159

23

EXHIBIT 24

# SALINAS VALLEY RADIOLOGISTS, INC.

A MEDICAL GROUP
559 Abbott Street • Salinas, California 93901
Telephone (831) 775-5200

JAMES A. KOWALSKI, M.D.
DONALD A. CATALANO, M.D.
GILES A. DUESDIEKER, M.D.
MICHAEL E. BASSE, M.D.
DAVID A. STAUNTON, M.D.

GARY E. FALKOFF, M.D.
RICHARD A. VILLALOBOS, M.D.
CHRIS GLENN, M.D.
B. MISA HOSOHAMA, M.D.
Y-LAN HO, M.D.

| PATIENT NAME | ACCOUNT NO | | RADIOLOGY NUMBER |
|---|---|---|---|
| RAYNARD-H43428 HILL | 9349986 | | 9349986 |

| AT THE REQUEST OF | DATE OF BIRTH | AGE/SEX | DATE OF SERVICE |
|---|---|---|---|
| CESAR SINNACO MD | 03/10/1960 | 45/ | 11/21/2005 |
| PO BOX 686 | | | |
| SOLEDAD, CA 93960 | | | |

The study was performed by an outside facility and the film submitted to Salinas Valley Radiologists for interpretation.

MRI RIGHT SHOULDER

HISTORY: Status post rotator cuff repair. I have no further specific history.

PROCEDURE: 1.5T imaging was performed in three standard planes with T1 and T2 techniques as well as gradient echo imaging.

FINDINGS: There is a good deal of small fragment metallic artifact presenting with low and high signal in and around the rotator cuff. I cannot define the cuff anatomy except for the infraspinatus tendon which shows increased signal consistent with tendinitis. The subscapularis is also intact and the bicipital also, as far as I can tell. There is some ill-defined marrow signal. The labrum is grossly normal. I cannot see any cysts or masses.

IMPRESSION: Gross distortion of the anatomy in and around the supraspinatus muscle and tendon as well as the acromioclavicular joint in view of the prior surgery. It is really not possible to discern the presence of a recurrent tear or other specific pathology in these areas. The other regions appear to be free of gross disease.

Thank you for referring your patient to us,

Arthur M. Nathanson, MD
AMN/pa
11/29/05

00229

24



NOTE: SEND COPY OF PHYSICIAN'S ORDER FOR MEDICATION
TO PHARMACY AFTER EACH ORDER IS SIGNED.

| Order Date | Time | Problem # | Physician's Order and Medication (Orders must be dated, timed, and signed.) |
|---|---|---|---|
| 1-9-06 | | | 1) Refer back to D. Program |
| | | | 2) Motrin, 600 mg p.o. TID p.c PRN x 90d. |
| 1/9/06 | 1340 | | C. Sinnaea |
| | | | |
| 4/30/06 5/2/06 | 1440 | | Medication Renewal Albuterol medihaler ii puffs QID PRN x 90 days Aerobid ii puffs BID (Not seen) me H. Aug |
| | | | noTed By Resinulean LVN 5/2/06 1440 |

ALLERGIES: N K A

INSTITUTION: CTF - N

ROOM/WING: LA. 255L

CDC NUMBER, NAME (LAST, FIRST, MI)
Hill
H 434 28

Confidential
client information
See W & I Code, Sections 4514 and
5328

**PHYSICIAN'S ORDERS**

CDC 7221 (2/00)
STATE OF CALIFORNIA         OSP 00 35617    DEPARTMENT OF CORRECTIONS

00031

EXHIBIT 26

STATE OF CALIFORNIA                                                                              DEPARTMENT OF CORRECTIONS

# HEALTH CARE SERVICES
## PHYSICIAN REQUEST FOR SERVICES
(To be completed by Requesting Physician and forwarded to Utilization Management Unit)

| PATIENT NAME HILL | CDC NUMBER H 23428 | INSTITUTION |
|---|---|---|

| DATE OF BIRTH 3-10-60 | EPRD DATE 2009 | GENDER |
|---|---|---|

| PRINCIPLE DIAGNOSIS S/P (R) Rotator Cuff Repair (2000) | ICD-9 CODE | CPT CODE(S) |
|---|---|---|
| REQUESTED SERVICE(S) Orthopedics | | # OF DAYS RECOMMENDED |

*Please circle all that apply:* Diagnostic Procedure/Consultation     Outpatient/Inpatient     Initial/Follow-up

Requested Treatment/Service is:     **EMERGENT     URGENT     (ROUTINE)**

*For the purpose of retrospective review, if emergent or urgent, please justify:* _____

Proposed Provider: CTF Ortho.                    Anticipated Length of Stay: _____

Expected disposition (i.e.: outpatient follow-up, return to institution, transfer): _____

Medical Necessity (*briefly describe the clinical situation; the history of the illness, treatments used, pertinent lab and imaging studies, or questions for the consultant*):
D01 - Mar 2000
D05 - Sept 2000
Another Injury - Nov 2001

Estimated time for service delivery, recovery, rehabilitation and follow-up: _____

Summary of preliminary or diagnostic work up, conservative treatment provided (if applicable, please provide TB code, CD4, viral load, albumin, total protein and dates within last 3 months): _____

Comments (diagrams, risk factors, prognosis, alternative management, etc.): _____

| REQUESTING PHYSICIAN PRINTED NAME C. SINNA~ | APPROVED / AUTHORIZED / DENIED / DEFERRED BY | DATE |
|---|---|---|
| REQUESTING PHYSICIAN SIGNATURE | DATE 1-9-06 | Utilization management tracking #: |

| DATE OF CONSULTATION 3/30/06 | PRINTED NAME OF CONSULTANT |
|---|---|

FINDINGS: _____

RECOMMENDATIONS: _____

FOLLOW-UP OR FURTHER EVALUATIONS REQUESTED: _____

| CONSULTANT SIGNATURE | DATE 3/30/6 | CDC NUMBER, NAME (LAST, FIRST, MI) AND DATE OF BIRTH |
|---|---|---|
| RN SIGNATURE S. Morris Rn | DATE 3/7/06 | Hill |
| PCP SIGNATURE | DATE | H 43428 |

**Attach Progress Note page for additional information.**
## THIS FORM MUST BE RETURNED WITH THE PATIENT!!!

DISTRIBUTION:
ORIGINAL  -  FILE IN UHR
GREEN     -  TO UHR PENDING ORIGINAL
CANARY    -  CONSULTANT
PINK      -  UM
GOLD      -  SPECIALTY SCHEDULER

PHYSICIAN REQUEST FOR SERVICES (RFS)          CDC 7243 (Rev. 11/02)

EXHIBIT 27

NOTE: SEND COPY OF PHYSICIAN'S ORDER FOR MEDICATION
TO PHARMACY AFTER EACH ORDER IS SIGNED.

| Order Date | Time | Problem # | Physician's Order and Medication<br>(Orders must be dated, timed, and signed.) |
|---|---|---|---|
| 5/3/06 | 1.40 PM | | ① Aerobid cihaler<br>II Puffs BID<br>② Albuterol - cihaler<br>II Puffs q 4 hrs - prn<br>③ C-en - 4mg BID - prn<br>④ Artificial Tears<br>I drop - TID - ou - prn<br>⑤ Motrin - 600 mg QID<br>PO - x - prn |

6 months

✗. Grewal, M.D.
Staff Physician and Surgeon
CTF Soledad

noted 5/3/06 1345

| ALLERGIES: | INSTITUTION | ROOM/WING |
|---|---|---|
| NKA | CA 255 ✓ | |

CDC NUMBER, NAME (LAST, FIRST, MI)

Hill
H 43428

Confidential
client information
See W & I Code, Sections 4514 and
5328

**PHYSICIAN'S ORDERS**

CDC 7221 (2/00)
STATE OF CALIFORNIA         OSP 05 90611    DEPARTMENT OF CORRECTIONS

00030

EXHIBIT *28*

1    RESPONSE TO REQUEST FOR ADMISSION NO. 13:

2        Objection, this request is indefinite as to time, and is vague and ambiguous as to the term  .

3    "duty and responsibility."  Subject to and without waiving this objection, deny.

4    REQUEST FOR ADMISSION NO. 14:

5        Is it true, that the Chief Medical Officer oversees, supervise, approve, and denys [sic] all

6    request of treatment of patients placed by doctor's that are under his/her control?

7    RESPONSE TO REQUEST FOR ADMISSION NO. 14:

8        Objection, this request is compound and is indefinite as to time.  Subject to and without

9    waiving this objection, answering defendant unable to admit or deny.

10   REQUEST FOR ADMISSION NO. 15:

11       Is it true, on 7-13-06 orthopedic Dr. Pompan was approved by U.R.C. to perform rotator

12   cuff repair on plaintiff's rt shoulder?

13   RESPONSE TO REQUEST FOR ADMISSION NO. 15:

14       Deny.

15   REQUEST FOR ADMISSION NO. 16:

16       Is it true that on 9-8-06 Plaintiff was transfered [sic] out of CTF in Soledad, CA., to CCI in

17   Tehachapi, CA.?

18   RESPONSE TO REQUEST FOR ADMISSION NO. 16:

19       Admit that plaintiff was transferred on September 8, 2006.  As to the remainder of the

20   request, unable to admit or deny.

21   REQUEST FOR ADMISSION NO. 17:

22       Is it true, that after 2 yrs of complaining that medication was ineffective, on 4-4-05 meds

23   dosage was increased to 800 mg, and then on 8-25-05 was reduced without any type of

24   treatment?

25   RESPONSE TO REQUEST FOR ADMISSION NO. 17:

26       Deny.

27   REQUEST FOR ADMISSION NO. 18:

28       Exhibit #1, CDC 602 Appeal 66# CTF-C-05-01422, filed 5-2-05.

| TIME | |
|---|---|
| | (rho dr od ol o r N (A) |
| P = 1.6 | |
| | (see 736e) |
| | ⑤ H/o Br. Asthma   Allergic |
| | Rhinitis, Ch' Pain Lt |
| | Shoulder |
| | — Need Rx reviewed. |
| | Or Lungs- clear, heart no m |
| | A⊘  A₂  Abd |
| | PO ∞ — |
| | J. Grewal, M.D. |
| | Staff Physician and Surgeon |
| | CTF Soledad |
| 7-13-06 | URC approves Rotator Cuff repair By Dr. Pompan. |
| | E. SINNA-∞ |

INSTITUTION    HOUSING UNIT    CDC NUMBER  NAME (LAST, FIRST, MI) AND DATE OF BIRTH

CTF N    LA 255 V

Hill
H43428

## INTERDISCIPLINARY PROGRESS NOTES

CDC 7230 (Rev 04/03)
STATE OF CALIFORNIA                    DEPARTMENT OF CORRECTIONS

98

# EXHIBIT 29

1       The following responses are given without prejudice to the right to produce evidence or

2   witnesses which Defendants may later discover.   Defendants accordingly reserve the right to

3   change any and all responses herein as additional facts are ascertained, witnesses identified, and

4   legal research is completed.   The responses contained herein are made in good faith in an attempt

5   to supply as much factual information and as much specification of legal contention as is

6   presently known and should in no way prejudice Defendants in relation to further discovery and

7   proceedings.

8

9   REQUEST FOR ADMISSION NO. 1:

10      Is it true, CTF medical records show upon the plaintiff arrival in 2002, staff was aware of

11  plaintiff's re-injury and pain in Rt. shoulder?

12  RESPONSE TO REQUEST FOR ADMISSION NO. 1:

13      Deny.

14  REQUEST FOR ADMISSION NO. 2:

15      Is it true, that the basic x-ray does not show damage to tendons, ligiments [sic], or tissue

16  damage?

17  RESPONSE TO REQUEST FOR ADMISSION NO. 2:

18      Objection, this request is vague and ambiguous as to the terms "basic x-ray" and indefinite

19  as to time.   Subject to and without waiving this objection, deny.

20  REQUEST FOR ADMISSION NO. 3:

21      Is it true, the responsibility of any physician administering medication or treatment to a

22  patient should thoroughly review patients medical file?

23  RESPONSE TO REQUEST FOR ADMISSION NO. 3:

24      Deny.

25  REQUEST FOR ADMISSION NO. 4:

26      Is it true, that any patient who has been in pain from an injury continuously [sic] for many

27  years is to be considered a cronic [sic] care patient?

28  ///

I. Grewal, M.D.'s Response to Plaintiff's Request for Admissions (Set One)     HILL,  Raynard B. v. Joseph Chudy, et al.
C 07-3165-CRB (PR)

EXHIBIT **30**

1  (including prescription pain killers), provided access to specialists outside the prison system, and

2  provided x-rays and MRI's.  He was then scheduled for surgery but transferred to another

3  facility before any additional surgery could take place.

4         The gravamen of the complaint is that elective surgery was not offered to plaintiff as

5  soon as he would have liked; however, this is not the denial of necessary medical care or

6  deliberate indifference.  Mere allegations of delay in surgery are not sufficient to state a claim,

7  absent an allegation that the delay resulted in a cognizable harm.  *McGuckin*, 974 F.2d 1050,

8  1060 (overruled on other grounds, *WMX Technologies,* 104 F.3d 1133) (citing *Shapley v.*

9  *Nevada Board of State Prison Comm'rs,* 766 F.2d 404, 407 (9th Cir. 1985) (per curiam)).  No

10  allegation of actual harm is, or can truthfully be, made in the instant case.  Brief delays, or delays

11  necessitated by an evaluation process, generally fail to state a cognizable claim.  *Toussaint v.*

12  *McCarthy,* 801 F.2d 1080, 1112 (9th Cir. 1986), cert. denied, 481 U.S. 1069 (1987); *Franklin,*

13  *supra,* 662 F.2d at 1334.  Plaintiff was seen by Dr. Pompan, and it was unclear whether surgery

14  would be effective for the pain in his shoulder.  (Chudy Declaration, ¶ 18.)  He was then

15  scheduled for surgery but transferred to another facility before another surgical procedure could

16  take place.  The time Plaintiff waited while diagnostic tests were being done to fully access the

17  injury to his shoulder is not a cognizable claim.

18  **C.   Plaintiff's Condition Was Not A Medical Emergency, And He Received Adequate**
       **Medical Care For His Condition**
19

20         The surgery for a re-injured rotator cuff such as plaintiff underwent was not an

21  emergency.  (Chudy Declaration, ¶ 26.)  Plaintiff, an inmate of no demonstrable medical

22  expertise, is not authorized to diagnose illness or to prescribe treatment for himself.  Title 15,

23  Cal. Code Regs., section 3354.  The physicians did not find that surgery on plaintiff's shoulder

24  was an emergency.  In fact, it was unclear after evaluating plaintiff's MRI, whether additional

25  surgery would be helpful in this case because it did not show evidence of a re-torn tendon.

26  (Chudy Declaration, ¶ 16, 26.)  A difference in medical opinion between a prisoner-patient and

27

28

Defendants' Motion for Summary Judgment              *HILL, Raynard B. v. Joseph Chudy, et al.*
                                                      C 07-3165-CRB (PR)

8

# EXHIBIT 11

1    RESPONSE TO REQUEST FOR ADMISSION NO. 33:

2        Deny.

3    REQUEST FOR ADMISSION NO. 34 (erroneously referred to as Request Number 5):

4        MRI's are usually performed when after an x-ray, source of injury or pain is not found.

5    RESPONSE TO REQUEST FOR ADMISSION NO. 34:

6        Deny.

7    REQUEST FOR ADMISSION NO. 35 (erroneously referred to as Request Number 6):

8        Would you say that any patient taking 2400 mg's of Motrin/ibuprofen continuous for over 3

9    yrs. has the potential of causing liver or organ damage?

10    RESPONSE TO REQUEST FOR ADMISSION NO. 35:

11        Objection, this request is vague and ambiguous in its use of the term "continuous." Subject

12    to and without waiving this objection, and defining "continuous" to be each day, deny.

13    REQUEST FOR ADMISSION NO. 36 (erroneously referred to as Request Number 7):

14        Is it true that the CDC 7362 Medical Request Form is for inmates with medical needs or

15    problems to fill out to bring medical dept. aware of the problem?

16    RESPONSE TO REQUEST FOR ADMISSION NO. 36:

17        Deny.  CDC 7362 is a request for medical attention filled out by inmates.

18    REQUEST FOR ADMISSION NO. 37 (erroneously referred to as Request Number 8):

19        Does CTF have a pain management program who issues out medication for cronic [sic] care

20    patients?

21    RESPONSE TO REQUEST FOR ADMISSION NO. 37:

22        Objection, this request is indefinite as to time.  Subject to and without waiving these

23    objections, and as of the present time, admit.

24    REQUEST FOR ADMISSION NO. 38 (erroneously referred to as Request Number 9):

25        Taking in mind the availability of the M.R.I. trailer, is scheduling on inmates prioritized?

26    ///

27    ///

28    ///

J. Chudy, M.D.'s Response to Plaintiff's Second Set of RFAs          *HILL, Raynard B. v. Joseph Chudy, et al.*
                                                                                    C 07-3165-CRB (PR)

3

32

**EXHIBIT 12**

1  as to time and vague and ambiguous as to the term "picking and choosing." Subject to and

2  without waiving this objection, and as it can be answered by J. Chudy, M.D., deny.

3

4  REQUEST FOR ADMISSION NO. 11:

5       Is it true, that those patients in cronic [sic] pain and need a stronger medication for injury

6  until procedure can be performed, are placed in a pain management program, where medication

7  is issued by the medical dept. daily?

8  RESPONSE TO REQUEST FOR ADMISSION NO. 11:

9       Objection, this request is not specifically addressed to any individual defendant, indefinite

10  as to time and vague and ambiguous as to the term "chronic." Subject to and without waiving

11  this objection, and as it can be answered by J. Chudy, M.D., deny.

12

13  REQUEST FOR ADMISSION NO. 12:

14       Is it true, due to the inadequate equipment and unavailability of the M.R.I. trailer at the

15  time, was a contributing factor in plaintiff's being denied or delayed medical treatment to his rt.

16  shoulder, after doctor's order on 4/17/05?

17  RESPONSE TO REQUEST FOR ADMISSION NO. 12:

18       Objection, this request is not specifically addressed to any individual defendant. Subject

19  to and without waiving this objection, and as it can be answered by J. Chudy, M.D., deny.

20

21  REQUEST FOR ADMISSION NO. 13:

22       Is it true, that upon a doctor placing an order of treatment for a patient, that it's his/her

23  duty and responsibility to assure that the patient receives that ordered treatment?

24  RESPONSE TO REQUEST FOR ADMISSION NO. 13:

25       Objection, this request is not specifically addressed to any individual defendant, is

26  indefinite as to time and is vague and ambiguous as to the term "duty and responsibility."

27  Subject to and without waiving this objection, and as it can be answered by J. Chudy, M.D.,

28  deny.

EXHIBIT **33**

1  immediately, arrangements were made for a mobile unit to take an MRI image of plaintiff's

2  shoulder because the x-rays had shown no discernable injury. (Chudy Declaration, ¶ 14.)

3       In his First Amended Complaint, plaintiff makes it sound as if he had been requiring

4  surgery since he re-injured his shoulder in 2001. However, there was no additional tearing seen

5  in a November 21, 2005 MRI. (Chudy Declaration ¶ 26.) Doctors at CTF, none the less,

6  continued to monitor plaintiff's shoulder and attempt to schedule him for surgery. (Id.) In July

7  of 2006, additional rotator cuff surgery was ordered and approved. (Chudy Declaration, ¶ 22.)

8  Plaintiff's surgery was then canceled because plaintiff had not shown up for a pre-op. Surgery

9  had to be rescheduled. (Chudy Declaration, ¶ 24.) A tendon tear was seen in a MRI taken on

10 September 12, 2007. Thus, plaintiff had re-injured his shoulder sometime between November

11 21, 2005 and September 12, 2007. (Chudy Declaration, ¶ 26.) He had not been suffering from

12 the same injury since 2001 as he alleges. As he re-injured himself, he was continuously given

13 care at CTF.

14      Plaintiff was moved to the California Medical Facility, Vacaville, in September of 2005

15 before the re-scheduled surgery could be performed. At no time was plaintiff's condition

16 considered an emergency, and it did not require immediate surgery or other treatment. (Chudy

17 Declaration, ¶ 27.)

18      The pro se plaintiff's First Amended Complaint does not allege the existence of a

19 competent medical opinion in support of his assertion of inadequate medical care or deliberate

20 indifference. In contrast, the expert medical opinion of Dr. Chudy (who is a defendant and the

21 Chief Medical Officer of the facility) is that the prison medical staff was not deliberately

22 indifferent and that plaintiff received medical care that meets the standard of care in the

23 community. (Chudy Declaration, ¶¶ 28-33.) Dr. Chudy's review of medical records verifies that

24 plaintiff was treated extensively and given adequate medication and consultation with outside

25 sources. (Chudy Declaration, ¶¶ 28-33.)

26 ///

27 ///

28

EXHIBIT **3 4**

CDCR HCSD-ASU MED/MAR FROM (rev 12-06)

## MEDICATION ADMINISTRATION RECORD

For the M____ of:    JULY        Year:    2007

| Name of LRN | Initial | Name of LRN | Initial | Name of LRN | Initial | Name of LRN | Initial |
|---|---|---|---|---|---|---|---|
| | | Volanta | LB | Jules Hoganson. Licensed Vocational Nurse | | Carnica LCR | |

| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 26 | 27 | 28 | 29 | 30 | 31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 817440  -  0   DR: HELMER, JAMES | | | | | | | | | | | | | LBS | | | | | | | | | | | | | | | | | | | |
| TYLENOL W/CODEINE 30MG | | | | | | | | | | WB | | | | | | | | | | | | | | | | | | | | | | |
| TAKE 2 TABS 3 TIMES | | | | | | | | | | WB | | | | | | | | | | | | | | | | | | | | | | |
| DAILY *** DOT *** | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | | |
| Start:   6/14/2007    Stop:   7/14/2007 | | | | | | | | | | | | | 0 | | | | | | | | | | | | | | | | | | | |
| CDCR #  H43428 | | | | | | | | | | | | | 0 | | | | | | | | | | | | | | | | | | | |

Name:   HILL   R                    CDCR #   H43428        ME2AA2000000B1J

CDC HCSD-ASU MED/MAR FORM Style #3 (01/93)

# MEDICATION ADMINISTRATION RECORD    For the Month of: _____ Year: 2007

| NAME OF RN/MTA | Initial | NAME OF RN/MTA | Initial | NAME OF RN/MTA | Initial | NAME OF RN/MTA | Initial |
|---|---|---|---|---|---|---|---|

| | | 1 2 3 4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19 20 21 22 23 24 25 26 27 28 29 30 31 |
|---|---|---|
| 817991- 1    DR: RUNYAN, P/TATE<br>TRIAMCINOLONE INHALER          1<br>INHALE 2 PUFFS TWICE A<br>DAY<br>Start: 07/09/2007    Stop: 09/13/2007 | 08<br>12<br>18<br>20 | |
| 817992- 1    DR: RUNYAN, P/TATE<br>CHLORPHENIRAMINE 4MG          90<br>TAKE 1 TABLET 3 TIMES A<br>DAY<br>Start: 07/09/2007    Stop: 09/13/2007 | 08<br>12<br>18<br>20 | |
| 817993- 1    DR: RUNYAN, P/TATE<br>ALBUTEROL INHALER 17GM        1<br>INHALE 2 PUFFS 4 TIMES A<br>DAY<br>Start: 07/09/2007    Stop: 09/13/2007 | 08<br>12<br>18<br>20 | |
| 81____ 1    DR: RUNYAN, P/TATE<br>IB____EN 600MG               90<br>TA___ TABLET 3 TIMES A<br>DAY<br>Start: 07/09/2007    Stop: 09/13/2007 | 08<br>12<br>18<br>20 | |
| 817997- 0    DR: RUNYAN, P/TATE<br>COUGH DROP                   30<br>USE AS DIRECTED<br>AS NEEDED (NO REFILLS)<br>Start: 06/15/2007    Stop: 09/13/2007 | 08<br>12<br>18<br>20 | |
| 825627- 0    DR: AFRA, SOHAIL<br>TYLENOL W/CODEINE 30MG      126<br>TAKE 2 TABS 3 TIMES<br>DAILY *** DOT ***<br>Start: 07/13/2007    Stop: 08/03/2007 | 08<br>12<br>18<br>20 | |
| | 08<br>12<br>18<br>20 | |
| | 08<br>12<br>18<br>20 | |

35

**EXHIBIT 15**

# UCDAVIS
## HEALTH SYSTEM
### TELEMEDICINE

November 03, 2006

RE:  HILL, RAYMOND
MR#: 1844475
DOB: 03/10/1960
Date of Service: 11/03/2006
CDC#:H43428

Harold Tate, MD
California Correctional Institution
P.O. Box 1031
Tehachapi, CA 93581

Dear Dr. Tate:

Thank you very much for requesting a consultation on behalf of Raymond Hill, whom I had the pleasure of seeing in Orthopedic Telemedicine Clinic.

**History Of Present Illness:**
As you know, Mr. Hill is a gentleman who underwent a right shoulder large rotator cuff repair in 2000 with anchors. He was doing very well for one year and anticipated a one year recovery time. His strength returned when, unfortunately, about a year later he reinjured the right shoulder. Unfortunately, since that time, the shoulder has again become weak. He has pain with reaching, pain with impingement maneuvers, pain at night. He denies any neurogenic symptoms. He had an MRI which, unfortunately, distorted the normal architecture because of the metal anchor screws. He was told by another orthopedic surgeon that he needed to have a repeat rotator cuff repair and is waiting for that now.

**Past Surgeries:**
1.    Status post right shoulder rotator cuff repair in 2000.
2.    Status post left fifth finger open reduction and internal fixation.

**Medical Illnesses:**
1.    Right shoulder pain.
2.    Asthma.
3.    Allergic rhinitis.

**Medications:**
Albuterol inhaler, triamcinolone inhaler, chlorpheniramine, methocarbamol, Motrin.

**Allergies:**
None known.

**Family History:**
Noncontributory.

**Social History:**
He is incarcerated.

P. RUNYAN, PA-C

Regional Outreach & Center of Health & Technology
2500 Stockton Boulevard, Suite 3300 • Sacramento, California 95817-1418
(916) 734-5675 • Fax (916) 734-1366

00227

RE:  HILL, RAYMOND
MR#: 1844475

Page 2

**Review Of Systems:**
I refer you to the paper medical record.

**Physical Examination:**
On physical examination, he is an alert, pleasant, cooperative
gentleman in no acute distress. Gait and posture are normal. Right
shoulder reveals forward flexion limited from 0 to 90, abduction from
0 to 90 with a painful arc, external rotation from 0 to 50, and with
internal rotation he can bring his thumb to T10. Strength testing of
supraspinatus reveals 4/5 strength. Infraspinatus and subscapularis
testing reveal 4+/5 strength.

**Assessment:**
Right shoulder probable rotator cuff re-tear.

**Plan:**
I am recommending to proceed with arthroscopy for a rotator cuff
repair on Mr. Hill's right shoulder. He is very willing to do this.

The patient was educated in the impression and the plan of care.

Thank you very much for your kind request for consultation.

Sincerely yours,


JEFFREY L TANJI, MD
ASSOCIATE MEDICAL DIRECTOR
DIVISION OF UCDHS PRIMARY CARE NETWORK
DEPARTMENT OF SPORTS MEDICINE
*THIS WAS ELECTRONICALLY SIGNED - 11/06/2006 8:04 AM PST BY:*




JLT:js(ml006)

D:    11/03/2006 09:00 AM
T:    11/03/2006 03:15 PM
C#:   2268756

00228

29

EXHIBIT 3b

**KERN RADIOLOGY MEDICAL GROUP, INC**
2301 Bahamas Drive
Bakersfield, CA 93309
(661) 326-9600

*extra*
*copies*

**CCI TEHACHAPI STATE PRISON**
**FAX# 823-5018 OR 823-3328**

PATIENT: HILL              DOB:              CDC# H43428
HOUSING: 2

INTERPRETATION OF OUTSIDE FILMS: MRI OF THE RIGHT SHOULDER:  09/12/07

A variety of imaging planes and parameters were utilized for visualization of suspected pathology.

FINDINGS: This study is extremely suboptimal due to the presence of paramagnetic signal artifact, possibly due to prior surgery or a gunshot wound without clear visualization of the acromion or acromioclavicular joint.  This could be due to the distortions caused by the paramagnetic signal artifact or posttraumatic or postsurgical removal.  The supraspinatus tendon is not visible at all, most probably completely torn and only the insertion of the infraspinatus tendon on the greater tubercle is visible suggesting a complete tear here as well.  There is also marked narrowing of what remains of the coracoacromial arch tending to confirm these findings.  The subscapularis and teres minor tendons are intact otherwise.  The bicipital labral complex is poorly visualized for reasons described above, although the proximal biceps tendon is identified in the bicipital groove.  There is no evidence for a labral tear.  The glenohumeral ligaments are otherwise unremarkable.

**CONCLUSION:**
1.  Severely degraded study as a result of multiple paramagnetic signal artifacts from metal, either postsurgical or posttraumatic with nonvisualized distal acromion and acromioclavicular joint either due to distortion from posttraumatic or postsurgical absence.
2.  Probable complete tears of the supraspinatus and infraspinatus tendons with retraction and cephalic migration of the humeral head.
3.  Nonvisualized bicipital labral complex, most probably due to the paramagnetic signal artifact described above.


Jeffrey K. Child, M.D.              D: 09/24/2007 T: 09/25/2007/lmj

Referring Physician: P. RUNYAN, PA-C

*extra*
*copy 6/11/08*

00226

31

EXHIBIT **37**

# MARSHALL S. LEWIS, M.D.

## TEHACHAPI CLINIC

February 8, 2008

RE:        HILL, RAYNARD
DOB:       3/10/60
CHART#:    IMC0667
CDC#:      H43428/California Correctional Institution

### ORTHOPEDIC TELEMED RE-EVALUATION

This patient returns today. He is having continuous problems and pain in the right
shoulder. The patient can only abduct about 100 degrees and forward flex 100 degrees
on the right side at this time.

Review of the MRI from September 12, 2007 read by Dr. Child, with the MRI at Kern
Radiology, revealed under the conclusion "1) Severely degraded studies as a result of
multiple paramagnetic signal artifacts from metal either post-surgical or post-traumatic
with non-visualized distal acromion and acromioclavicular joint either due to distortion
from post-traumatic or post-surgical abscess; 2) Probable complete tears of the
supraspinatus and infraspinatus tendons with retraction and cephalic migration of the
humeral head; 3) Non-visualized bicipital labral complex most probably due to
paramagnetic signal artifact described above."

It has been discussed with the patient that there is severe tearing with retraction of the
supraspinatus and infraspinatus. The cephalic migration of the humeral head is also a
problem, which is felt to be fraught with inability to correct. I have explained to the
patient that in the body of the report there is evidence of marked narrowing of the
coracoacromial arch and this would go along with my diagnosis previously of
impingement syndrome in the right shoulder. I have explained to the patient that no
primary repair of the rotator cuff would be performed, as I feel the blood supply would
probably be compromised with prior surgery and this probably would not heal. We will
perform debridement of the subacromial bursa and rotator cuff with an anterolateral
acromioplasty, resection of what remains of the coracoacromial ligament and possible
resection at the distal end of the right clavicle. If he does not adequately heal from that,
we could try a rotator cuff repair but, again, I told the patient that I think this is fraught

13061 Rosedale Highway, Ste. G, PMB-102-Bakersfield, CA 93312 (661) 871-6200 Fax (661) 871-6400

RE: HILL, RAYNARD
Page 2
February 8, 2008

with failure as the prior rotator cuff repair from 2000 performed by Dr. Harway has failed completely.  The patient accepts the risks and will undergo arthroscopy with arthroscopic surgery of the right shoulder.  Appropriate blood work will be ordered along with a chest x-ray.  The patient will be booked when approved by the carrier.

Marshall S. Lewis, M.D.
/sl
2/15/08

13061 Rosedale Highway, Ste. G, PMB-102-Bakersfield, CA 93312 (661) 871-6200 Fax (661) 871-6400

Kenneth B. Hill 143428
CSATF, F3 - 285 Low
PO Box 5244
Corcoran, CA. 93212

Confidential

CSATF

United States Dis
Northern District of C

9/7/08